CITY OF NEW ORLEANS

# OFFICE OF INDEPENDENT POLICE MONITOR

SUSAN HUTSON
INDEPENDENT POLICE MONITOR

Susan Hutson
Independent Police Monitor
Alison McCrary
Director, Community-Police Mediation Program
Office of the Independent Police Monitor
City of New Orleans

April 8, 2016

Honorable Catherine Perry
United States District Court Judge
Eastern District of Missouri
111 South 10th Street
St. Louis, Missouri 63102

      Re:    *United States v. City of Ferguson*, Case No. 4:16CV180 CDP

Dear Judge Perry:

We write this letter to share some successes from another jurisdiction under the City of New Orleans' *Consent Decree* as it related to the Community Mediation Program (Section III., E) and Community-Centered Mediation of Misconduct Complaints (Section XIX., D.) of the City of Ferguson's *Consent Decree*.

The New Orleans Community-Police Mediation Program was established with community and the New Orleans Police Department (NOPD) support to build mutual understanding and improve relationships between civilians and NOPD officers. Mediation is an alternate means of resolving complaints of officer misconduct. Rather than the traditional complaint and disciplinary process, mediation provides a process facilitated by two professionally-trained community mediators to create mutual understanding and allowing the officer and civilian to be fully heard and understood for certain types of officer misconduct.

HISTORY

The New Orleans Community-Police Mediation Program is a program of the Office of the Independent Police Monitor (IPM), an independent, civilian police oversight agency created in August of 2009. Its mission is to improve police service to the community, civilian trust in the NOPD, and officer safety and working conditions. The Program was created over a three-year period with dozens of individuals serving on the planning committee, NOPD officers, the Police

Honorable Judge Catherine Perry
United States District Court Judge
Eastern District of Missouri
April 11, 2016
Page 2

Association of New Orleans, the Black Order of Police, international experts, studies of programs in ten other U.S. cities, several community leaders, and criminal justice reform experts.

ORIGINS OF THE COMMUNITY-POLICE MEDIATION PROGRAM

The New Orleans Community-Police Mediation Program is mandated by City Ordinance, the Memorandum of Understanding between the New Orleans Police Department (NOPD) and the Office of the Independent Police Monitor (IPM), and the Consent Decree. On September 11, 2014, Judge Susie Morgan approved the modification to the Consent Decree to approve NOPD Policy 1025 so that mediations of civilian complaints can commence and continue into future years.

Section 2-1121 of Article XIII of the City Code and City Ordinance 23146 establish the IPM. Within this ordinance, the City mandates that the IPM shall create a mediation program for civilian complaints. Specifically the Ordinance reads:
> "The IPM shall establish and administer a mediation program for civilian complaints, guided by best practices identified in other jurisdictions with such mediation programs. Consent of the civilian complainant, the police officer involved, and the New Orleans Police Department shall be required before a case can be scheduled for mediation by a trained neutral mediator from outside the New Orleans Police Department." M.C.S., Ord. No. 23146, § 1, 7-18-08, Mediation of Civilian Complaints.

The *Consent Decree* requires a "community-based restorative justice project . . . to help remedy mistrust between NOPD and the broader New Orleans community and create an environment for successful problem-solving partnerships." Consent Decree, page 108, Section VXIII, Subsection E., Paragraph 439. The Community-Police Mediation Program is a restorative-justice program with the primary goal of improving trust and confidence between the NOPD and members of the community.

WHAT IS MEDIATION

The goal of the New Orleans Community-Police Mediation Program is to build understanding and improve relationships between New Orleans Police Department employees and civilian members of the community. It is an alternative to the traditional complaint investigation process by the NOPD's Public Integrity Bureau. By improving the relationship between the community and police, mediation helps make neighborhoods safer and stronger.

Mediation is voluntary, confidential, and non-judgmental. Voluntary means that the officer and civilian consent to mediate at their own free will. They may end the process at any time. Neither participant is forced to say or do anything that they don't want to do.

Mediation is confidential. Nothing said during the mediation leaves the mediation room. Nothing said is recorded on any device and all notes from the mediation are destroyed after the mediation. The only piece reported back to the internal affairs department of the NOPD, the

Public Integrity Bureau, is that the officer attended the mediation session and participated in good faith.

Mediation is a non-judgemental process. It's not a process to determine who is right or wrong. The mediators are not finders of fact. It is neither a legal process nor a disciplinary process. The process is facilitated by two professionally-trained neutral mediators. The mediators don't give advice or take sides.

## BENEFITS OF MEDIATION

Mediation allows the officer and civilian the opportunity to speak for themselves, hear what the other has to say, and come to their own agreements about moving forward. Mediation creates a safe space where both the civilian complainant and the police officer can think about their interaction, share how it made them feel, and be fully heard and understood in a non-judgmental way.

Mediation rebuilds trust and confidence in the NOPD, assist with police officer morale, maintain efficient use of resources, increase officer retention rates, and improve community and police relationships.

As a result of mediation, the complaint outcome is marked as withdrawn on the officer's disciplinary record.

## COMPLAINT ELIGIBILITY FOR MEDIATION

The Public Integrity Bureau of the NOPD determines which complaints will be referred to the Mediation Program. The Mediation Program then uses a screening and intake tool to determine the appropriateness of the case and participants for the mediation process. The types of complaints that are more often referred for mediation are those that claim lack of professionalism, discourtesy, or neglect of duty. Other complaints such as unreasonable use of force, unlawful search, and criminal allegations will continue through the formal complaints investigation process by the Public Integrity Bureau. NOPD's Policy 1025 lists the types of cases that are ineligible for mediation and anything not listed in that policy is eligible for mediation.

## THE MEDIATION PROCESS

### *HOW DOES A CASE GET TO MEDIATION?*
Once a person files a complaint of officer misconduct with the Public Integrity Bureau (PIB) or Office of the Independent Police Monitor, the PIB determines if the complaint doesn't meet any of the exceptions for mediation as stated in NOPD Policy 1025. If it qualifies for mediation, the complaint is sent to the Mediation Program Director at the Office of the Independent Police Monitor.

Honorable Judge Catherine Perry
United States District Court Judge
Eastern District of Missouri
April 11, 2016
Page 4

The Program Director screens the case to ensure that no allegations were overlooked or misclassified in the complaint. She then contacts the officer to explain and offer mediation and has the officer sign a Consent Form and Extension for Investigation form (in the event that the officer doesn't show up or participate in the mediation in good faith, it provides the Public Integrity Bureau with additional time to complaint a thorough investigation of the complaint). If the officer consents to mediate, then the civilian complainant is contacted by phone, email, or letter and mediation is explained and offered to them.

During a thorough intake process, mediation is modeled to the officer and civilian so they can feel what mediation feels like. Oftentimes, potential mediation participants reflect back that this was the first time they ever felt like anyone ever listened to them. When participants feel heard and understood, they can then move into making plans for the future and how they want their interactions and policing to look like in the future.

A screening tool is also administered to both the officer and civilian to ensure that both of them feel safe sharing what they want to share with each other and that there are not feelings of a threat of retaliation. The civilian then signs a Consent to Mediate Form and Complaint Withdrawal Form.

*WHERE AND WHEN DO MEDIATIONS TAKE PLACE?*

A mutually-convenient date, time, and location is determined by the participants and coordinated by the Mediation Program Director. For the officer, mediations are usually scheduled during the officers' working hour. If the officer works the night shift, the mediation is scheduled during the preferred time of the officer outside of his shift. Officers are compensated for their time during the mediation and are in full uniform during the mediation.

Mediations take place in venues that are convenient, neutral, safe, and in the neighborhood where the civilian lives. Since the officer is on duty and has a department-issued vehicle, they have the ability and mobility to drive to the venue. Most mediations take place within a few blocks of the civilian's home. Some examples of mediation venues are: public library conference rooms, classrooms in public schools, community non-profit board rooms, the arts and crafts room of the Recreation Department center, and Sunday school rooms in churches.

*HOW LONG DO MEDIATIONS TAKE?*

Most mediation sessions take about 60 to 90 minutes to complete, but additional time during a second session may be scheduled with the participants if needed.

Case: 4:16-cv-00180-CDP   Doc. #:  19   Filed: 04/11/16   Page: 5 of 10 PageID #: 265

Honorable Judge Catherine Perry
United States District Court Judge
Eastern District of Missouri
April 11, 2016
Page 5

*WHO IS IN THE MEDIATION ROOM?*

Mediation sessions between officers and civilians are facilitated by two community mediators. Both the officer and civilian are invited to bring a non-speaking support person with them if they would like to. Many officers choose to bring other officers as support and many civilians choose to bring family members or friends as support. If the support person was at the scene of the interaction that led to the complaint, they may speak during the mediation. Otherwise, they are asked to just observe at the table so that those directly affected can speak for themselves and directly to each other.

Our pool of thirty mediators come from diverse backgrounds and represent the demographics of the New Orleans community. Every mediation is facilitated by two community mediators. The race, age, and gender demographics of the mediators are matched to the officer and civilian when possible.

The mediators are professionally-trained with more than 50 hours of initial specialized community-police mediation training in the Inclusive Model of Mediation as taught by Community Mediation Maryland. The Inclusive Model of community mediation is a process that focuses on relationships and understanding. Nine NOPD lieutenants, sergeants, and officers participated in the full 50 hours of initial training and other officers voluntarily participate in monthly training sessions. The mediators also present at officers' roll call meetings (48 roll call meetings in the past year) to educate them about the program and have other opportunities to interact with the police and community through the program. We carefully select twelve mediators out of nearly 100 applications each year for our mediator training program. Along with the initial training, mediators are offered monthly three-hour in-service training specific to community-police mediation. Our mediators' backgrounds range from pie bakers, community organizers, public bus drivers, college students, and restaurant workers to retired teachers, social workers, mitigation specialists, community conferencing facilitators, counselors, professional mediators, and attorneys.

*WHAT HAPPENS DURING THE MEDIATION?*

In mediation, the mediators will introduce and explain the mediation process. The mediators will ask each participant to share about their experiences during their interaction. The participants listen to each other and the mediators help them better understand what each of them cares about, how they and the other person might be feeling, what's important to them, and what, if anything, they want to make a plan about for the future. The participants then brainstorm solutions and come up with their own agreements about what they want to see happen next or in future interactions.

Mediations usually end in an agreement but it isn't required. The sharing of thoughts and feelings and a better understanding are often enough for some people. Other times, agreements may be an apology or concrete steps to help stop similar issues from happening again.

Honorable Judge Catherine Perry
United States District Court Judge
Eastern District of Missouri
April 11, 2016
Page 6


## SURVEY DATA AND PARTICIPANT FEEDBACK

Voluntary and anonymous surveys are offered and completed at the end of every mediation session by the officer, civilian, and two mediators. In addition, thirty days after the mediation, program volunteers administer a longer survey to the officer and civilian by phone to obtain more in-depth information regarding their opinion and experience of the mediation process.

### *QUANTITATIVE SURVEY RESULTS*

Evaluation findings from all of the mediation sessions conducted thus far through pre- and post-mediation session surveys include:
- 100% of all of the police officers and civilians thought that the mediation meetings were unbiased.
- 100% of all police officers and civilians appreciated having the opportunity to speak with one another and found the mediation to be successful.
- 89% of civilians agreed that "this session helped me gain a better understanding of policing."
- 92% of police officers agreed that "mediation is a good way of resolving disputes between civilians and police officers."
- Most civilians agreed that "if I had information about a crime or incident in my neighborhood I would share that information with the police officer who participated in the mediation."
- 100% of police officers agreed that the "mediation session helped build mutual respect between me and civilian."
- 83% of civilians agreed or strongly agreed that the "mediation session helped build mutual respect between me and officer."
- 92% of police officers agreed that "this session helped me gain a better understanding of the civilian's point of view."
- 100% of police officers agreed that "if I receive a civilian complaint in the future I would agree to a mediation meeting."
- Most civilians agreed that "if I have a complaint against a police officer in the future, I would agree to a mediation meeting."

After the mediation session, surveys showed an increase in:
- Both police officer and civilians' view that mediation would help resolve the issue(s).
- Civilians' view that mediation is a better option than formal disciplinary actions against police officers.
- Civilians' view that police officers have respect for the community they serve.
- Police officers' view that mediation is a better option than formal disciplinary action.

### QUALITATIVE SURVEY RESULTS

Feedback from participants in the mediation room most accurately reflects the transformation that happens in the relationships between civilians and officers.

Case: 4:16-cv-00180-CDP   Doc. #: 19   Filed: 04/11/16   Page: 7 of 10 PageID #: 267

Honorable Judge Catherine Perry
United States District Court Judge
Eastern District of Missouri
April 11, 2016
Page 7

*FEEDBACK FROM CIVILIAN COMPLAINANTS*
- "I appreciated the opportunity to speak to [the officer] directly. It's not often that people who work in the system and take advantage of that power, get the chance to actually express your frustrations to them in a calm, safe way so that was a good opportunity." (Civilian complainant)
- "I liked to be able to share my perspective with the officer and that he was able to understand my point-of-view and apologize about the way he approached me."
- "I learned new things. The process was more in depth than I expected."
- "I learned about police protocol and challenges and would recommend it to friends or family considering the process."
- "The mediators reiterated what I felt as well as what the officer felt. Solutions were offered and I felt that my voice was heard."
- "More than anything in the world, I wanted to sit down at a table with this officer and tell him how I felt. This program helped me do that. It felt so different and I was glad my case was referred to mediation. I was able to confront the officer in a respectful way that helped us get down to the root of what was going on. It wasn't just about me and him but about this city, public safety, and how what he does can contribute to whether this city will survive, if local people will continue moving away, or if locally-owned businesses like mine will stay in business."
- "I liked to be able to share my perspective with the officer and that he was able to understand my point of view and apologize about the way he approached me."
- "I got the chance to speak out. I was able to speak up about the situation, and get some clarification what happened and tell her what I felt like she did wrong."

*FEEDBACK FROM POLICE OFFICERS*
- "It opened my eyes that I should treat the public a little better and communicate with residents in a new way… even though I might be having a bad day. I should remember that they are the victim and that no matter how bad my day is going I should take them into consideration because they are the victim of a crime or something or else they wouldn't be calling the police."
- "Getting to have both participants sit down and work through things to find out how we can better things in the future, whether it be something that I made a mistake in or whether it's something that they can do differently.
- "I valued being able to hear each other and establish common ground. I also appreciate that there is an option for handling complaints in a non-punitive way."
- "Mediation allowed me to explain police policy to complainant."
- "It was great that we were able to talk it out."
- "After the mediation, I became more aware of community needs. I got a better understanding of how people view the police. I would encourage others to take advantage of the opportunity."
- "It was helpful getting the average person who's not the police to understand your side as a police officer as well as get you to understand their feelings because a lot of times when you're interacting with people on the street, they don't really express how they're feeling until after. It's like they want to say so much but everything doesn't come out and I guess

Case: 4:16-cv-00180-CDP   Doc. #: 19   Filed: 04/11/16   Page: 8 of 10 PageID #: 268

Honorable Judge Catherine Perry
United States District Court Judge
Eastern District of Missouri
April 11, 2016
Page 8

      because people's emotions are all over the place so it just gives you a chance to really understand."
- "We were able to sit down face to face and talk about our perceptions of each other, how she perceived me as an older white male officer and how I perceived her as a young, black female activist even to the detail of what the symbols on her earrings make me think of her. We had a good lengthy discussion about race in a safe space we couldn't have during our first encounter. I didn't want to go into it but she brought up race so the mediators invited us to talk about it since it was important to her. Although I was uncomfortable at first, I realized how important it was to her. It was eye-opening for me as I've never had these conversations with someone of color and I'm 74 years old. I was able to tell her what the policy was and why I acted the way I did and she also shared how she felt about how I treated her. Please tell anyone in the community or in the police they can contact me if they want to know more about mediation. This is good for our city."

*FEEDBACK FROM MEDIATORS*

- "This mediation experience was tremendous. The complaint process triggered something in this one officer. He remembered the signs around town that read "think that you might be wrong" and he reviewed his body worn camera footage since he didn't remember speaking to the civilian in a rude tone. He reviewed his footage and during the mediation, he apologized in the first 15 minutes. The two participants developed a great process, examined the conflict and their interaction, and made plans for the future. At about half-way through the process, we took a short break. As the other mediator and I were walking back into the room, the officer and civilian had made it back before us and we observed them hugging each other. At the end of the mediation, they exchanged cell phone numbers and set a date for lunch."
- "I am awestruck by the ability and willingness of mediation participants to confront some of the most contentious issues affecting community-police relations in New Orleans and around the country, from issues of race and aggression, to notions of service, courtesy, and shared responsibility."
- Officers reflected: "What's best about the mediation program is that it offers an alternative to otherwise harsh penalties." "The mediators were great, very helpful" "Being able to talk and hear the other person's side helped. Being able to talk and understand is what I liked best." "What was best about the mediators was that the conversations were kept straightforward" "Mediation was useful and helpful. It was a chance for officers and civilians to voice thoughts for better understanding" "Mediation allowed me to explain police policy to complainant." "It was great that we were able to talk it out." "After the mediation, I became more aware of community needs. I got a better understanding of how people view the police. I would encourage others to take advantage of the opportunity."

NUMBER OF MEDIATION CASES

In our first year (twelve months), we had 20 mediations take place. Most cities only have a couple or a few mediations in their first years. New Orleans ranks higher than Kansas City, New York City, Portland, and Seattle's Mediation Programs by percentage of cases mediated even though it is in its first year of existence. We hope to increase the number of cases going to mediation each year by educating officers and the community about mediation as an option, meeting regularly with the Public Integrity Bureau to remind them about mediation referrals during their complaint intake process, and evaluating the program regularly and making changes to constantly improve the program in line with best practices in community mediation.

UTILIZING COMMUNITY MEDIATION TO RESOLVE CONFLICTS

The Office of the Independent Police Monitor (OIPM) in New Orleans has recently partnered with Community Mediation Services (CMS) to increase the use of community mediation to resolve conflicts in the community that would usually be handled by law enforcement. The OIPM has offered an in-kind donation of office, meeting, conference, and mediation session space to the non-profit mediation service provider. The OIPM has also shared our pool of thirty professionally-trained mediators with CMS. Believing in the transformative power of community mediation, we believe professionally-trained mediators are well-equipped to handle many non-violent conflicts that arise in our community whether its neighborhood disputes, a landlord and tenant dispute, a family dispute, workplace disputes, or other forms of conflict. Our office has assisted Community Mediation Services in connecting with members of the NOPD to educate the police about community mediation services. In turn, the utilization of community mediation has assisted with effectively resolving conflict with lasting solutions, reallocating police resources to where it's needed most to prevent or address violent crime, and decrease police response times to calls.

CONCLUSION

We invite you to consider the above in satisfying the Mediation Program requirements in the *Consent Decree* paragraphs 32-34 and 399-400. Our city has witnessed the transformation of community and police relationships and created safe spaces for authentic conversation to get to the root of the issues of a lack of trust and confidence in NOPD through mediation. Shifts happen when people feel heard and understood and when people determine their own consequences for their actions and determine what accountability, fairness, and justice look like for themselves. It also provides a ripe space for community policing and democratizing what policing and public safety look like in our communities.

We thank this Court for holding this open hearing on these important matters and ask this Court to consider the successes of the New Orleans Office of the Independent Police Monitor's Community-Police Mediation Program.

/s/

Honorable Judge Catherine Perry
United States District Court Judge
Eastern District of Missouri
April 11, 2016
Page 10


Susan Hutson
Independent Police Monitor

Sister Alison McCrary, Esq.
Director, Community-Police Mediation Program

Office of the Independent Police Monitor
City of New Orleans