# "USA v. Ferguson, 4:16 CV 180"

## Ferguson's Collaborative's Written Testimony in Response to the Consent Decree

The Ferguson Collaborative is a grassroots group of Ferguson citizens and area stakeholders working to lift up and empower the community's voice as part of the Department of Justice intervention and consent decree process. We believe the proposed consent decree is an important step toward constitutional policing. In order to thrive, the City must move past its status as a manifestation of dysfunction and institutionalized racism. With the decree, the City has a new opportunity to become a symbol of transformation and a driving force for regional change.

The consent decree is a comprehensive recipe for reform, representing the current progressive mainstream consensus on issues of use of force, transparency, data collection, bias training, civilian oversight and more. Because it is court enforced and independently monitored, it can provide the technical assistance and the discipline necessary to make reforms happen.

We do have deep concerns that the decree is not designed to create long-term sustainable change after the federal enforcement ends. Change will be lasting only if it embodies a fundamental shift in the power dynamics between police and the community. In this regard, the decree is inadequate. In this document,we have outlined changes that need to be made in the areas of Community Engagement and Enforcement, Neighborhood Police Steering Committee, Civilian Review Board, and Body Cameras. We also highlight items in the consent decree that we strongly support.

Without the prescribed items being included in the consent decree, the Ferguson Collaborative is skeptical that there will be vehicles in place that effectively protect the rights of citizens and empower them to hold the City and law enforcement accountable.

### Community Engagement and Enforcement

The decree opens with a section on community engagement, emphasizing meetings in disempowered neighborhoods, with youth, and strengthening non-functioning neighborhood associations. We support community engagement as a way to build relationships and establish trust, so long as it is more than public relations and an attempt to use the community as the eyes and ears of police. Below are additions to the consent decree that help institutionalize meaningful community engagement and better ensure that the City and the Ferguson Police Department (FPD) are more accountable to oppressed communities:

- The community needs to know that the monitor takes their issues and concerns seriously.
    - The Parties should release the names of all proposed monitors, allowing citizens the opportunity to conduct their own research, participate in hiring interviews, and provide feedback and recommendations. Unlike the recent police chief hiring

   process where citizens were only allowed to ask questions prepared by the City, citizens must be given real autonomy and a chance to influence outcomes.
    - The Monitor, the DOJ and the Civilian Review Board, not just the City, should be involved in finding solutions to disparate impact on the basis of protected classes (74, Pg. 18) [All numbers in parentheses refer to numbered paragraphs in the consent decree.]
- The community needs to trust the Force Review Board (FRB) and have faith in the complaint review process.
    - A civilian (a member of the NPSC or CRB) should be involved in the FRB. (189B, Pg. 44)
    - The Monitor or another independent party should conduct random audits regarding use of force. (195, Pgs. 45-46)
    - If questions or concerns arise during the audit regarding the use of force, an external investigation via an independent body (like the Civilian Review Board) should be initiated.
    - The City and the DOJ should aim towards establishing high goals for constitutional policing and the Court must ensure that they are meeting these standards. All use of force data, crisis data, and school data should be broken down by protected characteristics. (435 G-H, 112-113)
    - Changes to the Consent Decree should require approval of the Court (459, Pg. 119)
- The consent decree helps Ferguson move towards community and problem solving oriented policing. However, some additional changes are needed:
    - Tie restorative justice alternatives to incarceration into the community oriented policing model. (26, Pg. 7)
    - Prevent "bad cops" from joining the force by requiring that applicants sign a waiver so that their previous law enforcement personnel files are available to the hiring agency. (288c, Pg. 66)
- In regards to misconduct investigations, Missouri Sunshine law makes no distinction between the criminal and administrative investigations, and there are arguments regarding whether Garrity statements are part of the criminal or administrative stream. The Decree should specify that both streams are open records if there is an allegation of criminal conduct. See Chasnoff v. St. Louis Metropolitan Police Department. (385, Pg. 94)

### Neighborhood Policing Steering Committee (NPSC)

The NPSC is given a wide range of responsibilities, some with real authority but most purely advisory. The citizen groups, including the NPSC, should be given the institutional authority and power to hold the city and law enforcement accountable by requiring the following:

- The Neighborhood Policing Steering Committee (NPSC) should be institutionalized so that it will survive past the consent decree's life-span. (21F, Pg. 6)
- The NPSC should have a voice in the selection of the Monitor and a representative from the NPSC should serve on the Monitor's team. (416/423, Pgs. 103/105)
- The NPSC should coordinate with the Monitor's team to serve as a consulting body and vehicle for sharing information about the consent decree process with the larger community.
- The attendance pattern and power dynamics within the NPSC have so far favored those in the community already empowered and those least impacted by status quo police practices. The consent decree should require that the NPSC be trained in problem oriented policing, implicit bias, bias-free policing and anti-racism principles. Because of the configuration of our metropolitan area, the membership of the NPSC should be clearly permitted to include non-Ferguson residents affected by Ferguson policing. The DOJ and/or Monitor should verify that the composition of the NPSC is representative of the entire community.(21/26. Pgs. 6/7)
- The consent decree requires that the City perform assessments of its community policing reforms, identify deficiencies, and implement appropriate changes. The NPSC should be part of this process. Specifically, the consent decree should require that the City formally notify the NPSC of its assessment process, provide to the NPSC data and analysis that results from the assessment, and solicit written input from the NPSC before the assessment is finalized or changes are implemented. (35. Pg 9)

### Civilian Review Board (CRB)

The City, with approval by the Monitor and the DOJ, must establish a CRB.  The consent decree mostly mirrors the Review Board Task Force recommendations—a model that has a somewhat weak review process but other strengths such as the ability to study and recommend policy changes. Below are recommendations that will empower the CRB to have a more thorough review process, hold law enforcement officials accountable for problematic police activity, and to work with the city to improve policing and hiring practices:

- The CRB does have the implicit power to recommend to the Chief that the police investigation into misconduct is incomplete or otherwise inadequate, but this power needs to be strengthened. The CRB should be explicitly able to send investigations back to the police with instructions for further work. Without this power, incomplete investigations that do not generate enough evidence to sustain a complaint will not be effectively addressed. The results of this process should be included in the CRB recommendations to the Chief and in all reporting requirements.
- The CRB has access only to "appropriate" evidence related to a complaint. This gives undue discretion to the police. The CRB should have access to all of the evidence. (407, Pg. 101)

# "USA v. Ferguson, 4:16 CV 180"

- The reports of the CRB need to be broken down by protected characteristics (race, gender, etc) and by ward to ensure that discrepancies in the complaint process are readily evident.
- The Chief should be required to explain in writing to the CRB if s/he does not accept CRB recommendations.
- It should be clear that the operating procedures (bylaws) of the CRB may be changed at the will of the CRB (not with approval by the City Council) but that fundamental powers such as those below should be decisions of the City Council.
- The consent decree should specify that the ordinance creating the CRB should include the following:
    - Standards for a quorum.
    - Requirements that CRB decisions are made by a simple majority of those present
    - Decisions are based on a preponderance of the evidence.
    - An appeal can only be an appeal of the CRB decision and not the police.
    - Members of the CRB can only be removed for malfeasance, not at the pleasure of the City as in the current ordinance. This provision is necessary to provide important independence.
    - Confidentiality requirements should be in line with Missouri Sunshine Law, not further limited as is currently in the proposed ordinance.
    - The City Council should make public the names of all proposed nominees to the CRB and the Council vote to approve nominees should not take place without allowing time for review and comment by the public regarding those candidates.
- Members of the CRB should be able to sit on a police hiring and promotion panel without the requirement that they do not also review complaints. They should be required to recuse themselves from reviewing any cases where their other role has created a conflict of interest.
- The consent decrees requires that the City perform assessments of various reforms, identify deficiencies, and implement appropriate changes. These include disparate impact (72 and 74, Pg. 18), stops (109, Pg 26), First Amendment (126, Pg. 30), Use of Force (195, Pg. 45), Crisis Intervention (206, Pg. 48), School Resource Officers (227, Pg. 52), Cameras (250, Pg. 57), Supervision (270, Pg. 62), Officer Wellness (280, Pg. 64), Hiring (285, Pg. 65), Recruitment (290, Pg. 67), Promotions and Performance Evaluations (302, Pg. 70), and, especially relevant here, Complaints (401, Pg. 98). The CRB should be part of this process. Specifically, the consent decree should require that the City formally notify the CRB of its assessment process, provide to the CRB data and analysis that results from the assessment, and solicit written input from the CRB before the assessment is finalized or changes are implemented. (35. Pg 9)

4

# "USA v. Ferguson, 4:16 CV 180"

### Body Cameras

The City and the whole region have been having conversations regarding body camera policies. There is currently a citizen initiative in Ferguson that does not address the crucial questions appropriately. For a full set of policies (drafted by the ACLU of Missouri, Don't Shoot Coalition, Drone Free St. Louis, Organization for Black Struggle, and the Peace Economy Project and supported by the Ferguson Collaborative) see this link: http://www.dronefreestl.org/wp-content/uploads/2016/03/Drone-Free-Stl-Updated-Body-Cam-Recommendations-3-16-16.pdf. These recommendations are the result of months of conversation in the St. Louis community and with policing and legal experts. We urge the Court to examine these and lay out specific policies in the consent decree.

Currently, the consent decree is lacking many specifics on body camera policy and we will highlight the most important issues here. The consent decree should delineate strict limits on officer discretion, who will store the data, who has access to it, and emphasize redaction rather than non-recording as a means to protect privacy. Below are our additional policies that need to be included in the consent decree:

- Cameras should be recording in all interactions between the public and police and privacy concerns should be addressed through redaction. However, the consent decree needs to list specific situations where citizens can request that cameras be turned off: crime victims, witnesses, etc. (232, Pg. 54)
- List specific situations when body cams must be turned off: confidential informers, use of bathroom or locker room facilities, conversations that reveal police tactics, etc.
- Specify details regarding issues that are crucial for protecting civil liberties:
    - Where data is housed: We recommend a non-law enforcement government agency with an extended contract specifying chain of custody requirements and more,
    - Who has access: Law enforcement should have reasonable suspicion or access for training, research, random audits to assure compliance; citizens who are on video should have access, as well as those who have filed a complaint or lawsuit.
    - Standards of access: An adequate log-in system with explanation of purpose, documentation of what was accessed, flagging for use as evidence in prosecutions or complaints so that length of data retention is extended. (248, Pg. 56)
- Video should be considered incident reports under Missouri Sunshine Law.
- Officers should be prohibited from viewing footage until they have completed an incident report and initial interviews. This is crucial to ensure preservation of officer perceptions. For an examination of this issue, see an article by police consultant Eric Daigle, though we would apply his logic to all incidents, not just use of force: http://www.daiglelawgroup.com/wp-content/uploads/2016/02/Watching-the-Video.pdf. (239, Pgs. 54-55a)

# "USA v. Ferguson, 4:16 CV 180"

## Provisions We Support

There are a variety of provisions already included in the consent decree that we believe are vital to moving the City of Ferguson towards an era of constitutional policing that upholds the dignity of oppressed communities, including:

- Data Collection and Analysis:
  - Requiring (1) the city to collect data on pedestrian and investigatory stops (2) police to inform citizens of their rights and obtain documented consent before engaging in searches without probable cause. (70/75/86, Pgs. 18/19/22)
  - Additionally, it is important to regularly audit the officers' stop, search, citation, and arrests documentation and to correct unconstitutional practices and hold officers accountable. (99-108, Pgs. 24-26)
  - The City and the FPD must collect, analyze, and publicly report, on an annual basis, data about use of force incidents, misconduct complaints, stop, search, citation and arrests to identify and address the unnecessary and unequal impact of police and court practices on the African American community and other protected communities. (411-415, Pgs. 102-103)
  - The requirement that the City and the FPD be required to annually assess and revise all police and court activities based on disparate impact (provided that citizens are given input into this process through the CRB). (72-74, Pg. 18)
- Training and Evaluation
  - The proposed emphasis on problem oriented policing would move us away from punitive law enforcement and toward finding real community solutions. The Community Mediation program would de-emphasize policing and create a vehicle for neighbors to sort out issues amongst themselves. (18/32, Pg. 4/8)
  - The creation of a Training Committee with members of the NPSC. (49, Pg. 12)
  - Performance evaluations and promotions must include community policing and problem solving, bias-free policing, and evaluation of record of stops (292-298, Pg. 68)
  - The Use of Force Provisions must include: (1) Emphasis on stabilizing and deescalating situations (2) Requiring police to safely intercede to prevent another officer from using objectively unreasonable force and (3) Requiring a supervisor to immediately inspect subjects and render or obtain medical assistance.
- Reporting Misconduct and Correcting Problematic Police Behavior
  - Requiring police officers to report misconduct. Failing to do so should result in discipline. (363, Pg. 89)
  - Employment of an Early Intervention System to identify and correct an officer's problematic behavior. (XIIIC, Pgs. 59-62)
- Miscellaneous:

6

## "USA v. Ferguson, 4:16 CV 180"

- - Should any other entity take on policing in Ferguson, the consent decree shall apply to them. (12, Pg. 3)
  - First Amendment protections. (VIII, Pgs. 26-30)
  - Use of Force policies (IX, PGs. 30-46). It is important to be placing an emphasis on de-escalation. Additionally, we strongly support empowering the Force Review Board to examine the totality of circumstances and decisions in instances when an officer has used force to determine of the force was necessary and appropriate and whether the officers involved could have de-escalated the situation. (189C, Pg. 45)

Submitted by the Ferguson Collaborative   Dated: April 12, 2016:

ACLU of Missouri

Coalition Against Police Crimes and Repression

Don't Shoot Coalition

Organization for Black Struggle

Christine Assefa

Richard Benton

Nikki Brandt

Cassandra Butler

John Chasnoff

Mildred Clines

Emily Davis

Francesca Griffin

Angelique Kidd

Denise Lieberman

John Powell

Tiffani Reiliford

Lee Smith

Karl Tricamo

# "USA v. Ferguson, 4:16 CV 180"

## Addendum

Below is a further list of provisions in the consent decree that the Ferguson Collaborative would like to see strengthened. [Again, numbers below refer to numbered paragraphs in the consent decree]

Points Needing Strengthening:

19. Who picks the facilitator for the structured small group police/community dialogues? Community engagement plan needs to be more than just "let's talk" gatherings; needs to be structured around airing of issues.

- 20b. Need to add training in Effective Police Interactions with Youth (offered by St. Louis County).

- 29a. "Periodically" is too vague; should require a specific percentage of time allocated to Community Oriented Policing and Problem Oriented Policing, e.g. 25%.

- 31. Crime data should include number of problems handled and how.

- 40. Plan for outreach on Code revisions should be approved by Monitor to ensure effectiveness.

- 46. Manual of policies and procedures should be online for the public.

- 64. Should include gender identity and immigration status and more in bias-free policing; should be same list as in paragraph 65.

- 70. Improvements in racial profiling data collection need to include analysis of individual officers and units including post stop info such as consent searches.

- 96 and 97. Seem to contradict each other about eliminating stop orders.

- 109. Assessments of stops should be required to include consent search disparity, consent search hit rate.

- 170. Need requirement that video in jail be kept for minimum of 7 days and that prisoners are made aware of that fact.

- 192 and 193. FRB should inform CRB as well as Chief when policy or training needs changing.

8

# "USA v. Ferguson, 4:16 CV 180"

- 195. Use of Force Assessments need to be broken down by race and ward as well as categories mentioned.

- 210. Training of SROs needs to include the dangers and data related to the School to Prison Pipeline, tendency of teachers to abdicate authority to police, school discipline policy and its alternative interventions; also Effective Police Interactions with Youth

- 229. Officers should be required to wear body cams while in uniform working secondary jobs.

- 317d. Those investigating misconduct need to learn how to interview complainants in a manner that is different from interviewing suspects (e.g. not trying to catch them in a "gotcha").

- 319. Officer wellness program needs to ensure confidentiality and the re-assurance that seeking help will not harm careers (this latter concern should be addressed as a prohibition in the sections on evaluation and promotion).

- 382. Qualifications for investigators of misconduct complaints should be reviewed by Monitor and/or DOJ.

- 410. Monitor's assessment of CRB should be annual.

- 415k. Should include data broken down by race, gender and ward.

- 430c The makeup of our metropolitan area requires that surveys include stakeholders as well as residents, i.e. those who work, drive, shop etc in Ferguson.

- 433. NPSC and the CRB should have input in evaluating the Monitor's surveys and in recommendations regarding changes in policy, training etc as a result.

9

"USA v. Ferguson, 4:16 CV 180"