UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 4:16-cv-180 |
| ) | |
| v. ) | Hon. Catherine D. Perry |
| ) | |
| THE CITY OF FERGUSON, ) | |
| ) | |
| Defendant. ) | |

## INDEPENDENT MONITOR INITIAL WORK PLAN

**Background**

Pursuant to Paragraph 424 of the Consent Decree (the "Consent Decree") entered into by the United States Department of Justice ("DOJ") and the City of Ferguson, Missouri (the "City") (together, the "Parties") effective as of April 19, 2016, this submission constitutes the Independent Monitor's (the "Monitor") initial work plan (the "Work Plan") for conducting: (a) reviews of policies, training curricula, and other written materials requiring Monitor review or approval; (b) evaluations and audits of whether the material requirements of the Consent Decree have been implemented; and (c) outcome assessments, including the community surveys required by the Consent Decree. The Monitor was jointly selected by the Parties, which selection was approved by Judge Catherine D. Perry of the United States District Court of the Eastern District of Missouri on July 22, 2016 (the "Monitor Selection Date").

Given the Monitor Selection Date, the Work Plan was due on October 17, 2016. By consent of the Parties, and for reasons explained below, the Monitor elected to delay submission until the process was far enough along that a substantive plan could be developed. The Monitor now submits this Work Plan, with the intent of modifying and expanding it at a future date.

A. **Review of Policies, Training Curricula, and other Written Materials**

In order "to ensure that officers have the knowledge, skills, and direction necessary to police constitutionally, effectively, and in a manner that promotes both officer and public safety," Consent Decree Paragraph 41, the Consent Decree requires the City to develop policies, training curricula, and other written materials that incorporate the requirements of the Consent Decree, applicable law, and best practices.

The policy development and review process has been slowed by the fact that the Consent Decree Coordinator provided for in Paragraph 454 of the Consent Decree was named relatively recently. Commander Frank McCall, formerly the Chief of the Berkeley, Missouri Police Department, assumed this critical position on October 11, 2016.  Pending his hiring, the job of reviewing existing police department and municipal court policies with a view to revising them to conform to the Consent Decree and other legal requirements fell to the police chief, Delrish Moss, who, of course, has many other pressing duties, and the City's outside counsel, Winston & Strawn, which was effectively serving as Acting City Attorney for some months.

With the appointment of Commander McCall, who has pledged to make policy review and revision his immediate-term priority, and, at or about the same time, a new City Attorney, Apollo Carey with the law firm of Lewis Rice, the policy review and revision process has begun to proceed in a more organized and focused fashion.  Previously, the Monitor and DOJ had reviewed revised policies as and when provided by the City, and, after arriving at a consensus, our comments were submitted jointly to the City for its consideration in an iterative process intended ultimately to result in their implementation. The Civilian Review Board ordinance referenced in Paragraph 403 of the Consent Decree was the product of this process, and it is scheduled for its first reading by City Council on December 13, 2016.

Since joining the Ferguson Police Department ("FPD"), Commander McCall has grouped FPD's numerous legacy policies into categories corresponding to sections of the Consent Decree for the purpose of reviewing and revising them in a priority order.  The first policies to be reviewed are those relating to: (1) recruitment; (2) community engagement; (3) use of force; (4) bias-free policing; (5) accountability (the Civilian Review Board ordinance fits into this category); and (6) stops, searches, citations, and arrests.  Accordingly, recruitment policies were submitted to the Monitor and DOJ on October 7, 2016, and we provided our comments back to the City on November 17, 2016.   Drafts of the duty to report misconduct and duty of candor policies had already been submitted to the Monitor and DOJ prior to the agreement as to which policies should be prioritized for review, and so, both the Monitor and DOJ submitted our comments on them to the City on November 18, 2016.  Furthermore, we have agreed that certain City policies now categorized as "Core," namely, those titled "Department Authority," "Department Jurisdiction," "Purpose and Mission," and "Goals and Objectives," are so fundamental to the reform process that they, too, should be prioritized for review and revision.  Finally, DOJ, with the concurrence of the Monitor, has provided the City with a checklist designed to ensure that, once policies are submitted to DOJ and the Monitor for their consideration, the City has first done its best to ensure that those policies have been revised to conform to the relevant provisions of the Consent Decree, applicable federal and state law, and best practices.

Now that a clear course has been charted for the policy review process, we expect that they will be revised more quickly than in the past, and both the Monitor and DOJ have pledged to provide the City with our comments on drafts as quickly as possible. Consistent with the requirements of the Consent Decree, the Monitor will take steps to ensure that community

members are appropriately consulted during the policy development process. In the coming months, and in consultation with the Parties, the Monitor will develop an anticipated schedule for the policy review process and update the Work Plan accordingly.

Once policies consistent with the Consent Decree, applicable law, and best practices are in place, the City will develop, likewise in consultation with and with the approval of the Monitor and DOJ, training materials designed to ensure that officers and municipal court officials, as the case may be, are aware of the revised policies, understand them, and implement them.

**B.     Evaluations and Audits**

For the reasons explained above, the Monitor is at this point unable as a practical matter, per Paragraph 424(b) of the Consent Decree, to "set out a schedule for conducting a review or audit of each requirement of the [Consent Decree] within the first two years… and a review or audit of each requirement at least annually." Only a handful of policies have been revised and reviewed to date, and a corresponding training program has yet to begin.

Notwithstanding, a few evaluations or audits can be undertaken now. For example, the City represents that the municipal court reform process is well underway, and so the Monitor will begin a review of same in the near term.

The methodology for this review will vary depending on the particulars of the provision at issue. In certain cases, the review will consist of confirming that certain process changes have been made. For example, Paragraph 325 of the Consent Decree requires the City to remove the municipal court from the oversight of the City Finance Director and instead to have it report directly to the St. Louis Circuit Court and the Missouri Supreme Court. Another example is Paragraph 336 of the Consent Decree, which requires the City to "revise its online payment system to allow late payments, payment plan installments, and all other court payments to be

made online except where prohibited by law." In other cases, the review will consist of merely verifying that certain municipal code provisions have been enacted or repealed as provided for in the Consent Decree. See Paragraph 38(a)-(e), for example. In other cases, the Monitor will need not only to review documents but also to verify that certain important information is provided to citizens. For example, Paragraph 332 requires the City "to provide all individuals charged with a violation of the Ferguson Municipal Code with adequate and reliable information regarding the charges brought against them, the options and requirements for resolving the charges, and the consequences for failing to resolve charges in a timely [manner]." In such instances, the Monitor will not only review documents, but also observe court proceedings and interview defendants and court personnel. Pursuant to Paragraph 426, prior to conducting an audit of a particular section of the Consent Decree, the Monitor will provide the Parties with a proposed methodology for that review.

Additionally, the Monitor has begun to review FPD's current staffing and schedule, drawing on an initial study by law enforcement consultant, Peter Bellmio. A key challenge for the department is that there are significantly fewer officers today (39) than in August 2014 (54). Given their reduced ranks, some officers have expressed the view that they lack the time to engage in community policing and to take the training courses contemplated by the Consent Decree. The Monitor's review is intended to thoroughly assess the current situation and determine whether, even with present staffing, there could be changes in procedures, protocols, and scheduling that could free up officers to engage in community policing and to take necessary training courses.

Finally, recognizing that FPD engagement with the community through groups like the Civilian Review Board Task Force, the Neighborhood Policing Steering Committee, the Youth

Advisory Board, and the various neighborhood associations is still very much a work in progress, the Monitor will begin to review the efficacy of the City's current efforts and, to the extent necessary or helpful, make recommendations for improvement.

###    C.    Outcome Assessments

Paragraph 429 of the Consent Decree requires the Monitor to conduct annual surveys of "public satisfaction" with the police department and municipal court, as well as attitudes among police personnel, municipal court personnel, and "detained arrestees." The first year surveys would serve as a baseline against which to measure changes in attitudes over the course of the monitorship.

The Monitor has completed a draft of the community survey, after soliciting, receiving, and incorporating input from DOJ, the City, and community groups.  The Monitor hopes to administer the survey no later than early January. The Monitor has completed a draft of the police survey as well, and will likewise seek input from DOJ, the City, and community groups. As for the views of detained arrestees and municipal court personnel, the Monitor anticipates either distributing the community survey to these two groups or tailoring a version of it specifically for them.

As for the outcome assessments called for in Paragraph 435(b)-(i), the Monitor is hopeful that the City maintains the relevant data so that a baseline assessment can now be done and progress, or the lack thereof, going forward can be assessed each year hereafter. The City uses a database maintained by an outside vendor, ITI.  After some weeks' delay, the Monitor has been given access to it, but needs to be able to see it in the same application and method as the City. ITI requires the City to authorize this additional step, and the Monitor is awaiting that authorization. Presuming the database contains the relevant information and it can be extracted

from the database, we will begin to compile baseline metrics like, for example, the number of stops, searches, citations, and arrests by race and other protected characteristics, immediately.

**Conclusion**

The Monitor plans to revise and update this initial work plan once additional policies (and, when applicable, training materials) are available to be reviewed; once additional provisions of the Consent Decree are purportedly implemented so that the Monitor can attempt to verify such implementation; and once it can be determined whether the City has and maintains the necessary information to make the annual outcome assessments called for in the Consent Decree. To the extent practicable, the updated work plan, again, will include estimated timelines for the completion of the Monitor tasks reflected therein.

Date:   December 5, 2016                          Respectfully submitted,

                                                  SPECIAL MASTER CLARK ERVIN

                                                   /s/ Clark Kent Ervin

                                                  Clark Kent Ervin (DC Bar # 1007825)
                                                  SQUIRE PATTON BOGGS (US) LLP
                                                  2550 M Street, NW
                                                  Washington, District of Columbia 20037
                                                  202-457-5234

## **CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies that the foregoing was filed electronically on December 5, 2016 with the Clerk of the Court for the United States District Court for the Eastern District of Missouri, and was served by ECF notice by operation of the Court's electronic filing system.

                                              /s/ Clark Kent Ervin