UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>        v.<br><br>THE CITY OF FERGUSON,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:16-cv-180<br><br>Hon. Catherine D. Perry |

INDEPENDENT MONITOR
<u>SPRING 2018 SEMIANNUAL REPORT</u>

## I.    INTRODUCTION

Paragraph 416 of the Consent Decree entered into between the United States Department of Justice ("DOJ") and the City of Ferguson, Missouri (the "City") (together, the "Parties") tasks the Independent Monitor (the "Monitor" or the "Monitoring Team") with assessing and reporting on the implementation of the Consent Decree.  Specifically, the Monitoring Team must ensure that the implementation of the Consent Decree results in constitutional and lawful policing, the administration of justice, and increased community trust between the public, the Ferguson Police Department ("FPD"), and the Ferguson Municipal Court (the "Municipal Court").  <u>See</u> Consent Decree, ¶ 416.  To accomplish this, the Monitoring Team must review policies, training curricula, and other written materials developed by FPD and the Municipal Court, and conduct audits and outcome assessments evaluating the City's implementation of the Consent Decree's provisions.

Paragraph 438 of the Consent Decree requires that the Monitor file with this Court, every six months, a written, public report.  <u>Id.</u> ¶ 438.  The Consent Decree specifies that the reports must include:

(a) a description of the work conducted by the Monitor during the reporting period;

(b) a list of each Consent Decree requirement, including details regarding which requirements have been incorporated into implemented policy, which are the subject of sufficient training for all relevant FPD officers and employees, and which are found by the Monitor to have been fully implemented in practice;

(c) the methodology and specific findings for each review and audit conducted, redacted where appropriate for privacy concerns;

(d) for any requirements that were reviewed or audited and found not to have been fully implemented in practice, the Monitor's recommendations regarding necessary steps to achieve compliance;

(e) the methodology and specific findings for each outcome assessment conducted; and

(f) a projection of the work to be completed during the upcoming reporting period and any anticipated challenges or concerns related to implementation of the provisions of the Consent Decree.

This report constitutes the Monitoring Team's first report for calendar year 2018.[1]

### A.   The Monitoring Team

The DOJ and the City of Ferguson submitted a joint motion for entry of the Consent Decree on March 17, 2016.  Dkt. No. 12.  This Court granted that motion and endorsed the Consent Decree on April 19, 2016.  Dkt. No. 41 at 133.  The Parties' initial monitor selection was approved by this Court on July 22, 2016.  Dkt. No. 48.  After agreement by the Parties and in consultation with the Court, Natashia Tidwell of Hogan Lovells US LLP was appointed as the new Lead Monitor on December 12, 2017.[2]  Dkt. No. 80.  This Court stated that "Ms. Tidwell shall have the duties, authority, and responsibilities of the Monitor as set forth in the Decree,

---

[1] The most recent status report in this case, the "Independent Monitor Initial Work Plan," was filed on December 5, 2016 by former Lead Monitor Clark Kent Ervin.  See Dkt. No. 55.  Accordingly, the details of this report will span the reporting period from January 2017 through March 2018.  In accordance with Paragraph 439 of the Consent Decree, this report has been agreed to by the Parties.  At the start of Year Three, the Monitoring Team will publish a comprehensive work plan, which will include a proposed schedule outlining new benchmarks and goals for the implementation of all aspects of the Consent Decree.

[2] Ms. Tidwell, a member of the Monitoring Team since August 2016, assumed the Lead Monitor's duties on an interim basis in September 2017.

including the discretion to select additional members of the Monitoring Team pursuant to the procedures set forth in Paragraph 423 of the Decree." Id.

As Lead Monitor, Ms. Tidwell heads the Monitoring Team.  As background on her experience and qualifications as Lead Monitor, Ms. Tidwell began her career in law enforcement as a member of the Cambridge Police Department.  While with the department, she worked as a school resource officer and as a Sergeant-Detective in the Internal Affairs Division.  In 2003, Ms. Tidwell became the first female lieutenant in the department's history.  After attending law school, Ms. Tidwell served as a federal prosecutor in both the DOJ's Public Integrity Section and the U.S. Attorney's Office for the District of Massachusetts.  As Counsel with Hogan Lovells US LLP, Ms. Tidwell's practice focuses on investigations and compliance, and, given her law enforcement expertise, includes serving as a policing subject matter expert for other monitoring teams.  Supporting Ms. Tidwell is the Monitoring Team of independent subject matter experts ("SMEs") and Hogan Lovells attorneys.  The members of the Monitoring Team have expertise in policing and court policy review, legal analysis, community engagement, data analysis and informational management, as well as police department training, compliance, and internal affairs.  Currently, the members of the team include:

- Kimberly Norwood, Henry H. Oberschelp Professor of Law, Professor of African and African American Studies, Washington University in St. Louis;

- Robert Stewart, Police Practices Expert, President and CEO of Bobcat Training and Consulting Inc.;

- Maggie Goodrich, Technology Consultant, President LE Innovation, Inc.;

- Steven Parish, Community Engagement Consultant;

- Karla Aghedo, Senior Associate in Investigations, White Collar, and Fraud, Hogan Lovells US LLP in Houston; and

- Courtney Caruso, Senior Associate in Investigations, White Collar, and Fraud, Hogan Lovells US LLP in Boston.[3]

**B.     The Monitoring Process**

Through the work of its subject matter experts, the Monitoring Team will conduct reviews and audits to determine whether the City, FPD, and the Municipal Court are in compliance with the Consent Decree, and will provide technical assistance as needed to guide the City through the implementation process.  Specifically, the Monitoring Team will ensure timely and complete implementation of the Consent Decree through the following three phases: (1) policy revision and review; (2) training and implementation; and (3) auditing and compliance assessment.

**1.     Policy Revision and Review**

The Consent Decree requires FPD and the Municipal Court to incorporate its provisions into specific policies and procedures as appropriate.  <u>See</u> Consent Decree, ¶ 42.  It further requires the development and implementation of most, but not all, of those policies and procedures within Year One.[4]  <u>Id.</u>  The City has not satisfied this requirement.  While progress is being made, the City's delegation of police-related policy development to one person within FPD, Commander Frank McCall (who was not appointed until October 2016), has resulted in a slower and more gradual policy development process.  Despite Commander McCall's best efforts, the process of revising, and in some instances, drafting from whole cloth, all of the

---

[3] The Monitor intends to engage at least one additional expert to support the implementation of the Consent Decree.

[4] Throughout this report, the Monitor refers to "Year One," "Year Two," and "Year Three" to identify past achievements and to outline future goals.  The monitorship officially began when the former Monitor was appointed by the Court on July 22, 2016.  Accordingly, Year One ran from August 2016 through July 2017, Year Two began in August 2017 and will end in July 2018, and Year Three will commence in August 2018.

policies required under the Consent Decree is work appropriate for more than one person.[5]  The

Monitoring Team is pleased that the Parties continue to work collaboratively in this area and

have reached an agreement regarding the most efficient method for the FPD policy revision and

review process going forward.  This method includes the following seven steps:[6]

    i.    *Kick-off/Announcement of Policy Area:* FPD notifies DOJ and the Monitor of its intent to begin drafting or revising policies in an identified subject area;

    ii.    *Technical Assistance:* The appropriate SME on the Monitoring Team provides FPD and DOJ with technical assistance in the form of model policies and/or initial guidance as to best practices in the identified subject area;

    iii.    *Gap Analysis:* FPD and DOJ conduct an assessment or gap analysis of FPD's current state of affairs (i.e., ascertain how FPD's existing policies, practices, and systems differ from the Consent Decree's requirements and best practices);

    iv.    *Policy Revision:* FPD and DOJ revise policies, practices, and systems in the target subject area to the extent required under the gap analysis;

    v.    *Solicitation of Community Input:* Several provisions of the Consent Decree require community involvement in the implementation of specific policies, including those designed to improve police/community relations.  The Parties are committed to soliciting community feedback on other policies as well, even where not explicitly required by the Consent Decree.  While the Parties continue to evaluate the best means of involving community stakeholders in the policy development process, the Parties have found that policy forums are an effective means of inviting and obtaining community input.

    vi.    *FPD Officer Review:* Pursuant to the Consent Decree, *see* Consent Decree ¶ 43, the City provides officers from varying ranks and units with a meaningful opportunity to review and comment on the new or revised policies and procedures; and

    vii.    *Return to Monitor/SME:* Upon completion of a draft policy, the Parties submit the policy to the Monitor and/or appropriate SME for review.  The SME will review the policy and either provide final approval or arrange for a conference call to discuss additional revisions.

---

[5] In the Conclusion of this report (see Section III), the Monitor makes specific recommendations for the hiring of additional personnel to assist with Consent Decree implementation.

[6] The steps outlined in the process are not necessarily intended to be implemented sequentially.  Rather, the Parties and the Monitoring Team will determine the appropriate methodology on a case-by-case basis.

### 2.      Training and Implementation

Pursuant to Paragraph 48 of the Consent Decree, FPD must provide training to its officers on all policies developed by the end of Year Two.  Consent Decree, ¶ 48.  As detailed above, the measured approach to policy development has hampered the City's progress in training and implementation.  Nevertheless, FPD has made some progress.  First, pursuant to Paragraph 56, FPD appointed Sergeant Dominica Morrow as its Training Coordinator.  Second, as required under Paragraph 49, the City has established a Training Committee comprised of FPD personnel and members of the Neighborhood Policing Steering Committee ("NPSC").  Lastly, the City has prioritized the development of a training schedule and training plan, which will direct delivery of the required training in Year Three and beyond.  Id. ¶¶ 50-51, see also id. ¶¶ 303-322.

On January 31 and February 1, 2018, the Monitor met with Sergeant Morrow and Commander McCall to discuss FPD's delivery of the required training.  Sergeant Morrow confirmed that she has begun the process of building up FPD's capacity to comply with the training requirements of the Consent Decree.  As part of this effort, Sergeant Morrow is working with Ms. Goodrich, the Monitoring Team's technology consultant, to ensure that FPD's systems are sufficient for organizing and tracking training data.  FPD will also need to assess its methods of training delivery, specifically by examining whether, and to what extent, Missouri state certification requirements harmonize with the Consent Decree's requirements for officer training.  For the remainder of Year Two, FPD will continue with these efforts and will prioritize training FPD personnel on the requirements, goals, and expectations of the Consent Decree itself.  Id. ¶ 305.  The Monitoring team will work with FPD to develop a method for the review of proposed training curricula, materials (including lesson plans and PowerPoint presentations), and delivery.  In Year Three, once FPD has instituted the appropriate training

6

procedures and systems, the Parties and the Monitoring Team will prioritize training on all developed policies. As is the case with policy revision and review, the Monitoring Team has recommended that the City hire additional personnel with expertise in training development and delivery to assist it in making the completed policies operational through a robust training program.

### 3.    Auditing and Assessing Compliance

With the exception of provisions related to court reform and overhaul of the Municipal Code, much of the implementation work remains in the policy revision and review phase.  As described in further detail below, some aspects of compliance with the Consent Decree are further along than others.  For example, more progress has been made on the municipal court reform section of the Consent Decree than in other areas.  As such, the Monitoring Team has already submitted its plan and proposed methodology for auditing court reform provisions in Year Two and beyond.[7]  The remaining subject areas, particularly those identified below as priority areas for FPD, are still in the early phases of implementation and cannot be audited at this point.  However, during the last quarter of Year Two and the first quarter of Year Three, the Monitoring Team intends to conduct some measure of compliance review in at least the areas of Stops, Searches, and Arrests, Use of Force, and Accountability, in order to establish a baseline assessment for future audits.[8]  The Monitoring Team will notify the Parties thirty days in advance of commencing any audit and will provide a proposed methodology in accordance with

---

[7] The results of the first phase of the Municipal Court audit, completed in August of 2017, are described in Section II(F) below.

[8] It is unclear whether FPD currently requires its officers to submit Use of Force reports as circumstances warrant.  If such reporting is available, the Monitoring Team will review them to establish a baseline audit of FPD's use of force.  The Monitoring Team recognizes that, in the absence of such reports, it may be necessary to use other means, such as incident and arrest reports, to complete an audit in this area.

Paragraph 426 of the Consent Decree.  At that time, the Monitoring Team will also submit any requests for documents and materials needed to assess compliance.  See id. ¶ 426.

## II.      DETAILED STATUS UPDATE

Because the Consent Decree contains numerous objectives and requirements that the City, FPD, and Municipal Court have agreed to implement, the Parties have prioritized specific provisions of the Consent Decree.  For FPD, the following six subject matter areas are the priorities: (1) community policing and engagement; (2) bias free police and court practices; (3) stops, searches, citations, and arrests; (4) use of force; (5) recruitment; and (6) accountability (including the Civilian Review Board (the "CRB")).  In addition to these priority areas, the Parties, with support from the Monitoring Team, have continued working toward implementation of the remaining requirements of the Consent Decree, with particular emphasis on implementation of provisions regarding municipal court reform, the school resource officer program, and body-worn and in-car camera policies.  This report outlines the efforts of the Parties and Monitoring Team in these areas, and details progress toward full compliance with the Consent Decree.  A table outlining the Monitoring Team's stated goals for Years Two and Three (March 2018 through July 2019) is attached as **Appendix A.**

### A.      Community Policing and Engagement

The Consent Decree requires that the City and FPD develop and implement FPD community engagement and community policing plans.  Id. ¶¶ 20, 26.  The Parties circulated a draft community policing policy that, in addition to articulating FPD's community policing philosophy and its plan for implementation and training on the policy, also recognizes the need for a separate community engagement plan to create opportunities for routine and frequent positive interactions between all representatives of FPD and the community it serves.  Following the Monitoring Team's initial review, the Parties provided the draft policy to the NPSC which

8

returned comments to the Parties.  Currently, the community policing policy is once again under review by the NPSC, which is examining whether it is satisfied with how its initial comments were incorporated into the draft policy.  Following the NPSC's final review, the Monitoring Team will ensure that the policy is distributed to other community stakeholders, such as the CRB, as outlined in Paragraph 20.  By the close of Year Two, after the relevant stakeholders have provided feedback on the draft community policing policy, the Monitoring Team will conduct a final review of the policy and will consult with the Parties to prepare logistics for FPD's training and implementation on the policy as well as the development of the separate community engagement plan.

In Year Three, the Monitoring Team will also work with the Parties to develop a plan for providing neighborhood mediations as required by Paragraph 33 of the Consent Decree.  This plan, which must be developed in consultation with members of the Ferguson community, will include an implementation timeline for interim steps, such as the retention of an administrator and volunteers, training, and the initiation of mediations.  Id. ¶ 33.  The Monitor has recommended that the City hire an Outreach Coordinator to oversee FPD's relationships with various neighborhood associations and to assist the City in the establishment of the mediation program and in the identification of a neutral facilitator to lead the series of small-group structured dialogues envisioned in Paragraph 19 of the Consent Decree.  The City should develop a plan for implementation of Paragraph 19 in the first quarter of Year Three.  To the extent it is necessary, the Monitoring Team may provide technical assistance to the City in identifying and hiring both a neutral facilitator and an Outreach Coordinator.

Finally, with respect to its own community engagement, the Monitoring Team will seek to increase its communications with the Ferguson Community as contemplated by Paragraph 441.  Since Ms. Tidwell's appointment as Lead Monitor in December 2017, she has held two

town hall-style events as well as open "office hours" for community members to speak with her individually.  During the latest town hall, held on March 5, 2018, Ms. Tidwell introduced Robert Stewart, Police Practices Expert, and Steven Parish, Community Engagement Consultant, to the Ferguson Community.  Mr. Stewart provided an overview of Community Policing, highlighting its goals as well as common obstacles to its implementation.  The Monitoring Team will continue to arrange for frequent opportunities for face-to-face communication with the community as well as with the Parties.

In addition, the Monitoring Team plans to establish other avenues for community members to share their experiences, perceptions, and feedback concerning the City, FPD, and the Consent Decree.  First, Steven Parish has joined the Monitoring Team as a Community Engagement consultant.  Mr. Parish brings particularized knowledge of the Ferguson community and its various stakeholders and will serve as a local representative of the Monitoring Team in Ferguson.  Through the Monitor and Mr. Parish, the Monitoring Team will continue to meet with various community organizations to discuss the ways in which the Monitoring Team and the Parties can rely on such organizations to more effectively liaise with the community.  Second, the Monitoring Team is committed to establishing more opportunities for direct communication with the Ferguson community.  For example, members of the community may now contact the Monitoring Team directly through the following email address and telephone number: fergusonmonitor@hoganlovells.com / (888) 791-8858.  The Monitoring Team has also initiated steps to take over the website launched by the former Lead Monitor (http://www.fergusonmonitorship.com/).  Once this website is under the Monitor's control, it will be updated to reflect information concerning the Monitoring Team and the status of implementation.

### 1.      The Neighborhood Policing Steering Committee

The NPSC was established through city ordinance as was required by Paragraphs 21 and 22 of the Consent Decree.  The NPSC conducts much of its work through subcommittees, which meet on a monthly basis and are responsible for specific subject areas, such as community engagement, recruitment, and municipal code reform.   The NPSC initially experienced organizational challenges that hindered its effectiveness.  However, since the fall of 2017, the NPSC has met regularly and has been successful in holding productive meetings.  On December 21, 2017, the NPSC began a series of trainings with Dr. Amber Johnson, Ph.D., which are aimed at increasing the strength of the organization and its capacity to fulfill its responsibilities as set forth in the Consent Decree.  Dr. Johnson is a faculty member at Saint Louis University and founder of the Justice Fleet Project.   Among other things, the trainings focused on active listening and addressed implicit bias.  In addition to NPSC members, representatives from FPD, city council members, and other community stakeholders have attended the trainings.   The trainings have been a success and provide the NPSC with a framework for bringing in additional guest speakers in the future.

Finally, as described herein, the NPSC has assumed an active role in the development of FPD's community policing policy and recruitment plan.  During the remainder of Year Two, the Monitor will prioritize effective methods of communicating with, and, where appropriate, providing guidance to, the NPSC.

### 2.      Civilian Review Board

The City, in consultation with DOJ and the Monitoring Team, has enacted the establishing ordinance for the CRB, which includes protocols for the selection of members, and has developed training materials for its members.  The Monitoring Team reviewed and approved these training materials prior to implementation and will continue to evaluate the CRB's

participation in the development and revision of policies and training related to Accountability. The CRB continues to develop internal policies/manuals for self-government and to formulate a program for the promotion of public awareness and education as required by Paragraph 405(d),(g).  Currently, the CRB meets on a monthly basis.

### 3.  Surveys

Paragraphs 429 and 430 of the Consent Decree require that the Monitoring Team conduct annual surveys of members of the Ferguson community, including Ferguson residents, law enforcement personnel, and detained arrestees.  In particular, the surveys are aimed at gathering information about (1) the community's experiences with and perceptions of FPD, public safety, and the municipal court; and (2) police officers' attitudes regarding their jobs and the Ferguson community.

The Officer Attitudes and Perceptions Survey was administered to FPD officers in the late summer of 2017.  Richard Trinkner, Ph.D., and Faith Gifford, M.S., of Arizona State University School of Criminology and Criminal Justice provided a descriptive analysis of the survey results.  Their report is organized into two basic categories: (1) organizational measures which focus on officers' attitudes and perceptions about their department and the people in it; and (2) community measures which focus on officers' attitudes and perceptions about the public and law enforcement strategies.  After publication of the full report during Year Two, and in accordance with Paragraphs 432 and 433 of the Consent Decree, the City and FPD will analyze the results of this survey and will use this analysis to modify and improve FPD policies, training, and practices as needed.  The Monitoring Team will aid in the Parties' analysis and, in Year Three, will re-administer the officer survey, using the initial set of results as a baseline measurement against which future surveys may be judged.

As previously stated in the December 2016 Initial Work-Plan, the Monitoring Team completed a draft of a community-wide survey in Year One.  Despite efforts to administer the survey in 2017, however, the Monitoring Team was unable to do so.  Accordingly, during the remainder of Year Two, the Monitoring Team will prioritize the administration of the community survey, and, specifically, the identification of an SME who can facilitate the Monitoring Team's efforts in survey administration, and, if necessary, a community partner able to assist in this area.

**B.    Bias-Free Police and Court Practices**

Although bias-free policing and court practices were identified as a priority area in Year One, policy development has yet to begin.  Accordingly, bias-free police and court practice policy development should be completed within the next reporting period with implementation and training initiated during Year Three.  The Monitoring Team will also prioritize the development and implementation of policies and training for individuals who have a limited ability to speak, read, write, or understand English.  See id. ¶ 67.  Finally, to the extent practicable, FPD will commence, in Year Three, a review of policies pertaining to officer response to allegations of domestic violence and sexual assault.  See id. ¶ 68.  Further details regarding bias-free court practices are contained in the section below addressing Municipal Court Reform.

**C.    Voluntary Contacts, Stops, Searches, Citations, and Arrests**

Pursuant to the policy review and revision process detailed in Section I(B)(1) of this report, FPD is currently in the process of conducting a gap analysis with respect to its stop, search, and arrest policies.  The Parties will revise these policies during the last quarter of Year Two.  In preparation for training on these policies, the Monitoring Team will conduct an audit of

citations, arrest reports, and field inquiry reports (if available) to establish a baseline for future audits and to provide technical assistance to FPD in the drafting of policies in this area.

### D.   Use Of Force

The Parties have drafted an umbrella policy pertaining to the use of force as well as a suite of policies that correspond to various instrumentalities of force and a process for reporting and investigating uses of force.  See generally Consent Decree, § IX.  The suite of policies includes general orders on each of the following topics: lethal/less lethal force; firearms; electronic control weapons; batons; OC spray; less lethal bean bag shotguns and ammunition; canines; vehicle pursuits; force reporting; force response and investigation; critical incident response; and the Force Review Board.  The Parties have also completed flow charts, which accompany the Force Response and Investigation Policies, for incidents involving Types 1, 2, and 3 use of force.  During Year Two, the Parties held multiple policy forums in which Ferguson community members were invited to review and provide feedback on the use of force policies.  The community forums included a general presentation of the policies by the Parties as well as an opportunity for community members to engage in dialogue in a small-group setting.  After these forums, the Parties revised the policies to incorporate feedback received from the community.  The policies were presented to the Monitoring Team for final approval in February 2018, and the Monitoring Team provided feedback and comments to the Parties in March 2018.

During the remainder of Year Two, the Monitoring Team will assist in the finalizing and completion of use of force policy development.  Training on these policies will commence in Year Three.  In addition, the Monitoring Team will conduct an audit of FPD use of force and incident reports, to the extent they are available, in order to establish a baseline for future audits and to provide technical assistance to FPD in developing training in this area.

### E.    Recruitment

The Parties have drafted a Recruitment Plan for attracting and retaining a high-quality and diverse work force as required by Paragraphs 282 and 283 of the Consent Decree. While the Monitoring Team conducted an initial review of the Recruitment Plan during Year One, the Monitoring Team requested the opportunity for Mr. Parish, its Community Engagement Consultant, to also review the plan and to offer feedback. The Parties agreed. Final approval of the plan is pending as the City has not yet developed a method for complying with Paragraph 283(a), which requires the City to offer salaries that will place FPD among the most competitive of similarly sized agencies in St. Louis County. Accordingly, in the final quarter of Year Two, the City should develop a plan for compliance with this provision. During Year One, the background investigation and screening system required by Paragraphs 288 and 289 of the Consent Decree was developed by FPD and approved by the Monitor. The background investigation manual is currently in use by FPD.

Before the close of Year Two, Chief Moss will explain the provisions of the Recruitment Plan to rank and file members of FPD as is required under Paragraph 284. The City will provide an outline of Chief Moss's presentation and any accompanying materials along with a proposed schedule to the Monitoring Team thirty days in advance of implementation. The Monitoring Team will review job applications and background investigation files to assess compliance. In Year Three, the City Manager, in consultation with the Chief of Police, the Monitor, and the DOJ, will revise the plan as necessary.

### F.    Municipal Court Reform

Reform of the Ferguson Municipal Court has progressed significantly under the Consent Decree. Pursuant to Paragraph 323 of the Consent Decree, the Monitoring Team has engaged with DOJ and the City to reform the Municipal Court to ensure that the Municipal Code is

enforced for the purpose of protecting public safety and to enable the fair and impartial resolution of municipal charges. The Parties have agreed to several measures designed to ensure that enforcement of the Municipal Code is driven by public safety, including implementation of the Comprehensive Amnesty Program, revision of practices of the Municipal Court, and ongoing assessment and improvement of the Municipal Court.

With assistance from the Court staff, including the Court Clerk and Municipal Court Judge and the City Attorney, the City of Ferguson has worked cooperatively with DOJ and the Monitoring Team to develop, revise, and implement policies and procedures that effectively address the findings of DOJ's investigation and related provisions of the Consent Decree. While several provisions have not yet been addressed, the City of Ferguson continues to collaborate with DOJ and the Monitoring Team to advance the goals of the Consent Decree with specific goals and timelines to guide this effort.

### 1.    Audit Procedures & Compliance

Pursuant to Paragraph 424 and consistent with its responsibility to ensure compliance with the Consent Decree, the Monitoring Team established a biannual audit schedule of the specific provisions addressing Municipal Court reform.[9]   The first audit was conducted in August 2017.  In preparation for the August 2017 audit, the Monitoring Team sent a work plan to the Parties identifying twenty provisions of the Consent Decree designated for auditing.  For some provisions of the Consent Decree, the Monitoring Team elected to defer auditing those provisions until a later date, recognizing the City's need to prioritize and focus its reform efforts, rather than attempt to address all of the provisions at one time without sufficient resources to do so.  The procedures for auditing the relevant provisions were divided into six categories:

---

[9] The Monitoring Team initially proposed an August/February audit schedule.  Due to changes in the Monitoring Team and to ensure better coordination of effort, the biannual audits will now take place in March and September.

i. *Document Review*: The Monitoring Team requested to review policies, procedures, and other documents such as the City budget during the audit;

ii. *City Ordinance Review:* The Monitoring Team reviewed the City ordinances that the City was required to enact, repeal, or revise in compliance with the Consent Decree.  Most, if not all, required changes to City ordinances were completed before the effective date of the Consent Decree;

iii. *Database Review:* The Monitoring Team requested access to or reports from the court's computerized database, ITI, during the audit to confirm the existence, or non-existence of arrests and citations for rescinded ordinances like Failure to Appear; to collect data related to the so-called "good cause" cases from prior to January 1, 2014, pursuant to the Comprehensive Amnesty Program; and to confirm the status of associated warrants.  There were some technical difficulties in accessing the database during the audit period; specifically, there was some question as to who should bear the expense for ITI making a copy of the database available to the Monitoring Team.  At the time of issuance of this report, the Monitoring Team does not have remote access to ITI and currently accomplishes confirmation of information available in the database through onsite visits or specific requests for reports from the Court Staff;

iv. *Website Review:* The Monitoring Team reviewed the City's website and the specific pages designated for the Ferguson Municipal Court, as well as the website of the City's online payment vendor, to audit compliance with the Consent Decree provisions requiring the City to maintain a website and to make certain information readily accessible;

v. *Municipal Court Case File Review:*  The Monitoring Team requested onsite review of case files to audit compliance with the Consent Decree provisions related to the Comprehensive Amnesty Program and the reduction or dismissal of cases in which defendants were subject to fines and fees related to Failure to Appear charges.  The Monitoring Team notified the Court Staff prior to the court visit to have cases made available for review; and

vi. *Observation of Municipal Court Operations:* The Monitoring Team attended court sessions to observe the operations of the Ferguson Municipal Court, pursuant to several provisions of the Consent Decree, including required notifications to defendants, ability-to-pay determinations, options related to alternative sentences (*e.g.*, community service in lieu of payment of fines) and payment plans, and the conduct of the Municipal Court Judge and City Prosecutor to ensure their independence and impartiality.

Each provision related to Municipal Court Reform has been evaluated and provided with a compliance grade for the August 2017 audit period based on the following scale:

i. **In Compliance:** Indicating that the City has fully satisfied the written requirements of the Consent Decree provision and fulfilled the purpose of the provision by doing so;

ii. **Partial Compliance**: Indicating that the City has satisfied some but not all requirements of the Consent Decree provision;

iii. **Initial Development**: Indicating that, during the audit period, the City has taken at least one measure in the process of fulfilling the requirements of the Consent Decree, but has not yet completed its requirements;

iv. **Out of Compliance**: Indicating that the City received notice that the Consent Decree provision would be assessed during the audit period, but has not yet fulfilled the requirements of the provision and has not taken meaningful steps to do so; and

v. **Not Assessed**: Indicating that the Monitoring Team did not give the City notice that this provision of the Consent Decree would be assessed this reporting period. For Consent Decree provisions that the City addressed ahead of schedule, without notice of assessment from the Monitoring Team, the City has received one of the compliance grades outlined above.

2.    **Summary of Audit Findings**

The findings of the audit are outlined below in *Table 1: Ferguson Municipal Court Reform at a Glance*, with reference to specific provisions of the Consent Decree as applicable. The specific bases for these ratings are explained in further detail below in Section II(F)(3) of this report.

**Table 1: Ferguson Municipal Court Reform at a Glance**

| Consent Decree Provision | Audit Procedures | Status |
|---|---|---|
| ¶ 324: Ensure cap on revenue from municipal fines and fees | Document Review: City budget and financial records | In Compliance |
| ¶ 325: Remove municipal court from oversight of City Finance Director | Observation of Municipal Court Operations and review of city budget | In Compliance |
| ¶ 326: Implement Comprehensive Amnesty Program for cases without a disposition initiated before January 1, 2014, and repeal all or parts of Ferguson Municipal Code §13-60, §13-63, §13-70(2) and (3), and §44-50 | City Ordinance Review; Database Review of pending and closed cases; Municipal Court Case File Review of pending and closed cases; Observation of Municipal Court Operations | Initial Development<br>¶ 326(a) – Initial Development<br>¶ 326(b) – In Compliance<br>¶ 326(c) – In Compliance<br>¶ 326(d) – In Compliance |

| ¶ 327: Implement Comprehensive Amnesty Program, eliminate charges, and cancel warrants for cases without a disposition initiated before January 1, 2014 | Database Review of pending and closed cases; Municipal Court Case File Review of pending and closed cases; Observation of Municipal Court Operations | Initial Development |
|---|---|---|
| ¶ 328: Develop and implement policies to ensure fair administration of justice | City Ordinance Review; Website Review; Observation of Municipal Court Operations | Initial Development |
| ¶ 329: Increase transparency of court operations | Website Review | Initial Development |
| ¶ 330: Develop and implement plan for public education campaign about municipal court | Website Review; Observation of Municipal Court Operations | Not Assessed |
| ¶ 331: Make information available regarding cost-free legal assistance | Website Review; Observation of Municipal Court Operations | Out of Compliance |
| ¶ 332: Provide adequate notice of charges, options, requirements, and consequences | Document Review of citation and arrest notice; Website Review | Initial Development |
| ¶ 333: Provide clear information regarding rights and responsibilities | Document Review of citation and arrest notice; Website Review | Initial Development |
| ¶ 334: Monthly audits of citations to ensure proper completion | Document Review of draft policy | Initial Development |
| ¶ 335: Maintain current contact information for individuals with pending cases | Observation of Municipal Court Operations | Partial Compliance |
| ¶ 336: Revise online payment system to allow late payments and payment plan installations | Website Review | Partial Compliance |
| ¶ 337: Online access to charging details and status for defendants | Document Review of Memorandum of Understanding; Website Review | Initial Development |
| ¶ 338: Ensure privacy protections for online court systems | Document Review of vendor policy; Website Review | Initial Development |
| ¶ 339: Eliminate unnecessary barriers to resolving cases | Document Review of draft policy; City Ordinance Review; Website Review; Observation of Municipal Court Operations | Initial Development |
| ¶ 340: Provide appropriate ability-to-pay determinations | Website Review; Observation of Municipal Court Operations | Initial Development |
| ¶ 341: Maintain public list of preset fines, accounting for punitive nature, local income levels, and regional averages | Document Review of current fines and fees schedule; Website Review; Observation of Municipal Court Operations | Partial Compliance |
| ¶ 342: No additional fines and fees for Failure to Appear or violations of repealed code provisions §13-60, §13-63, §13-70(2), or §13-70(3). | City Ordinance Review; Database Review of pending and closed cases; Municipal Court Case File Review of pending and closed cases; Observation of Municipal Court Operations | In Compliance |

| ¶ 343: Provide alternative sentence and payment plan options | Website Review; Observation of Municipal Court Operations | Initial Development |
|---|---|---|
| ¶ 344: Implement community service as a sentence alternative | Website Review; Observation of Municipal Court Operations | Initial Development |
| ¶ 345: Provide options for court-managed payment plans | Website Review; Observation of Municipal Court Operations | Initial Development |
| ¶ 346: Appropriate debt collection for failure to complete community service or payments in timely manner | Website Review; Observation of Municipal Court Operations | In Compliance |
| ¶ 347: Prohibition on arrest warrants to collect civil court debt | Database Review of warrants; Observation of Municipal Court Operations | In Compliance |
| ¶ 348: Develop and implement policy to ensure arrest warrants are issued only after exhausting measures to secure defendant's appearance | Website Review; Observation of Municipal Court Operations | Initial Development |
| ¶ 349: Ensure no custody based on ability to pay monetary bond | Document Review of custody logs where available; Website Review; Observation of Municipal Court Operations | In Compliance |
| ¶ 350: Develop and implement plan eliminating use of fixed monetary bond schedule | Document Review of court order submitted by City; Website Review | Initial Development |
| ¶ 351: Reporting failure to appear or pay fines for moving traffic violation to Missouri Department of Revenue only to extent required by law | Database Review; Observation of Municipal Court Operations | Not Assessed |
| ¶ 352: Provide compliance letters for suspended license based on Missouri Revised Statute §302.341.1 immediately following court appearance | Database Review; Observation of Municipal Court Operations | Not assessed |
| ¶ 353: Develop and implement trial procedures ensuring fair and impartial conduct of trial | Document Review of draft policy; Website Review; Observation of Municipal Court Operations | Initial Development |
| ¶ 354: Ensure online court systems allow collection of aggregate data for court data collection and reporting requirements | Database Review | Initial Development |
| ¶ 355: Ensure electronic records management system has appropriate controls to limit user access and ability to alter case records, and comports with applicable law | Database Review | In Compliance |
| ¶ 356: Provide timely and accurate reports to Missouri State Courts Administrator (MSCA) and make MSCA reports and other court data accessible to public | Website Review | In Compliance |

| ¶ 357: Ensure municipal court operates independently of City Prosecutor | Document Review of May 2016 policy; Ordinance Review; Observation of Municipal Court Operations | Partial Compliance |
|---|---|---|
| ¶ 358: Ensure impartiality of municipal court judge | Ordinance Review; Observation of Municipal Court Operations | In Compliance |
| ¶ 359: Ensure appropriate accommodations for individuals with mental, intellectual, or developmental disabilities | Website Review; Observation of Municipal Court Operations | Initial Development |
| ¶ 360: Develop protocols for conducting cost-feasible, data-driven, and qualitative assessments of court practices | Document Review; Website Review | Not Assessed |

### 3.     Detailed Audit Findings

The detailed findings of the August 2017 audit are provided in this section of the report with reference to specific provisions of the Consent Decree as applicable, along with recommendations for next steps and a proposed timeframe for auditing compliance with the respective provision.  Where a certain provision was not reviewed during the August 2017 audit, this is specifically noted and the report provides a summary of any progress related to the provision, followed by recommendations for next steps and a proposed timeframe for auditing compliance with the provision.  As mentioned above, the Monitoring Team did not include all provisions of the Consent Decree in the August 2017 audit to avoid undermining the City's resources and to facilitate prioritization of the City's efforts to comply.

a.     Ensuring that Municipal Code Enforcement is Driven by Public Safety (Paragraphs 324 & 325)

Pursuant to Paragraph 324 of the Consent Decree, the City achieved full compliance with the 12.5 percent cap on revenue from municipal fines and fees, consistent with the mandate of Mo. Rev. Stat. § 479.350, and remained in full compliance with this provision during the August 2017 audit period.  According to the City Budget for fiscal year 2016-2017, the actual

revenues from fines and fees was under 12.5 percent of total revenues for the City, as was the amount of revenue from fines and fees for the 2017 forecast.

Pursuant to Paragraph 325 of the Consent Decree, the City, by order of the City Manager, successfully removed the Municipal Court from the oversight of the City Finance Director.  The organizational chart submitted with the City's budget for fiscal year 2017-2018 reflects the change.  Effective July 1, 2017, as part of a larger restructuring of the municipal courts in St. Louis County, the Ferguson Municipal Court is required to certify, to the Presiding Circuit Judge of St. Louis County, its compliance with circuit court operating rules and procedures, effectively confirming that the Municipal Court falls within the Circuit Court's supervision.  During the August 2017 audit, the Monitoring Team reviewed Ferguson's annual certification of compliance.

b.   Comprehensive Amnesty Program (Paragraphs 326 & 327)

Pursuant to Paragraph 326 of the Consent Decree, the City has implemented a Comprehensive Amnesty Program which includes a process for declining to prosecute all open cases without a disposition that were initiated prior to January 1, 2014, unless the City Prosecutor finds good cause to continue the prosecution.  As of the August 2017 audit, the City was not in full compliance with Paragraph 327 of the Consent Decree, requiring implementation of the Comprehensive Amnesty Program within 30 days of the effective date of the Consent Decree; the elimination of all relevant charges, fines, and fees pending from cases initiated prior to January 1, 2014; and the cancellation of any municipal arrest warrants or collection of fines and fees associated with these cases.  However, the City has developed a plan for implementing the Comprehensive Amnesty Program and has started implementation of the plan.

In agreement with DOJ and in consultation with the Monitoring Team, the City has established a review process and schedule for the City Prosecutor and Court Staff to complete

review of the cases initiated prior to January 1, 2014, with expectations that this review process will be completed by the June 2018 status conference, well ahead of the September 2018 audit period.

To fully implement the Comprehensive Amnesty Program, the Parties have agreed to the following:

 i. The City Prosecutor will create good cause criteria by which to evaluate all cases without a disposition that were initiated prior to January 1, 2014.  The criteria were developed and approved by DOJ and the Monitoring Team;[10] and

 ii. The City Prosecutor will review all cases without a disposition that were initiated prior to January 1, 2014 to determine whether to decline prosecution or move forward with the case because it fits within one of the good cause criteria, and will document which of the good cause criteria has been satisfied for each of the cases that remains open for continued prosecution.  The City Prosecutor and the Municipal Court staff have initiated, but not completed, the good cause review process.

As of February 28, 2018, the City Prosecutor and Court Staff have reviewed and recommended a disposition for 6,085 cases initiated prior to January 1, 2014 under the Comprehensive Amnesty Program.  There are 1,847 cases that have not yet been reviewed.  The City has committed to completing the pre-2014 case review process no later than June 2018 in advance of the June status conference and hearing before Judge Perry.

Pursuant to Paragraph 326(b) of the Consent Decree, and through an order issued by the Municipal Court Judge, the City has eliminated all pending charges, fines, and fees related to Failure to Appear Violations without requiring defendants to make bond payments, appear in court, or take any other action.  All such cases have been cleared out of the Municipal Court's electronic database and tracking system.  During the August 2017 audit, the Monitoring Team was able to confirm that there were no active or pending Failure to Appear cases in the system.

---

[10] The good cause criteria were modified in early March 2018 to reflect changes to Standard 3 related to Driving While License Suspended and Driving While License Revoked cases.  The Parties and the Monitoring Team agreed to these changes.  The modified good cause criteria are provided in **Appendix B.**

Pursuant to Paragraph 326(c) of the Consent Decree, the City has repealed all or parts of Ferguson Municipal Code § 13-60, § 13-63, § 13-70(2) and (3), and § 44-50, and has eliminated all pending fines and fees imposed pursuant to the applicable provisions of these sections. According to the version of the Municipal Code available online, the City repealed  § 13-60 in its entirety on  May 26, 2015; removed the provisions of § 13-63 authorizing special deterrent fees as part of parole and probation on  February 23, 2016; removed the provisions of § 13-70(2) and (3) authorizing fees for continuing court proceedings, issuing and serving warrants, mileage, and witness fees other than costs associated with calling an expert witness to prosecute a charge of driving while under the influence on  February 23, 2016; and repealed § 44-50 in its entirety on  September 23, 2014.  All cases related to these rescinded provisions have been cleared out of the Municipal Court's electronic database and tracking system.  During the August 2017 audit, the Monitoring Team confirmed that there were no active or pending cases in the system associated with these provisions.

Pursuant to Paragraph 326(d) of the Consent Decree, the City has taken measures to ensure that, where a defendant has made total payments that exceed the amount of the initial fines and fees imposed for a municipal ordinance violation, including payments for associated Failure to Appear Violations, the City has recommended that the fines be stayed and the case be closed without requiring defendants to make a bond payment, appear in court, or take any other action.  Where payments have been made that do not total or exceed the original fine amount, the City has recommended lowering the fine and fee debts owed down to the amount of the initial fines and fees imposed, minus any payment already made by the defendant.

As part of the August 2017 audit process, the Monitoring Team reviewed a random sample of ten percent of cases in which the Municipal Court's electronic database and tracking system reflect either a reduced fine amount or an outright dismissal due to the defendant's

payment of fines stemming from Failure to Appear charges under Ferguson Municipal Code § 13-58.   There were 183 such cases from January through July 2017, totaling $51,627.50. Although not required to do so under the Consent Decree, the Municipal Court also dismissed a substantial number of cases (with a disposition) due to case age.   There were 192 such cases from January through July 2017, totaling $60,546.00.   The Monitoring Team also reviewed a random sample of ten percent of these cases.   In sum, the Monitoring Team reviewed 37 case files during the August 2017 audit, some dating as far back as 2004, and found that the fines were reduced or dismissed as appropriate under the Consent Decree in each of these cases.[11] The Monitoring Team will continue to review a ten percent random sample of these categories of cases as part of the biannual auditing process.

          c.    <u>Revision of Ferguson Municipal Court Practices (Paragraphs 328 through 359)</u>

       Pursuant to Paragraph 328 of the Consent Decree, and in conjunction with DOJ, the City has started the process of developing and implementing the ordinances and policies necessary to ensure the fair administration of justice as well as the constitutionality and legality of Municipal Court procedures.   This process has not yet been completed.   The goal is for the City to develop a comprehensive manual of all policies, procedures, and protocols related to the Municipal Court.   Specifically, the City has agreed to remediate fourteen key aspects of the Municipal Court.   The following represents a summary of the status of each of these fourteen aspects of the Municipal Court procedural remediation agreement:

---

[11] While the bulk of these cases were ultimately dismissed due to age or because the defendant's Failure to Appear payments exceeded the balance owed, those that remain open are ineligible for "good cause" review because the defendant has pleaded guilty or been found responsible.

1.      __Increasing transparency of court operations.__   Under Paragraph 329, the City has made progress on increasing the transparency of Municipal Court operations by enhancing the information available through its website.  The City's website now contains clear and accurate information about the Municipal Court process and all of the specific information required by Paragraph 329, with the exception of the most recent schedule of pre-established fines and fees. The schedule of fees available on the City website became effective by order issued on December 12, 2016, whereas the City's online payment vendor, The Payment Group, has a City of Ferguson schedule of fees on its website which became effective May 31, 2017.   This discrepancy needs to be reconciled.

Additionally, the City's website currently does not contain information regarding how to obtain cost-free legal assistance to defend against a pending charge regardless of the fine amount or possible sentence, though it does make clear that an attorney will be provided by the Court if the defendant faces the possibility of jail time.  See id. ¶ 331.  The City should also evaluate other means of increasing the transparency of court operations in ways that are meaningful for citizens in the community it serves, including through print media and phone-accessible information.

The City has not yet developed and implemented a plan for a public education campaign aimed at spreading accurate and complete information about the Municipal Court's operations. See id. ¶ 330.  This provision was not assessed by the Monitoring Team during the August 2017 audit period, but will be addressed in a future audit, likely during the September 2018 audit. During a February 2018 visit to Ferguson, the Monitoring Team met with City officials and Jack Kirkland, MSW, Associate Professor at the George Warren Brown School of Social Work, Washington University in St. Louis, and discussed the public education efforts required by the Consent Decree.  Professor Kirkland, an expert in issues of community work, group relations,

social development, racism, social planning, and urban environments, has offered to assist in the City's efforts to more effectively communicate with the Ferguson community, particularly with respect to the City's obligation to educate local residents and stakeholders about Municipal Court operations.  During the remainder of Year Two and throughout Year Three, the City will utilize interns in Professor Kirkland's courses to assist in the development of community engagement and education plans.

**2.**      **Ensuring adequate notice to individuals charged with a violation of the Ferguson Municipal Code.**  To ensure individuals charged with violations receive adequate and reliable information about their rights, the City has provided citations, summonses, arrest notification forms, and other charging documents used by the FPD, which reflect most, but not all, of the information required under Paragraph 333 of the Consent Decree.  The City must revise the citation document to provide a clear statement notifying the recipient of the right to challenge the charge in court and instructions regarding how to do so, see id. ¶ 333(d); to provide a clear statement that the recipient is entitled to have the amount of the imposed fine proportioned to the recipient's ability to pay, see id. ¶ 333(h); to provide the range of possible penalties for failing to meet court requirements, see id. ¶ 333(i); and to provide clear instructions regarding how to acquire information regarding a pending charge, including how to contact a clerk of the Municipal Court by phone or in person, see id. ¶ 333(j).

Pursuant to Paragraph 333, the City has drafted a plan for performing monthly audits of citations, arrest notification forms, and other notices of violations used by officers to ensure that such documents are completed properly and provide the recipient with thorough and accurate information.  During the next audit period, the Monitoring Team and DOJ will work with the City to revise the plan to ensure that it identifies the person conducting the audits, the reporting

mechanism for the audits, and the accountability measures for failure to accurately complete the notices of violations.  See id. ¶ 334.

During the August 2017 audit period, the Monitoring Team observed Night Court proceedings and confirmed that Court Staff are requesting updated contact information by providing each defendant who appears in court with an "Updated Contact Information" Form, pursuant to Paragraph 335.  Completion of the form is optional, however, and it appears that few defendants actually do so.  When a defendant opts to complete the form, it is placed in his/her case file.  During one court session, the Monitoring Team overheard defendants express reservation about completing the form due to mistrust of government officials having access to private information.  To enable auditing of this provision, the City should develop a form or certification that Court Staff can use to record a defendant's refusal to provide updated contact information.[12]  Future audits will likewise confirm that updated contact information is being requested during court sessions and that the updated contact information or refusal to provide such information is entered into and maintained within the defendant's municipal court file.

**3.      Revising the online payment system to make all municipal court payments available online except where prohibited by law.**  Pursuant to Paragraph 336 of the Consent Decree, the City has engaged an outside vendor called The Payment Group ("TPG") to manage its online payment system.  However, under the link to the "Ferguson Municipal Court" on the TPG website, the statement "All payments made here must be in full" could mislead a user into believing that the City does not accept partial payments online, when in fact, it does.

---

[12] In a post-session review of case files of those defendants who appeared during the Night Court session, the Monitoring Team observed blank "Updated Contact Information" forms in case files, which was ostensibly designed to indicate a defendant's refusal to complete the form.  Nonetheless, a more formal protocol would better capture the data required by Paragraph 335.

Underneath the "Ferguson Municipal Court" link is another link to "Ferguson Partial Payments" where users can make partial payments, or payment plan installments, in compliance with Paragraph 336. The Monitoring Team recommends adding language to the "Ferguson Municipal Court" link stating that "Partial payments or payment plan installments must be made through the Ferguson Partial Payments page" and providing a link from the "Ferguson Municipal Court" page to the "Ferguson Partial Payments" page to avoid any confusion. The City website should also be revised to clearly indicate that late payments will be accepted via the online payment system, in compliance with Paragraph 336.

Pursuant to Paragraph 337, the City has entered into a Memorandum of Understanding with Rise Community Development/CivTech St. Louis signifying an intent to work together to make the "YourSTLCourts" online court information system available to recipients of tickets relating to municipal code violations that occur in the City of Ferguson. The Monitoring Team did not provide notice that this provision of the Consent Decree would be reviewed during the August 2017 audit period; the City's efforts on this provision are ahead of scheduled expectations and are commendable in that regard. The Monitoring Team will continue to consult with the City to facilitate development of the online court information system capable of providing the information specified in Paragraph 337.

To address the requirements of Paragraph 338, the City has provided the Monitoring Team with a copy of the Privacy Policy of TPG. However, neither the Ferguson Municipal Court website nor the TPG website contains a reference to or link to the Privacy Policy of TPG. The Monitoring Team will continue to consult with the City and DOJ to facilitate further development of the privacy protections necessary to protect a defendant's personal information, including any necessary revisions to the current policy and the way it is made available to defendants.

**4.     Eliminating unnecessary barriers to resolving cases.**   While an adequate written policy has not yet been approved, the Municipal Court has implemented the procedures detailed in subsections (a) through (e) of Paragraph 339, including drafting and publishing on the City's website a process for requesting continuances by email or fax.  However, the order outlining the process for requesting consideration of a continuance has not yet been approved by the Monitoring Team because it falls short in two respects: (1) the procedure fails to provide an option for requesting continuances by phone; and (2) the procedure fails to fully advise defendants about how a continuance request will be evaluated, such as by providing examples or further explanation of the "good faith" and good cause considerations by the Municipal Court Judge, or by specifying the definition of "medical reasons" as a good cause exception allowing the Court Clerk to grant a continuance.  To enable effective auditing of compliance with the continuance request process required by Paragraph 339(b), the City must also develop a method of recording all requests for a continuance and whether those requests were granted or denied.  The Monitoring Team will continue to consult with the City and DOJ to facilitate further development of the continuance request process.

The City also submitted Municipal Division Operating Order #4, promulgated by the St. Louis County Circuit Court, and adopted by the Ferguson Municipal Court in an effort to comply with Paragraph 339 (as well as Paragraphs 348-350, 357-358).  While Operating Order #4 covers several important topics related to the administration of the Municipal Court, it fails to adequately and specifically memorialize the policies designed to address subsections (a) through (e) of Paragraph 339.  For example, the City must establish and publish criteria for determining when partial payments or payment plan installments will be accepted.  The Monitoring Team will continue to consult with the City and DOJ to facilitate further development of written

30

policies designed to eliminate unnecessary barriers to resolving cases through the Municipal Court.

5.     **Conducting ability-to-pay determinations in conjunction with imposing fines and fees.**   The City has not yet developed a policy to ensure that defendants are provided with appropriate ability-to-pay determinations consistent with subdivisions (a) thorough (e) of Paragraph 340 of the Consent Decree.  However, observations of court indicate that individuals are asked about their ability to pay before fines are imposed.  The Monitoring Team did not provide notice that this provision of the Consent Decree would be reviewed during the August 2017 audit period; therefore, the City's efforts on this provision are ahead of scheduled expectations and are commendable in that regard.  Because a policy is needed to ensure these determinations are made consistently and in line with Paragraph 340, the Monitoring Team will continue to consult with the City and DOJ to facilitate development of the ability-to-pay determinations policy as a priority for completion by the September 2018 audit period.

The Parties have agreed in principle that the county-wide Uniform Fine Schedule currently in use by the City of Ferguson is sufficient to satisfy Paragraph 341, which requires the City to set fine amounts that are "not overly punitive, that take into account the income of Ferguson residents, and that are under no circumstances greater than regional averages for specific offenses."  Id. ¶ 341.

Consistent with the requirements of Paragraph 326(c), the City has repealed all or parts of Ferguson Municipal Code § 13-60, § 13-63, § 13-70(2), and § 13-70(3), and has not imposed any additional charges, fines, fees, or costs in response to any alleged or found "Failure to Appear" Violation or other violations previously imposed pursuant to the applicable provisions of these sections, in full compliance with Paragraph 342.

31

**6.     Ensuring appropriate alternative sentences, like community service, and the availability of payment plan options.**  Pursuant to Paragraphs 343 through 346 of the Consent Decree, the Municipal Court provides for appropriate alternative sentences such as community service and payment plan options for satisfying fines, fees, and costs.  As part of the community service alternative, the City has identified local and regional community organizations that will permit defendants to satisfy court obligations through community service at a rate of $10 for every one hour of community service performed.  Additionally, the Municipal Court currently provides each defendant with a "Know Your Rights" form upon their appearance in court, explaining the right to make periodic payments, to present evidence of financial condition if unable to pay, and to request community service as an alternative.

However, the City has not yet developed a comprehensive community service program, including reasonable time periods for the completion of community service obligations that take into account a defendant's existing employment and familial obligations, as required by Paragraph 344.  Nor has the City developed a policy designed to ensure that defendants are provided with options for court-managed plans with reasonable periodic payments starting with an ability-to-pay determination or uniform procedures for seeking modifications to periodic payment plans pursuant to Paragraph 345.

Currently, in practice, defendants who fail to fulfill payment or community service obligations in a timely manner are given additional time to comply.  There is no threat of arrest unless the defendant fails to appear in court to request additional time.  As of the August 2017 audit period, a defendant who misses a payment or community service obligation would be summoned into court by the usual Show Cause process.  After two consecutive missed appearances, an arrest warrant would issue for the underlying offense rather than for the currently obsolete Failure to Appear.

However, the City has not yet formalized these practices through development, implementation, or publication of a policy regarding untimely performance of community service or payment obligations pursuant to Paragraph 346.  The Monitoring Team will continue to consult with the City and DOJ to facilitate development of comprehensive policies regarding the community service program and any failure to fulfill payment or community service obligations as a priority for completion by the September 2018 audit period.

7. **Implementing requirements for municipal arrest warrants to avoid using them as a means of collecting civil court debt.**  The City is currently in compliance with Paragraph 347, and the Monitoring Team will continue to monitor compliance with this provision by reviewing the issuance of municipal arrest warrants as a part of each audit period.  Both the Municipal Court summons and the Show Cause Notice explain the consequences of a defendant's failure to appear.  However, the City has not yet developed a written policy, procedure, or protocol for compliance with the Show Cause process outlined in subsections (a) through (d) of Paragraph 348.  The Monitoring Team will continue to consult with the City and DOJ to facilitate development of a written policy implementing the Show Cause process as a priority for completion by the September 2018 audit period.

8. **Ensuring individuals are not held in custody after arrest because they cannot afford the bond.**  With regard to the requirements of Paragraphs 349 and 350 of the Consent Decree, the City reports that the jail is no longer in use and that detainees are being transferred directly to St. Ann.  The Monitoring Team will continue to review custody logs, to the extent they are available, to ensure compliance with these provisions of the Consent Decree.

9.      **Ensuring lawful license suspensions and reinstatement procedures.**   Compliance with Paragraphs 351 and 352 of the Consent Decree will require the Court Staff to: create a mechanism for tracking notifications to the Missouri Department of Revenue when defendants fail to appear or pay outstanding fines in a timely manner; create compliance letters satisfying the requirements of Missouri Revised Statute § 302.341.1; and create a mechanism for tracking issuance of compliance letters to defendants.  The Monitoring Team did not provide notice that these provisions of the Consent Decree would be reviewed during the August 2017 audit period, and the City has not yet presented evidence or documentation of compliance with the requirements of Paragraphs 351 and 352.  The Monitoring Team will continue to consult with the City and DOJ to facilitate development of a written policy and procedure for issuing and tracking notifications to the Missouri Department of Revenue regarding license suspensions and reinstatements as a priority for completion by the September 2018 audit period.

10.     **Implementing fair trial procedures.**   Pursuant to Paragraph 353 of the Consent Decree, the City drafted an order on trial procedures and the Municipal Court Judge signed and issued the order on August 16, 2017.  The order on trial procedures is currently available on the City's website.  To its credit, the City developed and implemented the order on trial procedures ahead of the audit schedule issued by the Monitoring Team.  The Monitoring Team will consult with the City and DOJ to prioritize for completion appropriate revisions to the order by the June 2018 status hearing, ahead of the September 2018 audit period.

11.     **Collecting and reporting court data via electronic and online court systems.** Pursuant to Paragraphs 354 and 355 of the Consent Decree, the City must further develop its electronic court records management system to facilitate tracking and accessibility of records,

34

particularly those relating to reporting requirements imposed by the Consent Decree as well as state law. The Monitoring Team did not provide notice that these provisions of the Consent Decree would be reviewed during the August 2017 audit period, and the City has not yet presented evidence or documentation of compliance with the requirements of Paragraphs 354 and 355. The Monitoring Team will continue to consult with the City and DOJ to facilitate further development of the electronic court records management system as a priority for completion by the September 2018 audit period.

Pursuant to Paragraph 356, the City has reserved a page on its website for publication of the City's "Monthly OSCA Reports" submitted to the Office of the State Court Administrator ("OSCA"). At the time of issuance of this report, the City has published on its website the June and July 2017 OSCA reports. During each audit period, the Monitoring Team will continue reviewing the City's website to ensure publication of the most current OSCA reports. However, the Monitoring Team also encourages the City to post the reports in between audits and on a timely and ongoing basis.

**12.** **Ensuring the independence of the Municipal Court from the City Prosecutor.** With the issuance of a new policy on May 2, 2016, the City implemented procedures to ensure compliance with substantially all of the requirements of Paragraph 357. However, the policy was silent regarding the maintenance of separate court files. With the hiring of an Administrative Assistant to the City Prosecutor, the City has taken steps toward establishing and maintaining a file system separate and apart from that maintained by the court. During the August 2017 audit period, the separate file system was not fully operational. The Monitoring Team will continue auditing court sessions and random court files to ensure the independence of the City Prosecutor.

13.     **Ensuring the impartiality of the Municipal Judge.**  Consistent with the requirement to ensure the impartiality of the Municipal Court Judge required by Paragraph 358, the City enacted revisions to Ferguson Municipal Code § 13-26 by Ordinance Number 2016-3608, § 1, adopted February 23, 2016.  The Municipal Court Judge is also required, by the Circuit Court of St. Louis County, to attend an annual ethics training.   During the August 2017 audit, the Monitoring Team observed court sessions, reviewed random court files, and obtained the Municipal Court Judge's certification of completion of the requisite ethics training.   The Monitoring Team was satisfied with these indications of the impartiality of the Municipal Court Judge during the August 2017 audit period, and will continue to monitor compliance with this provision of the Consent Decree during future audits.

14.     **Ensuring appropriate accommodations for defendants with mental illness or intellectual or developmental disabilities.**  Pursuant to Paragraph 359 of the Consent Decree, the City must create a policy for the implementation of appropriate mechanisms for providing defendants with mental illness or intellectual or developmental disabilities with information about their available options for diversion from the municipal court system.  As a practical means of tracking compliance with this provision, the City will develop a unique code within its database to identify cases in which defendants are referred to specialty court or some other service based on their mental, intellectual, or developmental needs.  Once a full policy and protocol has been written, approved, and implemented, the Monitoring Team will continue auditing court sessions, random court files, and the designated code within the court's database to ensure compliance with Paragraph 359.  The Monitoring Team did not provide notice that this provision of the Consent Decree would be reviewed during the August 2017 audit period, and the City has not yet presented evidence or documentation of compliance with the requirements

of Paragraph 359.  The Monitoring Team will continue to consult with the City and DOJ to facilitate development of a policy and protocol pursuant to Paragraph 359 as a priority for completion by the September 2018 audit period.

### 4.    Ongoing Assessment and Improvement

Pursuant to Paragraph 360 of the Consent Decree, the City must develop protocols for regularly conducting cost-feasible, data-driven, and qualitative assessments of court practices, designed to ensure that court proceedings are administered fairly and in accordance with policy as well as federal and state law.  The Monitoring Team did not provide notice that these provisions of the Consent Decree would be reviewed during the August 2017 audit period, and these protocols have not yet been developed.  The Monitoring Team will continue to consult with the City and DOJ to facilitate development of protocols consistent with the requirements of Paragraph 360 as a priority for completion in Year Three.

### G.    Accountability

The Parties, in consultation with the Monitoring Team, have drafted three policies with respect to FPD accountability: (1) Duty to Report Misconduct, see id. ¶ 363; (2) Duty of Candor, see id. ¶ 364; and (3) Internal Investigations, see id. ¶369.  These policies were reviewed by the Monitoring Team in Year One.  The Duty to Report Misconduct and Duty of Candor policies have been implemented.  In March 2018, the Monitoring Team completed a second review of the Internal Investigations policy and has submitted edits and comments to the Parties.  In addition, a disciplinary matrix, intended to supplement the complaint investigation policy, is currently in the early stages of development.  The Parties hosted three accountability forums (on February 11, 12, and 22, 2018) in order to seek input from the community, including youth, on the Internal Investigations policy.  During the remainder of Year Two, the parties will incorporate the feedback received from the community into the draft policy.  Training on all

accountability policies as well as on the complaint intake process, as required in Paragraph 322, will be completed in Year Three.  During that time, the Monitoring Team will conduct an audit of internal investigations, which will establish a baseline for future audits.

> ## H.     School Resource Officer Program

The Parties, in consultation with the Monitoring Team, have completed the Memorandum of Understanding ("MOU") between FPD and the Ferguson-Florissant School District ("FFSD").  See id. ¶ 211.  The FFSD has reviewed and commented on the MOU and returned it to FPD.  The MOU will be finalized after the Monitoring Team has had an opportunity to review the revised version and to incorporate comments it received during its most recent trip to Ferguson.  The Parties have begun developing a School Resource Officer program and operations manual in consultation with FFSD faculty and staff, the Youth Advisory Board, and other FFSD stakeholders.  See id. ¶ 210.  Implementation of the MOU and program and operations manual will occur during Year Three.

> ## I.     Body-Worn and In-Car Cameras

The Parties developed body-worn and in-car camera policies pursuant to Paragraph 231 of the Consent Decree and submitted them to the Monitoring Team for final approval.  See generally Consent Decree, § XII.  In addition, FPD personnel have been outfitted with body cameras.  During Year Three, the Parties will prioritize implementation and training, as required by Paragraph 231.  The Parties will also prioritize the development and/or implementation of protocols regarding storage and retention, with particular focus on facilitating public accessibility of body-worn and in-car camera recordings.

### III.    Conclusion

Significant work remains to be done before the City will be able to claim full implementation of the Consent Decree.   In particular, the Monitor is concerned that implementation may stall unless the City hires additional personnel to assist with compliance. Specifically, the Monitor recommends that the City hire the following individuals: (1) an outreach coordinator tasked with community engagement and implementation of the numerous Consent Decree provisions that require public education and collaboration with the Ferguson community; (2) an individual within the Municipal Court to assist with policy development and training; and (3) an FPD employee to support policy development, facilitate the conversion of policies into structured and organized trainings, and evaluate whether state and other external training programs comply with FPD's implemented policies.   These roles are critical to achieving compliance with the Consent Decree, and during the remaining quarter of Year Two, the City should prioritize identifying talented individuals to serve in these positions.

Based upon its interactions with the Parties during the reporting period, the Monitoring Team is encouraged by FPD's and the Municipal Court's efforts to implement the provisions of the Consent Decree.   With personnel and appropriate systems in place for the development and revision of additional policies and training protocols, the City, through FPD and the Municipal Court, has substantially improved its capacity to comply with the Consent Decree and can continue to do so by implementing the Monitor's recommendations.   The Monitoring Team will continue to collaborate with the Parties to ensure compliance, and will continue to detail its progress through semi-annual reports to the Court.

Date: March 30, 2018

Respectfully submitted,

*/s/ Natashia Tidwell*
Natashia Tidwell
Hogan Lovells US LLP
100 High Street
20th Floor
Boston, MA 02110
617-371-1076
*natashia.tidwell@hoganlovells.com*


## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing was filed electronically on March 30, 2018 with the Clerk of the Court for the United States District Court for the Eastern District of Missouri, and was served by ECF notice by operation of the Court's electronic filing system.

*/s/ Natashia Tidwell*