# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No.  4:16-cv-00180-CDP |
| Plaintiff, | ) | |
| v. | ) | |
| THE CITY OF FERGUSON, | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF JOINT MOTION TO MODIFY PARAGRAPHS 80, 81(a), 115, AND 341 OF THE CONSENT DECREE

The United States of America and the City of Ferguson ("Parties") jointly file this Memorandum in Support of their Motion to Modify Paragraphs 80, 81(a), 115, and 341 of the Consent Decree filed in this case.  As set forth below, modification of these four provisions is appropriate because the modifications agreed to by the Parties are consistent with the intent and purpose of the original provisions, and will provide greater clarity to Ferguson Police Department (FPD) officers as they carry out their duties.  The Parties have consulted with the lead Monitor, who supports the proposed modifications.

### DISCUSSION

In the roughly two years since the entry of the Consent Decree in this case, the City has worked diligently to ensure implementation of the Decree's requirements, and the United States has worked to assist those efforts.  As discussed in prior status conferences and the Monitor's most recent report, the City of Ferguson and FPD have made significant strides towards implementing several key provisions of the agreement, including revising FPD's use-of-force

policies; developing a recruitment plan for new FPD hires; drafting accountability-related policies, including policies regarding the use of body-worn and in-car cameras; and reforming many aspects of the City's Municipal Court practices.

The Consent Decree contemplates that, as the implementation process unfolds, there may be times where "changes, modifications, and amendments" to the Decree are necessary, or would benefit the overall implementation of the Decree's terms.  Consent Decree at ¶ 459 [ECF No. 12-2].  Specifically, the Consent Decree sets forth a process for the Parties to jointly recommend changes to the Court and explicitly encourages the Parties to suggest such changes when "an Agreement requirement as drafted is not furthering the purpose of [the] Agreement or [] there is a preferable alternative that will achieve the same purpose" as the original provision.  *Id.*

As the Parties continue to work collaboratively to develop and implement the policies required by the Consent Decree, it has become clear that the modification of four provisions of the Decree would advance the shared interests of the Parties in ensuring effective implementation of the Decree, and would assist both the City and the constituents it serves.  The proposed modifications, set forth below, are also consistent with the purposes of the original Consent Decree provisions.

### A. Paragraph 80

Section VII of the Consent Decree contains provisions related to FPD's stop, search, citation, and arrest practices.  Within this Section, Paragraph 80 states: "FPD officers will not conduct pretextual stops except where the actual reason for the stop is to investigate *a felony*."  Consent Decree at ¶ 80 (emphasis added).  The Parties request that this provision be modified to provide: "FPD officers will not conduct pretextual stops except where the actual reason for the

stop is to investigate *suspected unlawful conduct that poses a risk to public safety*." (Emphasis added.)

The Parties recommend this modification to ensure that use of this lawful policing tool, under FPD policy, will depend not upon the difficult determination of whether the suspected conduct constitutes a felony or a misdemeanor, but instead on whether the suspected conduct poses a risk to public safety. The proposed language would provide clearer guidance to officers, as in certain situations an officer might not know whether the suspected unlawful conduct in question would be classified as a felony or a misdemeanor. Further, this modification would ensure that officers are able to conduct an appropriate stop whenever they encounter conduct that poses a risk to public safety, even if such conduct would ultimately be classified only as a serious misdemeanor, not a felony. Moreover, this proposed modification maintains important limitations on the use of this law enforcement tool, and indeed strengthens those limitations by more clearly identifying the circumstances that must be present before such stops are permitted—namely suspected conduct that poses a risk to public safety. This limitation thus satisfies the intent and purpose of the original provision and enables protocols that are easier for officers to apply in the field.

### B. Paragraph 81(a)

Another provision related to stops, searches, citations, and arrests sets forth requirements that FPD officers must follow upon conducting a stop. That provision provides in relevant part:

> 81. FPD will ensure that, upon initiating an investigatory stop or detention, officers:
> a. Introduce themselves by name and rank as soon as reasonable and practicable. It will be FPD practice to also provide the stopped individual an FPD business card at the end of a stop; …

Consent Decree at ¶ 81(a). The Parties propose adding additional language to this provision as

follows:

>  81. FPD will ensure that, upon initiating an investigatory stop or detention, officers:
>  a. Introduce themselves by name and rank as soon as reasonable and practicable. It will be FPD practice to also provide the stopped individual an FPD business card at the end of a stop. *The business card should include the name and badge number of the officer's supervisor*; … (Emphasis added.)

The Parties believe that this addition will better serve those who are stopped or detained by FPD officers by providing them with a way to contact the officer's supervisor should they have any issue with how the stop or detention was conducted.  This requested addition is consistent with the purposes of the original provision, and bolsters other sections of the Consent Decree, including provisions related to adequate supervision of officers and FPD's commitment to transparency and accountability.

### C.  Paragraph 115

Paragraph 115 of the Consent Decree prohibits FPD officers from searching, seizing, or "otherwise coerc[ing] production of recorded sounds, images, or videos without obtaining a warrant."  Consent Decree at ¶ 115.  As currently written, this provision allows an exception for officers to secure such evidence "for no more than 12 hours while a legal subpoena, search warrant, or other valid court order is obtained," *if* the officer "has a reasonable belief" that the recording captured "critical evidence *related to a felony* and the exigencies of the circumstances demand it."  *Id.* (emphasis added).  The Parties request modifying that provision to replace "felony" with "serious crime" as follows:

> FPD will ensure that officers do not search, seize, or otherwise coerce production of recorded sounds, images, or videos without obtaining a warrant. Where an officer has a reasonable belief that a bystander or witness has captured a recording of critical evidence related to a *serious crime* and the exigencies of the circumstances demand it, the officer may secure such evidence for no more than 12 hours while a legal subpoena, search warrant, or other valid order is obtained.

> Upon seizing such property, officers may not search or review its contents without first obtaining a search warrant. (Emphasis added.)

The Parties request this modification in order to provide officers with a standard that is easier to apply in the field.  First, it will be difficult in practice for FPD officers to determine whether a particular recording captures an offense that is classified as a felony under Missouri State Law.  Changing "related to a felony" to "related to a serious crime" will thus make this provision easier to apply.  Second, this change is consistent with model policies governing recording of police activity, including the model policy published by the International Association of Chiefs of Police.  That policy states, in relevant part: "If there is probable cause to believe that evidence of a *serious crime* has been recorded" where "exigent circumstances" exist, "the recording device or media may be seized under a temporary restraint."  *See* International Association of Chiefs of Police, Model Policy, *Recording Police Activity* (Dec. 2015), available at http://www.theiacp.org/model policy/wp content/uploads/sites/6/2017/08/RecordingPolicePolicy.pdf.

### D.  Paragraph 341

The final provision for which the Parties seek modification relates to the practices of the Ferguson Municipal Court.  Paragraph 341 of the Consent Decree requires the City to "maintain a public list of preset fines . . . for all municipal ordinance violations for which preset fines are allowed under Missouri Law," and establishes guidelines for Ferguson to use in setting those fine amounts.  Consent Decree at ¶ 341.  At the time the Parties negotiated this provision, no regional fine schedule existed, and each municipality generally set their own preset fine schedule.  Fine schedules across the municipalities varied widely.  Paragraph 341 requires Ferguson to establish clear guidelines to ensure that its fine amounts are no longer disproportionately higher than

surrounding jurisdictions or the regional average.  Subsequent to the Parties entering the Consent Decree, however, the Ferguson Municipal Court adopted the Uniform Fine Schedule for St. Louis County.[1]  The St. Louis County Municipal Courts Improvement Committee developed this schedule, in part to address the wide disparities in fine amounts across the region for identical offenses.

The City's adoption of the Uniform Fine Schedule ensures that the fines assigned for municipal offenses committed in Ferguson are on par with fines assigned for identical offenses in neighboring jurisdictions, and that low-income Ferguson residents are not subjected to disproportionate or unjustifiably high fines.  Accordingly, developing an alternative fine schedule as required by the current wording of Paragraph 341 is unnecessary.  Because it was established by a regional committee and applies across St. Louis County, the Uniform Fine Schedule accomplishes the same goals of fairness and parity that motivated the inclusion of the language in Paragraph 341.  The Parties have therefore concluded that the City's adoption of the Uniform Fine Schedule is a more efficient and preferable alternative to meet the purpose of Paragraph 341.

In light of these circumstances, the Parties request that Paragraph 341 be modified to provide:

> The City agrees to maintain a public list of preset fines (Traffic Violations Bureau or "TVB" fines) for all municipal ordinance violations for which preset fines are allowed under Missouri law.  The City further agrees to *ensure that the fine amounts used for preset fines are consistent with the fine amounts specified on the Uniform Fine Schedule for St. Louis County*.

---

[1] The Ferguson Municipal Court adopted the Uniform Fine Schedule by Order of Municipal Court Judge Terry Brown on December 12, 2016.  *See* Order of Judge Terry Brown, Ferguson Municipal Court (Dec. 12, 2016), *available at* http://www.fergusoncity.com/DocumentCenter/View/2759.

(Emphasis added.)  This language is consistent with the intent and purpose of the original Paragraph 341, and will allow for the consistent and practical assessment of TVB fines and fees.

## CONCLUSION

For the reasons described herein, the Parties jointly request that the Court grant the accompanying Motion and approve the modifications outlined in this Memorandum.  These modifications will not absolve the City of its obligations to fully implement all provisions of the Decree, but rather will allow more effective and practical implementation of the modified provisions.  The Parties remain committed to working collaboratively to implement the terms of the Decree and achieve the reforms therein.  The Parties have consulted with the lead Monitor, who supports the proposed modifications.

Respectfully submitted this 18th day of June, 2018.

For the Plaintiffs:	STEVEN H. ROSENBAUM
Section Chief
Special Litigation Section

JUDE VOLEK
Special Counsel
Special Litigation Section

*/s/  Charles Hart*_____
CHARLES HART
AMY SENIER
Trial Attorneys
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 305-3192
Facsimile: (202) 514-6903
Email: charles.hart@usdoj.gov
Permanent Bar Number 4282281NY
NY Bar Registration Number 4282281

*Attorneys for the United States*


For the Defendant:	*/s/ Apollo Carey*_____
APOLLO CAREY
Lewis Rice
600 Washington Ave, Suite 2500
St. Louis, MO 63101
Telephone: (314) 444-7788
Facsimile: (314) 612-7788
Email: acarey@lewisrice.com

*Attorney for the City of Ferguson*