UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>　　Plaintiff,<br><br>　　　　v.<br><br>THE CITY OF FERGUSON,<br>　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:16-cv-180<br><br>Hon. Catherine D. Perry |

INDEPENDENT MONITOR'S
FALL 2018 SEMIANNUAL REPORT

## I.　　INTRODUCTION

Pursuant to paragraph 438 of the Consent Decree entered into between the United States Department of Justice ("DOJ") and the City of Ferguson, Missouri (the "City") (together, the "Parties"), the Independent Monitor (the "Monitor" or the "Monitoring Team") submits this Fall 2018 Semiannual Report, which covers the reporting period of April 1, 2018 through September 30, 2018.[1]

Between April and September 2018, the City made considerable progress in furtherance of implementation of the Consent Decree. Notably, the City began policy development in new subject areas, including voluntary contacts, stops, searches, citations, and arrests; commenced the development and scheduling of roll call training on developed policies, including in the areas of use of force and body-worn and in-car cameras; identified key information necessary for the Monitor to initiate baseline audits in various subject areas; and continued to make significant progress with respect to implementation of Consent Decree provisions pertaining to reform of the Ferguson Municipal Court ("Municipal Court"). Key tasks which have not yet been

---

[1] In accordance with Paragraph 439 of the Consent Decree, this report has been agreed to by the Parties.

completed, but which should be prioritized over the course of the next reporting period, include, among other things, policy development in new subject areas such as bias-free policing, the implementation of all developed policies, and increased progress in the subject areas of community engagement, training and supervision, and data collection.[2]  The Monitoring Team recognizes that the City and the DOJ have put much effort into achieving the goals of the Consent Decree and working toward meaningful outcomes in Ferguson.  The working relationships and processes followed by the City, DOJ, and the Monitoring Team, and the input provided by community stakeholders, have consistently reflected a spirit of cooperation, which the Monitoring Team expects will continue as all parties work together to facilitate substantial implementation of the Consent Decree by Year Five.[3]

### A.   The Monitoring Process

Through the work of its subject matter experts, the Monitoring Team will conduct reviews and audits to determine whether the City, Ferguson Police Department ("FPD"), and the Municipal Court are in compliance with the Consent Decree, and will provide technical assistance as needed to guide the City through the implementation process.  Specifically, the Monitoring Team will ensure timely and complete implementation of the Consent Decree through the following three phases: (1) policy revision and review; (2) training and implementation; and (3) auditing and compliance assessment.

---

[2] Throughout this report, the Monitor refers to both the "reporting period" and the "next reporting period." For purposes of this status report, the "reporting period" refers to April 1, 2018 through September 30, 2018, while the "next reporting period" encompasses October 1, 2018 through March 30, 2019.

[3] Throughout this report, the Monitor refers to "Year One," "Year Two," "Year Three," etc. to identify past achievements and to outline future goals.  The monitorship officially began when the former Monitor was appointed by the Court on July 22, 2016.  Accordingly, Year One ran from August 2016 through July 2017, Year Two began in August 2017 and ended in July 2018, Year Three commenced in August 2018 and will end in July 2019, Year Four will begin in August 2019 and end in July 2020, and Year Five will commence in August 2020.

### 1.      Policy Revision and Review

The Consent Decree requires FPD and the Municipal Court to incorporate its provisions into specific policies and procedures as appropriate.  See Consent Decree, ¶ 42.  The Monitoring Team is pleased that the Parties continue to work collaboratively in executing the policy revision and review protocol set forth in the Spring 2018 Status Report.  See Dkt. No. 85 at 5. Throughout the reporting period, the Parties and Monitoring Team continued to seek feedback from the community regarding this policy revision and review protocol.  During this process, and at community meetings and town hall events attended by the Monitoring Team, some community members expressed concern that the current protocol fails to provide an adequate opportunity for the community to comment on developed policies prior to implementation.

Currently, the policy revision and review protocol incorporates the "solicitation of community input" as a critical step in the development of policies.  Indeed, as has been the case with numerous policies developed thus far, the Parties have solicited important feedback from the community through multiple policy forums which were open to the public and held prior to the finalization of a policy in a given subject area. The community, however, has expressed a desire to (1) review how the input provided at community forums or other events has or has not been incorporated into finalized policies; and (2) comment on finalized policies prior to implementation.  As a direct result of these expressed concerns, the Parties, together with the Monitoring Team, discussed ways in which the protocol could be modified to allow for additional community input prior to policy rollout, and agreed to amend the policy development protocol to include a comment period for both Ferguson Police Officers and members of the community, generally, once a policy has been approved by the Monitoring Team.  Accordingly,

as of October 1, 2018, the policy development protocol has been modified to include a 30-Day

Comment Period as described below:[4]

i. *Kick-off/Announcement of Policy Area:* FPD notifies DOJ and the Monitor of its intent to begin drafting or revising policies in an identified subject area;

ii. *Technical Assistance:* The appropriate SME on the Monitoring Team provides FPD and DOJ with technical assistance in the form of model policies and/or initial guidance as to best practices in the identified subject area;

iii. *Gap Analysis:* FPD and DOJ conduct an assessment or gap analysis of FPD's current state of affairs (i.e., ascertain how FPD's existing policies, practices, and systems differ from the Consent Decree's requirements and best practices);

iv. *Solicitation of Community Input:* Several provisions of the Consent Decree require community involvement in the implementation of specific policies, including those designed to improve police/community relations. The Parties are committed to soliciting community feedback on other policies as well, even where not explicitly required by the Consent Decree. While the Parties continue to evaluate the best means of involving community stakeholders in the policy development process, the Parties have found that policy forums are an effective means of inviting and obtaining community input.

v. *Policy Revision:* FPD and DOJ revise policies, practices, and systems in the target subject area to the extent required under the gap analysis;

vi. *Return to Monitor/SME:* Upon completion of a draft policy, the Parties submit the policy to the Monitor and/or appropriate SME for review. The SME will review the policy and either provide final approval or arrange for a conference call to discuss additional revisions; and

vii. *30-Day Comment Period:* Once the Monitoring Team has approved a draft policy, the City will email the policy to FPD officers from varying ranks and units. Officers will have a meaningful opportunity to review and comment on the new or revised policy or procedure during a 30-day period. At the same time, FPD will post the policy to the FPD website for review by the community. Community members will also have 30 days to provide comment on the draft policy or procedure. At the close of the 30-day period, the Parties will determine whether any modifications to the draft policy are appropriate. If modifications are made, the revised policy shall be submitted to the Monitor for review and final approval. After the Monitor has approved the final policy, officers will be provided roll call training and the policy will be implemented and published.

---

[4] The steps outlined in the process are not necessarily intended to be implemented sequentially. Rather, the Parties and the Monitoring Team will determine the appropriate methodology on a case-by-case basis.

During the next reporting period, as FPD continues to finalize and implement new and revised policies, it should also prioritize compliance with paragraph 46 of the Consent Decree, which requires the City to maintain a complete, up-to-date manual of all FPD policies and procedures.  As part of this process, and to facilitate timely implementation of new and revised policies, FPD should also continue to renumber its existing and revised policies to be consistent with the overall organizational system for policies that FPD is developing.  During the reporting period, FPD completed the process of renumbering its use of force general orders, which will be implemented during the next reporting period.

### 2.        Training and Implementation

During the reporting period, FPD continued to build its capacity to comply with the training requirements of the Consent Decree.  Indeed, Assistant Chief McCall and Lieutenant Dilworth have been instrumental in developing roll call training curricula and materials for policies relating to use of force and body-worn and in-car cameras.   In addition, FPD successfully completed training of its personnel on the requirements, goals, and expectations of the Consent Decree.  The Monitoring Team was able to attend one of the training sessions and is pleased to report that it was informative, well-received, and compliant with Paragraph 303 of the Consent Decree.

During the next reporting period, FPD, in conjunction with the Training Committee, should prioritize the development of a training plan, including a plan for the rollout of roll call, in-service, and supervisor trainings, as well as a plan for ensuring that FPD's systems are sufficient for organizing and tracking training data.  The development of an adequate training plan will require thoughtful consideration of the various methods required for training delivery as well as a careful examination of Missouri state certification requirements to determine

whether they harmonize with the Consent Decree's requirements for officer training.  For this reason, the Monitoring Team repeats its recommendation—first articulated in the Spring 2018 Status Report—that the City hire a Training Coordinator, preferably with expertise in training development and delivery, to assist in the development of a robust training program.

### 3.    Auditing and Assessing Compliance

With the exception of provisions related to court reform and overhaul of the Municipal Code, much of the implementation phase of the Consent Decree remains to be completed. Using the audit methodology it initially developed during Year Two, the Monitoring Team conducted its second Municipal Court audit in March of 2018, the details of which are described in Section II(F) below.  The remaining subject areas did not enter the implementation stage during the reporting period and could not be audited.  As outlined below, however, the Monitoring Team expects that implementation will occur in the areas of use of force, stops, searches, and arrests, accountability, and community engagement during the next reporting period.  Furthermore, in anticipation of forthcoming policy rollouts, the Monitoring Team has taken steps to develop initial measures of compliance review in these subject areas. Descriptions of these measures are provided in the corresponding subject matter sections below.

With respect to future audits, the Monitoring Team will commence an audit designed to assess the implementation of each new policy approximately six months following the rollout of that policy.  The Monitoring Team will notify the Parties thirty days in advance of commencing any audit and will provide a proposed methodology in accordance with Paragraph 426 of the Consent Decree.  At that time, the Monitoring Team will also submit any requests for documents and materials needed to assess compliance.  See Consent Decree, ¶ 426.

## II.    DETAILED STATUS UPDATE

Because the Consent Decree contains numerous objectives and requirements that the City, FPD, and Municipal Court have agreed to implement, the Parties have prioritized specific provisions of the Consent Decree.  For FPD, the following six subject matter areas are the priorities: (1) community policing and engagement; (2) bias-free police and court practices; (3) stops, searches, citations, and arrests; (4) use of force; (5) recruitment; and (6) accountability (including the Civilian Review Board (the "CRB")).  With the exception of bias-free police and court practices, policy development and rollout in each of the six priority areas should be completed by the end of Year Three.  In addition to these priority areas, the City, with support from the DOJ and Monitoring Team, has continued working toward implementation of the remaining requirements of the Consent Decree, with particular emphasis on implementation of provisions regarding municipal court reform, the school resource officer program, and body-worn and in-car camera policies.  This report outlines the efforts of the Parties and Monitoring Team in these areas, and details progress toward substantial compliance with the Consent Decree.  A table summarizing the achievements of the reporting period (April 1, 2018 through September 30, 2018) as well as the Monitoring Team's stated goals for the next reporting period (October 1, 2018 through March 30, 2019) is attached as **Appendix A.**

### A.    Community Policing and Engagement

Although progress with respect to Community Policing and Engagement has been steady, it has been slow, with very few community focused provisions having been implemented during Years 1 and 2.  Because community-oriented policies are critical to achieving substantial compliance, the Monitoring Team renews its recommendation, initially outlined in the Spring 2018 Status Report, that the City hire a community engagement and/or outreach coordinator

who is responsible for overseeing implementation of the community engagement provisions of the Consent Decree.  Increased focus by the City on community engagement will serve not only to address concerns expressed at town hall meetings with the Monitor and during the public comment portion of the June 2018 status hearing, but will help the City to achieve one of the Consent Decree's broader goals of increasing transparency and trust within the community.

During the reporting period, the Parties provided the Neighborhood Policing Steering Committee ("NPSC") with a revised community policing policy.  The NPSC re-reviewed the policy to determine whether it was satisfied with how its initial comments had been incorporated into the draft policy.  The Monitoring Team reviewed and approved the finalized community policing policy, and the DOJ attended the NPSC's October 2018 meeting in order to explain how its comments were and/or were not ultimately incorporated into the finalized policy.  The Parties will solicit comments from officers and the community during the newly-implemented 30-Day Comment Period, which will run from November through December 2018.  Once policy development is complete, the City should prioritize the roll out of both roll call and in-service training on the community policing policy during the next reporting period.  By the end of the next reporting period, the City, in conjunction with the DOJ, should also have completed policy development with respect to a separate, more detailed community engagement plan and separate crime prevention plan, if necessary.

In addition, the Monitoring Team expects the City to prioritize community engagement and to make significant progress with respect to implementing community-oriented provisions of the Consent Decree over the course of the next six months.  Specifically, the City should focus on Paragraphs 19, 23, 25, and 33 of the Consent Decree by developing community-focused plans for: (1) launching a neighborhood mediation program; (2) participating in group structured

dialogues with community members; (3) establishing Neighborhood Associations in each of Ferguson's apartment complexes; and (4) developing a policy for responding to NPSC recommendations.   To assist FPD officers with achieving the community policing and engagement goals set forth in the Consent Decree, the City must also work, during the next reporting period, to develop a shift schedule and deployment plan that enables close and effective supervision and supports a community-oriented approach to policing.

 With respect to its community engagement, the Monitoring Team hosted community events, with an opportunity to ask the Monitor direct questions, at Ferguson City Hall on June 25 and September 19, 2018.  Since launching the fergusonmonitor@hoganlovells.com  email address and the www.fergusonmonitor.com website during the reporting period, the Monitoring Team has received a steady stream of communications from the community as well as frequent additions to its listserv.   In addition, Steven Parish, the Monitoring Team's community engagement consultant, engaged in community outreach by attending neighborhood association meetings, consulting with local organizations, such as the Ferguson Collaborative and Urban Strategies, and participating in Ferguson's Unity Weekend.  The Monitoring Team will continue its efforts to increase outreach to the Ferguson Community by hosting community events on at least a quarterly basis.  In addition, the Monitoring Team will make efforts to broaden the reach of its community interactions by not only utilizing its listserv and website to communicate Monitor announcements to the community, but also by arranging for announcements, status reports, and other key documents to be distributed in Ferguson's public areas, such as City Hall and the public library.

 Finally, the Monitoring Team requested and received a list of all FPD community engagement events planned between October 1, 2018 and January 1, 2019.  The Monitoring

Team has commenced development of a community-engagement assessment form and will use the information provided by the City to develop an initial audit schedule and methodology to measure the City's community engagement efforts.

### 1.      The Neighborhood Policing Steering Committee

During the reporting period, the NPSC played a critical role in the development of FPD's community policing policy.   In the next reporting period, the NPSC will work with FPD to similarly support and provide feedback to the Parties during the development of the community-engagement plan as well as policies aimed toward improving FPD's ability to receive, consider, respond to, and act upon NPSC recommendations in a timely and transparent manner.   See Consent Decree ¶ 23.

### 2.      Civilian Review Board

The Civilian Review Board ("CRB") continues to develop internal policies/manuals for self-governance and to formulate a program for the promotion of public awareness and education as required by Paragraph 405(d),(g).  During the next reporting period, the CRB will work with FPD as well as the NPSC to provide feedback and support during the development of the community-engagement plan.  In addition, pursuant to paragraph 405(d) of the Consent Decree, within 60 days of implementation of the City's Mediation Program, the CRB shall develop and recommend a program designed to promote awareness regarding the options available for filing misconduct complaints.

Currently, the CRB meets on a monthly basis.  The Lead Monitor attended a CRB meeting during the reporting period and intends to attend another CRB meeting during the upcoming reporting period in order to address Consent Decree questions that are specifically related to the CRB.

### 3.      Surveys

Paragraphs 429 and 430 of the Consent Decree require that the Monitoring Team conduct annual surveys of members of the Ferguson community, including Ferguson residents, law enforcement personnel, and detained arrestees.  In particular, the surveys are aimed at gathering information about (1) the community's experiences with and perceptions of FPD, public safety, and the municipal court; and (2) police officers' attitudes regarding their jobs and the Ferguson community.  Although the Officer Attitudes and Perceptions Survey was administered to FPD officers in the late summer of 2017, the results of that survey have not yet been published to FPD officers.  The Monitoring Team will prioritize distribution of these survey results during the next reporting period.

In addition, the Monitoring Team is pleased to announce that the City of Ferguson has contracted with the Police Foundation to deliver officer and community surveys over the course of Year Three.  In the next reporting period, the Monitoring Team, along with members of the Police Foundation, will meet with community members in Ferguson to discuss strategies for successful administration of a community survey.  The Monitoring Team will work with the Police Foundation to ensure that such surveys are administered as soon as it is feasible to do so.

### B.    Bias-Free Police and Court Practices

The Parties have not yet commenced policy development in the area of bias-free policing and court practices.  During the next reporting period, the City should focus on the development of such policies with an understanding that drafts should be submitted to the Monitoring Team prior to the close of Year Three.  To achieve this, the City must prioritize the development of policies with respect to bias-free policing and court practices, including policies that address training for interacting with individuals who have a limited ability to speak, read, write, or

11

understand English, that pertain to officer response to allegations of domestic violence and sexual assault, and that generally address timely and meaningful access to police and court services for all.

### C.    Voluntary Contacts, Stops, Searches, Citations, and Arrests

During the reporting period, the Parties began policy development in the area of voluntary contacts, stops, searches, citations, and arrests and held two policy forums in June of 2018.  The Parties made substantial progress in the areas of investigatory stops and detentions and field investigation reports.   The Parties will work during the next reporting period to incorporate community feedback obtained during the policy forums into the draft policies on stops, searches, citations, and arrests, to complete development of these policies, and to begin roll call training in these specific areas.   The Parties should also use the next six months to continue the policy review and revision process with respect to related policies, including warrant applications, summons and police report procedures, and prisoner conveyance, so that policy development in these areas may be completed by the end of Year Three.  Over the course of Year Three and into Year Four, the Monitoring Team will work with the Parties to ensure that the spirit and goals of the stop, search, and arrest provisions of the Consent Decree are, where applicable, incorporated into other policies which more directly relate to other policy areas, but which implicate the Fourth Amendment.

In order to conduct a baseline audit in the area of stops, searches, arrests, and citations, the Monitoring Team requested and received from the City the total number of arrest reports and field inquiry reports generated by the FPD between January 1, 2017 and June 30, 2018.  Due to the large number of arrest reports, the Monitor further requested, and received, a breakdown of each arrest by offense.  Because there were too few field inquiry reports from which to draw a

representative sample, the Monitoring Team continues to assess the best measures for capturing a more accurate representation of FPD's "*Terry* stops" between January 1, 2017 and June 2018. Over the course of the next reporting period, the Monitoring Team will use the information provided by the City to develop its audit methodology and to assess baseline measures in these areas.

### D.    Use Of Force

During the reporting period, the Parties completed policy development, and received final approval from the Monitoring Team, with respect to an umbrella policy pertaining to the use of force and a suite of policies that correspond to various instrumentalities of force, as well as policies concerning the reporting and investigation of uses of force.   During the next reporting period, the FPD has committed to posting these draft use of force general orders to its website and making them available to officers and the community in accordance with the 30-Day Comment Period outlined in Section A(1)(viii) above.  Following the comment period, and by the end of the next reporting period, the City should complete its roll out of the use of force general orders and develop a comprehensive plan for in-service training in these areas.

The Monitoring Team requested and received from the City the total number of use of force reports generated by the FPD between January 1, 2017 and June 30, 2018.  During the next reporting period, the Monitoring Team will use these reports to develop a methodology and to conduct an audit of FPD use of force reports in order to establish a baseline for future audits.

### E.    Recruitment

The Parties have drafted a Recruitment Plan for attracting and retaining a high-quality and diverse work force as required by Paragraphs 282 and 283 of the Consent Decree.  Final approval of the plan is pending as the City has not yet developed a method for complying with

Paragraph 283(a), which requires the City to offer salaries that will place FPD among the most competitive of similarly sized agencies in St. Louis County.   While the Monitoring Team anticipated completion of the Recruitment Plan in this reporting period, the City was unable to do so and has prioritized finalization during the next reporting period.   Once completed, the provisions of the Recruitment Plan must be explained to rank and file members of FPD, with documentation of this training provided to the Monitoring Team.   Upon implementation, the Monitoring Team will review job applications and background investigation files to assess compliance.

### F.    Municipal Court Reform

Reform of the Ferguson Municipal Court continued to progress under the Consent Decree during the reporting period.   Pursuant to Paragraph 323 of the Consent Decree, the Monitoring Team has engaged with the DOJ and the City to reform the Municipal Court to ensure that the Municipal Code is enforced for the purpose of protecting public safety and to enable the fair and impartial resolution of municipal charges.

With assistance from the Court staff, including the Court Clerk, the Municipal Court Judge, and the City Attorney, the City of Ferguson has worked cooperatively with DOJ and the Monitoring Team to develop, revise, and implement policies and procedures that effectively address the findings of DOJ's investigation and related provisions of the Consent Decree.   The policies that were prioritized for the third and fourth quarters of Year Two have all been drafted, and either (1) have been reviewed, approved and implemented by the City, or (2) are currently under review by the Monitoring Team, DOJ, or the City.   As of the September 2018 status hearing, municipal court policy development was ahead of schedule.

### 1.      Policy Development

Pursuant to Paragraph 328 of the Consent Decree, and in conjunction with DOJ, the City has begun developing and implementing the ordinances and policies necessary to ensure the fair administration of justice as well as the constitutionality and legality of Municipal Court procedures.  The goal is for the City to develop a comprehensive manual of all policies, procedures, and protocols related to the Municipal Court.

To date, the City has made outstanding progress on developing and implementing these policies, in coordination with DOJ and the Monitoring Team.  Below is a summary of the Municipal Court policies that have been developed since the Spring 2018 Monitor's Report:

a) **Policy to Ensure Adequate Notice to Individuals Charged with a Violation of the Ferguson Municipal Code.**

- Pursuant to Paragraph 334, the City has drafted a plan for performing monthly audits of citations, arrest notification forms, and other notices of violations used by officers to ensure that such documents are completed properly and provide the recipient with thorough and accurate information.

- The plan is now under review and revision by DOJ to ensure alignment between FPD, the City Prosecutor, and the Municipal Court.  See id. ¶ 334.

b) **Policy to Eliminate Unnecessary Barriers to Resolving Cases.**

- The City has drafted and received approval of a Continuance Policy pursuant to Paragraph 339.  As of the September status conference, the new continuance policy has been posted to the website.

- To enable effective auditing of compliance with the continuance request process required by Paragraph 339(b), the City must also develop a method of recording all requests for a continuance and whether those requests were granted or denied.

c) **Policy to Conduct Ability-to-Pay Determinations in Conjunction with Imposing Fines and Fees.**

- In conjunction with DOJ, the City has developed a policy to ensure that defendants are provided with appropriate ability-to-pay determinations consistent with subdivisions (a) thorough (e) of Paragraph 340 of the Consent

Decree.  The policy was reviewed and approved by DOJ and the Monitoring Team by June 2018, ahead of the September 2018 target completion date.

**d)  Policy to Ensure Appropriate Alternative Sentences, Like Community Service, and the Availability of Payment Plan Options.**

- The City has developed a comprehensive community service program and a policy designed to ensure that defendants are provided with options for court-managed plans with reasonable periodic payments starting with an ability-to-pay determination or uniform procedures for seeking modifications to periodic payment plans pursuant to Paragraph 345.

- This policy was developed in conjunction with DOJ and approved by the Monitoring Team by June 2018, ahead of the September 2018 target date.

**e)  Policy to Implement Requirements for Municipal Arrest Warrants to Avoid Using Them as a Means of Collecting Civil Court Debt.**

- In conjunction with DOJ, the City has developed a written policy, procedure, and protocol for compliance with the Show Cause process outlined in subsections (a) through (d) of Paragraph 348.

- This policy was reviewed and approved by DOJ and the Monitoring Team by June 2018, ahead of the September 2018 target date.

**f)  Policy to Implement Fair Trial Procedures.**

- Pursuant to Paragraph 353 of the Consent Decree, the City drafted an order on trial procedures and the Municipal Court Judge signed and issued the order on August 16, 2017.  The order on trial procedures is currently available on the City's website.

- In conjunction with DOJ, the City has also drafted a Trial Procedures Policy, which is currently under review by the Monitoring Team.

### 2.      Audit Procedures & Compliance

Pursuant to Paragraph 424 and consistent with its responsibility to ensure compliance with the Consent Decree, the Monitoring Team established a biannual audit schedule of the specific provisions addressing Municipal Court reform.  The second audit was conducted in March of 2018.  In preparation for the March 2018 audit, the Monitoring Team sent a notice to the City outlining the twenty-three (23) provisions of the Consent Decree designated for

auditing during the reporting period.  As with previous audits, the audit procedures were divided into six categories:

i.   *Document Review*: The Monitoring Team requested to review policies, procedures, and other documents such as the City budget during the audit;

ii.  *City Ordinance Review:* The Monitoring Team reviewed the ordinances that the City was required to enact, repeal, or revise in compliance with the Consent Decree.  Most, if not all, required changes to City ordinances were completed before the effective date of the Consent Decree, so this and future audits involve confirming that no subsequent changes have been made to these ordinances;

iii. *Database Review:* The Monitoring Team requested access to or reports from the court's computerized database, ITI, during the audit to confirm the existence, or non-existence of certain cases, the status of certain cases, and the status fines and fees paid.  At the time of issuance of this report, the Monitoring Team does not have remote access to ITI and currently accomplishes confirmation of information available in the database through onsite visits or specific requests for reports from the Court Staff; requested reports have been readily and satisfactorily provided;

iv.  *Website Review:* The Monitoring Team reviewed the City's website and the specific pages designated for the Ferguson Municipal Court, as well as the website of the City's online payment vendor, to audit compliance with the Consent Decree provisions requiring the City to maintain a website and to make certain information readily accessible;

v.   *Municipal Court Case File Review:* The Monitoring Team requested onsite review of case files to audit compliance with the Consent Decree provisions related to the Comprehensive Amnesty Program and the reduction or dismissal of cases in which defendants were subject to fines and fees related to Failure to Appear charges.  The Monitoring Team notified the Court Staff prior to the court visit to have cases made available for review; and

vi.  *Observation of Municipal Court Operations:* The Monitoring Team attended a court session to observe the operations of the Ferguson Municipal Court, pursuant to several provisions of the Consent Decree, including required notifications to defendants, ability-to-pay determinations, options related to alternative sentences (*e.g.*, community service in lieu of payment of fines) and payment plans, and the conduct of the Municipal Court Judge and City Prosecutor to ensure their independence and impartiality.

Each provision related to Municipal Court Reform has been evaluated and provided with a compliance grade for the March 2018 audit period based on the following scale:

     i.     **Substantial Compliance:** Indicating that the City has satisfied the written requirements of the Consent Decree provision and fulfilled the purpose of the provision by doing so;

     ii.     **Partial Compliance**: Indicating that the City has satisfied some but not all requirements of the Consent Decree provision;

     iii.     **Initial Development**: Indicating that, during the audit period, the City has taken at least one measure in the process of fulfilling the requirements of the Consent Decree, but has not yet completed its requirements;

     iv.     **Out of Compliance**: Indicating that the City received notice that the Consent Decree provision would be assessed during the audit period, but has not yet fulfilled the requirements of the provision and has not taken meaningful steps to do so; and

     v.     **Not Assessed**: Indicating that the Monitoring Team did not give the City notice that this provision of the Consent Decree would be assessed this reporting period. For Consent Decree provisions that the City addressed ahead of schedule, without notice of assessment from the Monitoring Team, the City has received one of the compliance grades outlined above.

     **3.**     **Summary of Audit Findings**

The findings of the audit are outlined below in *Table 1: Ferguson Municipal Court Reform at a Glance*, with reference to specific provisions of the Consent Decree as applicable.[5] The specific bases for these ratings are explained in further detail below:

---

[5] Table 1 captures provisions of the Consent Decree that can be audited, reviewed, or quantified on a biannual basis.

## Table 1: Ferguson Municipal Court Reform at a Glance

| Consent Decree Provision | Audit Procedures | Status |
|---|---|---|
| ¶ 324: Ensure cap on revenue from municipal fines and fees | Document Review: City budget and financial records | Substantial Compliance |
| ¶ 325: Remove municipal court from oversight of City Finance Director | Observation of Municipal Court Operations and review of city budget | Substantial Compliance |
| ¶ 326: Implement Comprehensive Amnesty Program for cases without a disposition initiated before January 1, 2014, and repeal all or parts of Ferguson Municipal Code §13-60, §13-63, §13-70(2) and (3), and §44-50 | City Ordinance Review; Database Review of pending and closed cases; Municipal Court Case File Review of pending and closed cases; Observation of Municipal Court Operations | ¶ 326(a) – Partial Compliance<br>¶ 326(b) – Partial Compliance<br>¶ 326(c) – Partial Compliance<br>¶ 326(d) – Partial Compliance |
| ¶ 327: Implement Comprehensive Amnesty Program, eliminate charges, and cancel warrants for cases without a disposition initiated before January 1, 2014 | Database Review of pending and closed cases; Municipal Court Case File Review of pending and closed cases; Observation of Municipal Court Operations | Partial Compliance |
| ¶ 328: Develop and implement policies to ensure fair administration of justice | City Ordinance Review; Website Review; Observation of Municipal Court Operations | Partial Compliance |
| ¶ 329: Increase transparency of court operations | Website Review | Partial Compliance |
| ¶ 331: Make information available regarding cost-free legal assistance | Website Review; Observation of Municipal Court Operations | Out of Compliance |
| ¶ 333: Ensure adequate notice to individuals charged with a violation | Document Review of Citation and Supplemental Form; Website Review | Partial Compliance |
| ¶ 335: Maintain up-to-date contact information for individuals with cases pending in the Court | Document Review of "Updated Contact Information" form; Observation of Municipal Court Operations | Partial Compliance |
| ¶ 336: Revise online payment system to allow late payments and payment plan installations | Website Review | Partial Compliance |
| ¶ 341: Maintain public list of preset fines, accounting for punitive nature, local income levels, and regional averages | Document Review of current fines and fees schedule; Website Review; Observation of Municipal Court Operations | Substantial Compliance[6] |
| ¶ 342: No additional fines and fees for Failure to Appear or violations of repealed code provisions §13-60, §13-63, §13-70(2), or §13-70(3). | City Ordinance Review; Database Review of pending and closed cases; Municipal Court Case File Review of pending and closed cases; Observation of Municipal Court Operations | Substantial Compliance |

---

[6] In light of an agreed amendment to Paragraph 341, the City is currently in Substantial Compliance with this provision. The amendment took effect after completion of the March 2018 audit but prior to issuance of this report.

| | | |
|---|---|---|
| ¶ 344: Implement community service as a sentence alternative | Document Review of New Policy; Observation of Municipal Court Operations | Partial Compliance |
| ¶ 345: Provide options for court-managed payment plans | Document Review of New Policy; Observation of Municipal Court Operations | Partial  Compliance |
| ¶ 357: Ensure independence of City Prosecutor | Ordinance Review; Observation of Municipal Court Operations | Partial Compliance |
| ¶ 358: Ensure impartiality of municipal court judge | Ordinance Review; Observation of Municipal Court Operations | Substantial Compliance |
| ¶ 360: Develop protocols for conducting cost-feasible, data-driven, and qualitative assessments of court practices | Document Review; Website Review | Not Assessed |
| ¶ 413: All policies on website | Website Review | Partial Compliance |

### 4.      Detailed Audit Findings – Summary Descriptions

**a)  Ensuring that Municipal Code Enforcement is Driven by Public Safety**

- Pursuant to Paragraph 324 of the Consent Decree, the City achieved substantial compliance with the 12.5 percent cap on revenue from municipal fines and fees, consistent with the mandate of Mo. Rev. Stat. § 479.350, and remained in substantial compliance with this provision during the March 2018 audit period.

**b)  Comprehensive Amnesty Program**

- Pursuant to Paragraph 326 of the Consent Decree, the City has implemented a Comprehensive Amnesty Program which includes a process for declining to prosecute all open cases without a disposition that were initiated prior to January 1, 2014, unless the City Prosecutor finds good cause to continue the prosecution. In Year Two, the Parties collaborated in the development of the "good cause criteria," which are provided herewith as **Appendix B.**  As of the March 2018 audit, the City was in partial compliance with Paragraph 327 of the Consent Decree, requiring implementation of the Comprehensive Amnesty Program; the elimination of all relevant charges, fines, and fees pending from cases initiated prior to January 1, 2014; and the cancellation of any municipal arrest warrants or collection of fines and fees associated with these cases.  The finding of partial compliance largely reflects the fact that the City's review was ongoing but not complete at the time of the audit.

- As of the March 2018 audit, the City had reviewed 6,085 cases without a disposition with 1,847 cases that still needed to be reviewed.  At that time, the City Prosecutor had decided to continue prosecution of approximately 320 cases, based on the agreed-upon Good Cause Criteria, as outlined in Appendix B.

- During the March 2018 audit, the Monitoring Team reviewed 32 cases provided as a sample of the approximately 320 cases kept open under the good cause criteria as part of the Comprehensive Amnesty Program (as of February 28, 2018).  Below is a summary of the 32 cases:

| Cases | Good Cause Criteria |
|---|---|
| 26 Cases - Driving While Suspended or Revoked under 44.81 | 3 |
| 1 Case - Indecent Exposure | 2 |
| 2 Cases - Trespassing First | 2 |
| 2 Cases - Stealing under $500 | 2 |
| 1 Case – DWI | 1 |
| 32 Total Cases | |

- The five cases kept open under the second good cause criteria (the offense originally charged involves an identified victim who is available to assist in further prosecution of the pre-2014 case) raise a concern.  None of the documentation within these files demonstrates any effort by the City to confirm that the alleged victim is available to assist in further prosecution of the case.  For cases involving alleged conduct such as trespassing or stealing items valued under $500, the alleged victims are largely businesses, not individual persons.

- As of September 2018, the City has completed review of all 7,932 pre-2014 cases, and has continued prosecution on 1,744 cases.

- An audit of the good cause case review was conducted as part of the September 2018 municipal court audit.  In anticipation of the audit, the Monitoring Team requested and received a chart outlining which of the four provisions of the good cause criteria the City Prosecutor relied upon to continue prosecution of each of the 1,744 cases.  The Monitoring Team will report the results of this audit in the Spring 2019 status report.

- Pursuant to Paragraph 326(b) of the Consent Decree, and through an order issued by the Municipal Court Judge, the City has eliminated all pending charges, fines, and fees related to Failure to Appear Violations without requiring defendants to make bond payments, appear in court, or take any other action.  This was confirmed in ITI during the March 2018 audit.

- Pursuant to Paragraph 326(c) of the Consent Decree, the City has repealed all or parts of Ferguson Municipal Code § 13-60, § 13-63, § 13-70(2) and (3), and § 44-50, and has eliminated all pending fines and fees imposed pursuant to the

applicable provisions of these sections.  During the March 2018 audit, the Monitoring Team confirmed that there were no active or pending cases in ITI associated with these provisions.

- Pursuant to Paragraph 326(d) of the Consent Decree, the City has taken measures to ensure that, where a defendant has made total payments that exceed the amount of the initial fines and fees imposed for a municipal ordinance violation, including payments for associated Failure to Appear Violations, the City has recommended that the fines be stayed and the case be closed without requiring defendants to make a bond payment, appear in court, or take any other action. Where payments have been made that do not total or exceed the original fine amount, the City has recommended lowering the fine and fee debts owed down to the amount of the initial fines and fees imposed, minus any payment already made by the defendant.  As part of the March 2018 audit, the Monitoring Team reviewed a random sample of ten percent of the 238 cases where FTA fines had been waived.  The FTA fines waived totaled $61,123 for all 238 cases.

### c) Increasing Transparency of Court Operations

- As part of the March 2018 audit, the Monitoring Team confirmed that the Municipal Court website needs further updates, including links to the new and approved court policies, such as the Continuance Policy (as of the September 2018 audit period, the new Continuance Policy was available on the website). Pursuant to Paragraph 330 of the Consent Decree, the City must also identify other ways to increase the transparency of court operations, besides posting materials on its website.

### d) Ensuring Adequate Notice to Individuals Charged with a Violation of the Ferguson Municipal Code

- To ensure individuals charged with violations receive adequate and reliable information about their rights, the City revised the citation document and created a citation supplemental form to provide a clear statement notifying the recipient of the right to challenge the charge in court and instructions regarding how to do so, see Consent Decree at ¶ 333(d); to provide a clear statement that the recipient is entitled to have the amount of the imposed fine proportioned to the recipient's ability to pay, see id. ¶ 333(h); to provide the range of possible penalties for failing to meet court requirements, see id. ¶ 333(i); and to provide clear instructions regarding how to acquire information regarding a pending charge, including how to contact a clerk of the Municipal Court by phone or in person, see id. ¶ 333(j).  These changes were made and approved by DOJ and the Monitoring Team as part of the March 2018 audit.  The Monitoring Team checked the website and confirmed that the information referenced on the citation supplemental form is in fact available on the website.  Additional audit methodologies are being developed to assess whether the citation supplemental form is consistently provided to individuals being charged with a violation.

- During the March 2018 audit period, the Monitoring Team observed Night Court proceedings and confirmed that Court Staff are requesting updated contact information by providing each defendant who appears in court with an "Updated Contact Information" Form, pursuant to Paragraph 335.  Completion of the form continues to be optional, however, and there is not consistent documentation of a defendant's affirmative refusal to complete the form.

e) **Revising the Online Payment System to Make All Municipal Court Payments Available Online Except Where Prohibited By Law**

- Pursuant to Paragraph 336 of the Consent Decree, the City has engaged an outside vendor called The Payment Group ("TPG") to manage its online payment system.  During the March 2018 audit, the Monitoring Team confirmed that the TPG website had not yet been revised to reflect the outstanding concerns with language about partial payments identified during the prior audit.

f) **Conducting Ability-to-Pay Determinations in Conjunction with Imposing Fines and Fees**

- Consistent with Paragraph 342, the City has not imposed any additional charges, fines, fees, or costs in response to any alleged or found "Failure to Appear" Violation.

g) **Ensuring Appropriate Alternative Sentences, Like Community Service, and the Availability of Payment Plan Options**

- Pursuant to Paragraphs 344 through 346 of the Consent Decree, the Municipal Court provides for appropriate alternative sentences such as community service and payment plan options for satisfying fines, fees, and costs; both were observed during court as part of the March 2018 audit.  The City has developed and received approval for policies related to alternative sentences, community service, and payment plans.  Further auditing methodologies are being considered to assess the frequency and compliance of the community service and payment plan options being utilized by the court.

h) **Ensuring the Independence of the Municipal Court from the City Prosecutor**

- Pursuant to Paragraph 357 of the Consent Decree, the Monitoring Team observed that the separate case file system for the City Prosecutor was not yet fully operational during the March 2018 audit period.

- The City Prosecutor appeared to otherwise operate independently of the Municipal Court.

i)   **Ensuring the Impartiality of the Municipal Judge**

- Pursuant to Paragraph 358 of the Consent Decree, the Monitoring Team was satisfied with the indications of the impartiality of the Municipal Court Judge as observed during trial proceedings as part of the March 2018 audit period, and will continue to monitor compliance with this provision of the Consent Decree during future audits.

**G.   Accountability**

The City has drafted and implemented policies with respect to the Duty to Report Misconduct and the Duty of Candor.  During the reporting period, the City finalized its Internal Investigations policy after incorporating community feedback obtained during policy forums, and continued to develop a disciplinary matrix, citizen complaint form, and mediation policy.  In September, the City also provided, upon request of the DOJ and the Monitoring Team, a complaint tracking sheet detailing the status of investigations initiated since 2017.  Because the tracking sheet failed to capture the bulk of information required pursuant to Consent Decree ¶¶ 377-379, the Monitoring Team and the DOJ asked the City to provide a revised version.  In the next reporting period, the City should finalize the complaint tracking document and complete policy development in this area.  Once the entire suite of internal investigations policies has been completed, and has been approved by the Monitoring Team, the 30-day comment period will commence.  In anticipation of this forthcoming rollout, the Monitoring Team will conduct an audit of the City's internal investigations to establish a baseline for future audits.

**H.   School Resource Officer Program**

During the reporting period, the Memorandum of Understanding ("MOU") between FPD and the Ferguson-Florissant School District ("FFSD") was finalized and approved by the Monitoring Team and executed by authorized FFSD executives.  The MOU provides the foundation for establishing daily practices that will build trust and cooperation between FPD

and Ferguson's youth and sets out policies designed to achieve the Consent Decree's goal of avoiding negative police interactions and developing alternatives that promote keeping students in school and out of the criminal justice system.  During Year Three, the City, working together with the DOJ, will continue to develop the School Resource Officer Program Operations Manual ("SRO Manual").  Over the next year, the SRO Manual should be developed in consultation with FFSD faculty and staff, the Youth Advisory Board, and other FFSD stakeholders.  The Monitoring Team anticipates that implementation of the SRO Manual, including SRO training, will be completed in Year Four.

### I.        Body-Worn and In-Car Cameras

The Parties received final approval from the Monitoring Team with respect to their body-worn and in-car camera policies during the reporting period.  Over the course of the next six months, the Parties should finalize the City's policy with respect to public accessibility of body-worn and in-car camera recordings and then present all body-worn and in-car camera policies to the officers and the public for comment.  The Monitoring Team expects that the rollout of both roll call and in-service training with respect to body-worn and in-car camera policies will occur by the end of the next reporting period.

### J.        Data Collection

During the next reporting period, the City must develop a plan for complying with the data collection provisions of the Consent Decree.  Data collection affects nearly every aspect of the Consent Decree and is a critical piece of achieving Consent Decree implementation.  At a minimum, the Monitor hopes that by March 30, 2019, the City will have identified each provision of the Use of Force; Stop, Search, Arrest, and Citation; and Bias-Free Policing sections of the Consent Decree that require data collection, and analyzed whether the required

25

data is currently tracked by the FPD, and if so, how.  While the Consent Decree requires developing a comprehensive data collection plan for all sections of the Consent Decree, doing so for these three key areas during the next reporting period would be a significant accomplishment.  To achieve this, however, it is necessary that FPD designate, as soon as possible, a data collection coordinator or manager with the required expertise (e.g. in analytical methods, information technology and software systems, etc.).  Although the DOJ has provided FPD with resources to help in this necessary task, the data collection coordinator will play a critical role in this process.  To the extent data measures are not currently tracked by the FPD, the data coordinator must identify where and how such data will be tracked in the future.  The City, which has made little to no progress with respect to data collection to date, must prioritize this aspect of the Consent Decree during Year Three or risk stalling further implementation efforts.

## III.    Conclusion

Significant work remains to be done before the City achieves substantial compliance with the Consent Decree.  To ensure continued progress as well as implementation by Year Five, this report lays out a number of significant milestones which the City is expected to achieve over the course of the next reporting period.  In particular, significant resources must be dedicated to the areas of community policing and engagement, data collection, and training development.  As was stated in the Spring 2018 Status Report, the Monitor continues to believe that hiring outreach, data, and training coordinators will provide the critical support necessary for the City to achieve the expected progress in these areas.

Additionally, in support of the City's efforts to achieve both short and long term implementation goals, the Monitor submits a Year Three Workplan ("Workplan"), which

outlines all of the Consent Decree benchmarks set by the Monitor for Year Three.  When read together, the status report and the Workplan demonstrate that the Consent Decree cannot be read as many distinct or isolated sections, but as objectives so intertwined that achievement of one section is often dependent on compliance with another.  For example, the development of underlying infrastructure, such as a robust data collection plan or a well-developed FPD community engagement program, will be instrumental in achieving compliance with dozens of other Consent Decree provisions.   The Workplan also outlines the member of the Monitoring Team tasked with monitoring progress with respect to various Consent Decree provisions.   The Parties are encouraged to reach out to the relevant subject matter expert where appropriate, as the Monitoring Team can serve to not only audit and monitor, but also to support efforts to achieve compliance throughout the implementation process.  The Monitor has filed, as **Appendix C**, a Ferguson Monitorship Cost Summary, which details the total budget available and amounts charged to the City by the Monitoring Team during Years One and Two.  It is the Monitor's hope that the Stated Goals as outlined in Appendix A, together with the Workplan, will serve to encourage transparency, promote a holistic and comprehensive approach to implementation, and drive considerable progress over the course of Year Three.  The Workplan has been submitted with this report as **Appendix D.**

Based upon its interactions with the Parties during the reporting period, the Monitoring Team continues to feel encouraged by FPD's and the Municipal Court's efforts to implement the provisions of the Consent Decree. While DOJ provided significant support to the City in reviewing, revising, and developing the required policies, achieving substantial compliance with the Consent Decree in a timely manner will require the City to assume more responsibility in the training and implementation phases.  The Monitoring Team will continue

to collaborate with the Parties to ensure compliance with the Consent Decree, and will continue to detail its progress through semi-annual reports to the Court.


Date: November 30, 2018                          Respectfully submitted,

                                                 */s/ Natashia Tidwell*
                                                 Natashia Tidwell
                                                 Hogan Lovells US LLP
                                                 100 High Street
                                                 20th Floor
                                                 Boston, MA 02110
                                                 617-371-1076
                                                 *natashia.tidwell@hoganlovells.com*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing was filed electronically on November 30, 2018 with the Clerk of the Court for the United States District Court for the Eastern District of Missouri, and was served by ECF notice by operation of the Court's electronic filing system.


*/s/ Natashia Tidwell*