UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | Case No. 4:16-cv-180 |
|     v. | ) | |
| | ) | Hon. Catherine D. Perry |
| THE CITY OF FERGUSON, | ) | |
|     Defendant. | ) | |
| | ) | |
| | ) | |

INDEPENDENT MONITOR'S
SPRING 2019 SEMIANNUAL REPORT

## I.      INTRODUCTION

Pursuant to Paragraph 438 of the Consent Decree entered into between the United States Department of Justice ("DOJ") and the City of Ferguson, Missouri (the "City") (together, the "Parties"), the Independent Monitor (the "Monitor" or the "Monitoring Team") submits this Spring 2019 Semiannual Report, which covers the reporting period of October 1, 2018 through March 31, 2019.[1]

Between October 2018 and March 2019, the City made slow, but steady progress in furtherance of implementation of the Consent Decree.  The City continued to collaborate with the DOJ and the Monitoring Team to develop and finalize policies in priority areas.  Although drafts of numerous policies were completed early on in the reporting period, the Parties agreed to delay finalization of those policies to allow the community an additional opportunity to review and provide comment prior to implementation.  After receiving the community's comments, the Parties have worked together to consider and, where appropriate, incorporate

---

[1] In accordance with Paragraph 439 of the Consent Decree, the substance of this report has been agreed to by the Parties.

community recommendations.   The Monitoring Team is pleased to report that during the reporting period, the suite of policies pertaining to use of force became the first set of policies to move through this process and receive final approval from the Monitoring Team for implementation.   FPD's finalized use of force policies will go into effect once roll call training is complete.

In addition, numerous other policies have been and will continue to be finalized during the next reporting period.[2]   Accordingly, FPD must continue to prioritize and build out its roll call and in-service training schedules and programs to facilitate timely implementation of these policies.   The City reported that its Training Committee began working on a training plan during the reporting period to guide this process.   Completion of this plan during summer 2019 will be critical to the successful roll out and implementation of finalized policies.

The City continued to work to meet the deadlines established by the Monitor's Year Three Workplan.   See Dkt. No. 100-1 at 10-27 (the "Monitor's Workplan" or "Workplan").[3] However, in practice, only a few employees in the Ferguson Police Department ("FPD") and Ferguson Municipal Court ("FMC") are responsible for the majority of the City's implementation efforts to date.   These individuals, particularly Interim Chief Frank McCall, Lieutenant Harry Dilworth, and Christine Lanfersieck, have collaborated with DOJ and the Monitoring Team to assist with policy development, training, and, on the Court side, audits.[4]

---

[2] Throughout this report, the Monitor refers to both the "reporting period" and the "next reporting period."  For purposes of this status report, the "reporting period" refers to October 1, 2018 through March 30, 2019, while the "next reporting period" encompasses April 1, 2019 through September 30, 2019.

[3] Throughout this report, the Monitor refers to "Year One," "Year Two," "Year Three," etc. to identify past achievements and to outline future goals.  The monitorship officially began when the former Monitor was appointed by the Court on July 22, 2016.  Accordingly, Year One ran from August 2016 through July 2017, Year Two began in August 2017 and ended in July 2018, Year Three commenced in August 2018 and will end in July 2019, Year Four will begin in August 2019 and end in July 2020, and Year Five will commence in August 2020.

[4] Ms. Lanfersieck left her position at the Ferguson Municipal Court at the end of the reporting period. She has been critical to the substantial progress achieved with respect to the reform of the Ferguson Municipal Court.  The

These key individuals have gone above and beyond, and have driven implementation progress forward while also completing the demanding daily tasks of their full-time jobs.

The City has not yet identified a Consent Decree Coordinator, a position that is required under the Consent Decree.  See Consent Decree, ¶ 454.  A Consent Decree Coordinator will assist the City in addressing the exact difficulties with which it currently struggles— coordination, communication, and high-level oversight of implementation tasks.  Accordingly, the Monitoring Team recommends, once again, that a Consent Decree Coordinator be appointed to oversee implementation, to avoid overloading the few individuals already carrying out much of the implementation efforts, and to improve communications with the Monitoring Team.  For instance, although the Monitoring Team published a Workplan in the Fall of 2018, it has not received regular updates from the City with respect to progress on that plan because no sole individual within the City is responsible for updating the Workplan and notifying the Monitoring Team about advancement in particular areas.  As a result, the Monitoring Team is not always informed of progress that is made and/or may be unaware when a Workplan deadline has been missed.  Improved communications through a Consent Decree Coordinator would also ensure that the Monitoring Team sets appropriate and achievable deadlines for implementation goals.  In the fall, the City approved a Workplan that required it to establish a Training Committee by December 31, 2018, yet recently reported that it had established a Training Committee as early as the winter of 2017.  In the future, the Monitoring Team would like to avoid creating new deadlines for tasks which have already been completed.  Regular communication between the Monitoring Team and a Consent Decree Coordinator would solve

---

Monitoring Team applauds her excellent work and commitment to fulfilling the aims of the Consent Decree.  In addition, Judge Brown also stepped down as Municipal Judge.  The loss of these individuals at the Ferguson Municipal Court presents a challenge to continued progress with respect to the reform of the Municipal Court.  The Monitoring Team is hopeful that the City will prioritize filling and training on Ms. Lanfersieck's position during the next reporting period so that Municipal Court reform can continue to progress toward substantial compliance.

these concerns and would help ensure the City's compliance with the Workplan in a timely manner.

For these reasons, the Monitoring Team was pleased that the City initiated its search for a Consent Decree Coordinator during the reporting period.  The Monitoring Team commends the City for developing a comprehensive job description and promoting the position on its website as well as in other places.  Filling this position is essential and will avoid the Monitoring Team and/or DOJ having to prompt the City to begin and complete implementation tasks that are already detailed in the Workplan.  Without assistance in allocating resources and workflows, initiating and overseeing efforts or projects required under the Workplan, and communicating clearly with the Monitoring Team and DOJ about the status of various outstanding matters, the City faces enormous challenges in maintaining compliance with the Workplan, and risks delaying the implementation process even more than the current rate.  The Monitoring Team hopes that with the addition of a Consent Decree Coordinator during the next reporting period, the City's implementation efforts will be more proactive and efficient moving forward.

### A.   The Monitoring Process

During the reporting period, the Monitoring Team supported the City in its efforts to achieve substantial compliance and conducted reviews and audits to determine compliance with both the Consent Decree and the Year Three Workplan.  This report provides a status update with respect to the three critical phases of implementation: (1) policy revision and review; (2) training and implementation; and (3) auditing and compliance assessment.

### 1.   Policy Revision and Review

The Consent Decree requires FPD and FMC to incorporate its provisions into specific policies and procedures as appropriate.  See Consent Decree, ¶ 42.  The Parties continue to work

collaboratively in executing the policy revision and review protocol set forth in the Fall 2018 Status Report, which announced a modified protocol that includes a 30-Day Comment Period to allow for additional community input on policies prior to policy rollout.  See Dkt. No. 100 at 3-4.  The modified protocol proved to be successful and resulted in numerous community stakeholders submitting robust commentary on policies to the Parties.  The addition of thirty days for the community to comment on draft policies, as well as time for the Parties to revise policies based upon the feedback received, has created some delay in the policy development process.  However, any negative effect of delayed policy rollout is diminished by the fact that community members, including FPD officers, now have a clear role and voice in the policy development process, which is an important aim of the Consent Decree.  Accordingly, as of October 1, 2018, the policy development protocol continues to be implemented as follows:[5]

  i. *Kick-off/Announcement of Policy Area:* FPD notifies DOJ and the Monitor of its intent to begin drafting or revising policies in an identified subject area;

 ii. *Technical Assistance:* The appropriate Subject Matter Expert on the Monitoring Team provides FPD and DOJ with technical assistance in the form of model policies and/or initial guidance as to best practices in the identified subject area;

iii. *Gap Analysis:* FPD and DOJ conduct an assessment or gap analysis of FPD's current state of affairs (i.e., ascertain how FPD's existing policies, practices, and systems differ from the Consent Decree's requirements and best practices);

 iv. *Solicitation of Community Input:* Several provisions of the Consent Decree require community involvement in the implementation of specific policies, including those designed to improve police/community relations.  The Parties are committed to soliciting community feedback on other policies as well, even where not explicitly required by the Consent Decree.  While the Parties continually evaluate the best means of involving community stakeholders in the policy development process, the Parties have found that policy forums are an effective means of inviting and obtaining community input.

  v. *Policy Revision:* FPD and DOJ revise policies, practices, and systems in the target subject area to the extent required under the gap analysis;

---

[5] The steps outlined in the process are not necessarily intended to be implemented sequentially.  Rather, the Parties and the Monitoring Team determine the appropriate methodology on a case-by-case basis.

vi.  ***Return to Monitor/SME:*** Upon completion of a draft policy, the Parties submit the policy to the Monitor and/or appropriate Subject Matter Expert for review.  The Subject Matter Expert will review the policy and either provide approval or arrange for a conference call to discuss additional revisions; and

vii.  ***30-Day Comment Period:*** Once the Monitoring Team has approved a draft policy, the City will email the policy to FPD officers from varying ranks and units.  Officers will have a meaningful opportunity to review and comment on the new or revised policy or procedure during a 30-day period.  At the same time, FPD will post the policy to the FPD website for review by the community.  Community members will also have 30 days to provide comment on the draft policy or procedure.  At the close of the 30-day period, the Parties will determine whether any modifications to the draft policy are appropriate.  If modifications are made, the revised policy shall be submitted to the Monitor for review and final approval.  After the Monitor has approved the final policy, officers will be provided roll call training and the finalized policy will be implemented and published.

### 2.    Training and Implementation

Training is, of course, essential to moving policies out of development and into implementation.  During the reporting period, the City identified eight individuals as members of the Training Committee.  In compliance with Paragraph 49 of the Consent Decree, four of these individuals are representatives from the FPD and four are representatives from the Neighborhood Policing Steering Committee ("NPSC").  During the reporting period, the City provided the names of the individuals on the Training Committee to the Monitoring Team as was required under the Workplan.

The City was also tasked with developing a training schedule by February 28, 2019.  See Dkt. No. 100-1 at 14.  Although the City provided the Monitoring Team with a spreadsheet listing the general availability of police training courses in Missouri, the Consent Decree contemplates a training schedule that outlines the delivery of "all training specifically required by the provisions of [the Consent Decree.]"  Consent Decree, ¶ 50.  While the courses listed in the spreadsheet may serve as partial or even complete trainings on some of FPD's finalized policies, the Monitoring Team was not provided with the information needed—such as the

curricula of those courses—or with the City's initial assessment of whether the proposed courses meet the Consent Decree's requirements.  To the extent FPD plans to develop its own training sessions, a schedule for those roll call and in-service sessions should be incorporated into the training schedule.  During the next reporting period, the City should provide documentation to the Monitoring Team so that it may better assess compliance with this measure.

The City reported that during the reporting period, the Training Committee began to draft the Training Plan.  The City also contacted Subject Matter Expert ("SME") Robert Stewart for technical support and guidance during the development of this plan.  SME Stewart provided comments on the plan.  The City, through its Training Committee, should continue these efforts, referring to Paragraph 51 of the Consent Decree and to SME Stewart for guidance as needed.  In addition, and in conjunction with these efforts, the Training Committee must work during the next reporting period to develop the supervisory training course for all new and current supervisors.  See Consent Decree, ¶ 317.  Such training shall specifically train supervisors to carry out all supervisory duties established in policy and in the Consent Decree, and shall provide specific instruction on methods for ensuring that supervisory duties are fulfilled.  Id.

As was stated in the Fall 2018 Status Report, the development of an adequate Training Plan, including the supervisory training course, will require thoughtful consideration of the various methods required for training delivery as well as a careful examination of Missouri state certification requirements to determine whether they harmonize with the Consent Decree's requirements for officer training.  The Monitoring Team notes that the City has identified a Training Coordinator, Sgt. Dominica Morrow, and has delegated responsibility for developing training materials to Lt. Dilworth, both of whom are sworn officers who have been asked to take on these roles in addition to completing their normal work duties.  By assigning individuals with

numerous other responsibilities to also assume the Training Coordinator's duties, the implementation of a training program is made considerably more difficult.  The Monitoring Team is hopeful that the City will see the importance of hiring a dedicated, full-time Training Coordinator, with expertise in training development and delivery, to assist in the development of a comprehensive training program.

In the meantime, the Monitoring Team commends Lt. Dilworth, in particular, for his diligence and ability to balance the many Consent Decree-related requests that are frequently made of him.  Even without the benefit of a completed training plan in place, Lt. Dilworth has developed and prepared himself to conduct roll call trainings as policies are finalized.  Roll call trainings provide officers with an overview of the new policies prior to implementation and prior to in-service training on those policies.  Lt. Dilworth's ability to translate policies into roll call trainings will ensure that new policies are implemented on a timely basis once finalized.  The Monitoring Team hopes that his excellent work, coupled with the Training Committee's prioritization of the training plan's development, will enable the City to even more effectively develop, submit to the Monitor, and execute a training plan and accompanying programs during the next reporting period.

### 3.    Auditing and Assessing Compliance

As previous reports have indicated, with the exception of the FMC, much of the implementation phase of the Consent Decree remains to be completed.  The Monitoring Team conducted its third Municipal Court audit in September of 2018, the details of which are described in Section II(F) below.  The remaining subject areas did not enter the implementation stage during the reporting period and could not be audited.  For the reasons discussed herein, implementation did not occur in the areas of use of force, stops, searches, and arrests,

accountability, and community engagement during the reporting period.  The Monitoring Team expects that these policies will go into effect during the next reporting period.

The Monitoring Team will commence a "Baseline Audit" designed to assess the implementation of each new policy approximately six months following the rollout of that policy.  Prior to this Baseline Audit, during the pre-implementation phase, the Monitoring Team will engage in various "Pre-Baseline Reviews."  The purpose of a Pre-Baseline Review is not assessment; instead, Pre-Baseline Reviews will be used by the Monitoring Team to develop an audit methodology for each subject area.  Pre-Baseline Reviews play an important role in identifying how information is gathered and stored by the City as well as which data points and processes will be assessed by the Monitoring Team during the Baseline Audit.  Pre-Baseline Reviews also recognize that it would be unfair to audit compliance with policies that are not yet in effect.  Accordingly, the Monitoring Team will use the Pre-Baseline Reviews to identify key indicators of compliance and to frame methodologies for future audits of implemented policies. In compliance with the Consent Decree, the Monitoring Team will notify the Parties in advance of commencing any review or audit.  At that time, the Monitoring Team will also submit any request for documents or materials required for its review or audit.  See Consent Decree, ¶ 426.

## II.    DETAILED STATUS UPDATE

The Monitor issued a Year Three Workplan as Appendix D to the Fall 2018 Status Report.  See Dkt. 100-1 at 10-27.  The Workplan provides benchmarks for the City's achievement of both short and long term implementation goals, and will be updated and republished on an annual basis.  Concurrent with each spring status report, the Monitoring Team will update the Workplan to detail the status of compliance during the relevant reporting period. The Year Three Workplan, updated to reflect tasks that were completed, not completed, in

progress, or in need of prioritization during the reporting period of October 1, 2018 through March 31, 2019, is submitted with this report as **Appendix A.**  With respect to tasks that were targeted for completion during the reporting period, Appendix A indicates whether they are "complete" or "incomplete."   A status of "incomplete" signifies that the City is out of compliance with the Workplan's stated deadline.  The City must prioritize incomplete tasks and/or propose an alternative deadline by which it can commit to completing the outstanding action items.  Appendix A does not assess compliance of items that were not due during the reporting period; instead, the table indicates tasks as "in progress" if the City has already commenced work on the project, and as "to prioritize" if little or no progress on the task has been made and the lack of progress may thwart the City's ultimate ability to meet the stated deadline during the next reporting period.

The remainder of this report details the status of implementation with respect to the six stated priority areas: (1) community policing and engagement; (2) bias-free police and court practices; (3) stops, searches, citations, and arrests; (4) use of force; (5) recruitment; and (6) accountability.  Under the Workplan, policy development and rollout in each of the six priority areas should be completed by the end of Year Three, with the exception of bias-free police and court practices, for which there need only be a draft policy completed by the Parties.  In addition to these priority areas, the City, with support from the DOJ and Monitoring Team, has continued working toward implementation of the remaining requirements of the Consent Decree, with continued emphasis on implementation of provisions regarding municipal court reform, the school resource officer program, body-worn and in-car camera policies, First Amendment protected activities, and data collection and analysis.  Progress in these subject areas is also detailed below.

## A.      Community Policing and Engagement

The City's progress continues to be sluggish in the area of community policing and engagement.   During the reporting period, the City completed a draft Community Policing Policy and published it to the City website for a 30-day comment period between November 15, 2018 and December 15, 2018.   The Parties evaluated and incorporated, where appropriate, community commentary into the draft policy, which will be finalized, approved by the Monitoring Team, and rolled out during the next reporting period.

In its Spring and Fall 2018 Status Reports, the Monitoring Team recommended that the City hire a community engagement and/or outreach coordinator to oversee implementation of the community engagement provisions of the Consent Decree.   The Monitoring Team has expressed concern over the fact that in the absence of a dedicated community outreach coordinator, the City has struggled to advance the Consent Decree's goal of improving the City's relationship with the Ferguson community and to proactively implement the aspects of the Consent Decree targeted at achieving this goal.   During the reporting period, the City failed to meet the stated Workplan goal of developing and implementing staffing, shift sequencing, and deployment plans by March 31, 2019.  App. A at 4.   Similarly, the City neither developed nor submitted to the Monitor a schedule of monthly command staff meetings in which FPD discusses and analyzes significant crime trends, policing complaints, neighborhood quality of life issues, and community priorities for policing, as was required by March 31, 2019.  Id. at 3. These plans are specifically intended to support a community-oriented approach to policing. See Consent Decree, ¶¶ 28, 29-30, 256-258.

In addition, the City did not take the requisite steps required to ensure compliance with certain Workplan provisions with stated completion dates of April 30, 2019.   For example,

Paragraph 25 of the Consent Decree requires the City to assist with the establishment of a Neighborhood Association in each of Ferguson's apartment complexes, including but not limited to Canfield Green, Parkridge, and Northwinds.  Pursuant to the Workplan, compliance with this provision should have been completed by April 30, 2019, but little was done during the reporting period, and since that time, with respect to this measure.[6]  App. at 3.  Moreover, although the City reports that it has been developing its Neighborhood Policing and Community Engagement Plans, drafts of which were also due in the spring of 2019, the City has made no discernible progress towards revising its shift schedule and staffing levels so that the deployment of FPD officers reflects a commitment to a Ferguson-specific community policing program or towards identifying an entity to conduct a staffing study in the first instance.  The Monitoring Team continues to stress the interrelationship of Consent Decree Paragraphs 26-30 and urges the City to avoid viewing each provision in isolation.

During the reporting period, the City designated Assistant Chief Al Eickhoff as its community outreach coordinator.  The appointment of Assistant Chief Eickhoff to this position should mark a renewed effort to build momentum in the area of community policing and engagement as progress cannot continue to stall in this area.  As stated in the Fall 2018 Status Report, the Monitoring Team expects the City to prioritize community engagement and to make significant progress with respect to implementing community-oriented provisions of the Consent Decree over the course of the next six months.  Accordingly, the Monitoring Team is hopeful that by the end of Year Three, the City will, under Assistant Chief Eickhoff's direction,

_____

[6] The City periodically updates the Monitoring Team on its progress toward completion of the Workplan.  In its most recent update, the City reported that it "remains ready and willing to assist any neighborhood associations with their formation efforts."  However, the City has not provided any documentation of its outreach efforts to these associations, including any communication of its readiness to assist.

successfully complete—or, at the very least, develop a comprehensive plan for addressing—the outstanding action items in this area.

With respect to the Neighborhood Policing Steering Committee (the "NPSC"), the group continued to play a critical role during the reporting period in supporting and providing feedback to the Parties with respect to various community-focused policies. The City reported that its policy for responding to NPSC recommendations is in development. During the next reporting period, the NPSC should consult with the City as it works to finalize the Community Engagement Plan and the plan for responding to and acting upon NPSC recommendations. The Civilian Review Board ("CRB") will also work with FPD during the next reporting period to provide feedback and support during the development of the Community Engagement Plan. Under the Workplan, these plans should be submitted to the Monitoring Team by the end of Year Three. App. A at 2-3.

### 1.    Civilian Oversight

In December 2018, the Monitor attended a joint meeting with the CRB and the CRB Task Force to discuss CRB operations as well as the Task Force's assessment of those operations. The Monitor recommended that the Task Force wait to conduct its assessment of the CRB until the CRB has had an opportunity to review and make findings on a more substantive number of investigations. The Task Force will likely conduct its assessment at the end of Year Three or at the beginning of Year Four.

Finally, longstanding vacancies on the CRB stalled the CRB's progress and have called into question the City's compliance with Paragraph 406 of the Consent Decree, which requires the City to ensure that the CRB has the resources, training, and capacity to fulfill each of its responsibilities. Consent Decree, ¶ 406. The Monitoring Team recommended that the City

prioritize compliance with this provision and endeavor to fill the vacancies on the CRB as soon as possible. Although these seats remained open at the close of the reporting period (March 31, 2019), the Monitor is pleased to report that at the time of the filing of this report, the seats have been filled. The Monitoring Team appreciates the City's recent efforts to fill vacancies on the CRB and hopes that it will continue to prioritize the maintenance of a fully staffed CRB in the future.

### 2.      Community Dialogues & Mediations

During the reporting period, the City took steps to meet the provisions of the Consent Decree requiring structured dialogues and formalized mediation programs. See Consent Decree, ¶¶ 19, 33-34. The City consulted with Community Mediation of St. Louis with the hope that it would serve as a neutral facilitator willing to lead small-group structured dialogues between police officers and community members, but has not finalized any plans for these dialogues or programs. Although the City did not meet the January 31, 2019 Workplan deadline for developing a plan for hosting and participating in a series of dialogues, the City met with Community Mediation of St. Louis on at least two occasions in order to formulate this plan. During the next reporting period, the City should accelerate progress with respect to the development of this plan as the City has not yet commenced hosting these structured dialogues as was required by the Workplan. See App. A at 2.

The City also reported that it began work with Community Mediation of St. Louis with respect to developing a community-centered mediation program and providing neighborhood mediations among community members. See Consent Decree, ¶¶ 32-34, 399-400. For additional information regarding the status of the Community-Police Mediation Process and Community Mediation Services of St. Louis Agreement to Meditate, please refer to Section II(G)

below.  The Monitor encourages the City to reach out to SME Steven Parish for guidance and support as it develops and finalizes these programs during the next reporting period.

Within sixty days of the City's implementation of the misconduct complaint mediation program—which will serve as an alternative to the misconduct investigation process for certain civilian allegations of officer misconduct—the CRB will develop and recommend a program to promote awareness of the options available for filing and proceeding with misconduct complaints in Ferguson.

### 3.     Surveys

Paragraphs 429 and 430 of the Consent Decree require that the Monitoring Team conduct annual surveys of members of the Ferguson community, including Ferguson residents, law enforcement personnel, and detained arrestees.  In particular, the surveys are aimed at gathering information about (1) the community's experiences with and perceptions of FPD, public safety, and the municipal court; and (2) police officers' attitudes regarding their jobs and the Ferguson community.

During the reporting period, the Monitoring Team continued its work with the National Police Foundation with respect to preparing for the delivery of community and officer surveys over the course of Year Three.  In February 2018, the Monitoring Team, along with members of the National Police Foundation, met with community members in Ferguson during a town hall to discuss strategies for the successful administration of a community survey.  Based on that and other meetings with Ferguson community members, the Monitoring Team worked with the National Police Foundation to develop and finalize a community survey, and met with community stakeholders to finalize a plan for the administration of that survey.

This work has resulted in the Monitoring Team launching its community survey, which will be publicly available for the period of April 8 – July 8, 2019.  Community members can access the Monitor's survey at: www.tinyurl.com/FergusonMOsurvey.  During this period, hardcopies of the survey and access to public computers are also available at Ferguson City Hall, Ferguson Public Library, and the Urban League's Ferguson location.  During the three month period in which the survey will run, the Monitoring Team will review anonymous demographic results associated with survey responses as surveys are completed to ensure that participants are representative of the Ferguson community.  To the extent certain demographic or geographic groups are not represented in the results, the Monitoring Team will take steps to keep the survey open for a longer period of time and/or increase its efforts to promote the survey to those populations during the month of July 2019.

During the reporting period, the City took steps to work directly with the National Police Foundation in order to conduct a series of officer surveys.  This process experienced delays as a result of change in personnel in the Chief of Police and City Manager positions. However, the City and the National Police Foundation have recently recommenced discussions and have plans to implement these surveys during the next reporting period.

**B.    Bias-Free Police & Court Practices**

The Parties continue to develop policies pertaining to bias-free police and court practices, with the goal of submitting initial draft policies to the Monitoring Team prior to the close of Year Three.  The Parties made substantial progress with respect to this effort during the reporting period.  In April, after the close of this reporting period, the Parties held two round table policy forums designed to solicit input on these policies from the Ferguson community and were assisted by Monitoring Team SME Professor Kimberly Norwood.  The Parties have plans

16

to hold an additional forum targeting youth this fall.  Accordingly, the City is on target to provide the Monitoring Team with draft policies, inclusive of initial public comments, during the next reporting period.

To further promote bias free policing and court practices, the Consent Decree requires that all FPD police and court employees provide timely and meaningful access to police and court services to all, including individuals who have a limited ability to speak, read, write or understand English ("LEP individuals").  Consent Decree, ¶ 67.  In its most recent progress report, the City reported that Ferguson does not have a population of non-English speakers or LEP individuals.  Regardless of the City's assessment of its current population, the Consent Decree mandates that the City implement an access plan for LEP individuals, a population the City recognized in its recently finalized Community Policing policy.[7]

### C.    Voluntary Contacts, Stops, Searches, Citations, and Arrests

During the reporting period, the Parties continued policy development in the area of voluntary contacts, stops, searches, citations, and arrests.  Specifically, the Parties worked to incorporate community feedback received during the summer 2018 policy forums into the draft policies.  Once completed, the initial suite of draft policies were submitted to and preliminarily approved by the Monitoring Team.  The draft policies were then made available to FPD officers and the Ferguson community, and were posted online in accordance with the 30-Day Comment Period, on June 25, 2019.  Following the close of the public comment period, the Parties will assess and incorporate commentary received from the community into the policies and will work to finalize all policies in this area during the next reporting period.

---

[7] FPD's Community Policing policy, which the City posted for public comment during the reporting period, lists as a "policing principle," FPD's recognition that it serves many diverse communities, including individuals with limited English proficiency.

Because implementation of these policies has been delayed, the Monitoring Team has delayed its Pre-Baseline Review in this area.  The Monitoring Team will conduct a Pre-Baseline Review in the beginning of Year Four—when these policies will be closer toward implementation—and will develop its Baseline Audit methodology at that time.

### D.      Use Of Force

During the reporting period, the City finalized its suite of use of force policies.  As part of this process, FPD posted the draft policies to its website from October 13, 2018 through November 15, 2018, incorporated feedback received from the community into the draft policies, and received approval from the Monitoring Team with respect to the revised policies.  The finalization of this suite of policies is a noteworthy milestone with respect to the City's efforts to achieve substantial compliance with the Consent Decree as this is the first set of policies for which policy development is complete.

During the next reporting period, the City should continue with the momentum it has built around implementation of these policies by rolling out the policies to the FPD officers and conducting roll call and in-service training programs on the policies.  The Monitor repeats its request that training materials be provided to the Monitoring Team at least 21 days prior to each training session.  The finalized use of force policies will go into effect once roll call trainings are complete and will be posted to FPD's website.

The Monitoring Team will conduct a Pre-Baseline Review by analyzing arrest and use of force reports during the next reporting period.  The information contained in these reports will assist the Monitoring Team in finalizing its Baseline Audit methodology for this subject area, which will occur approximately six months following implementation.

### E.      Recruitment

The Parties completed a draft Recruitment Plan for attracting and retaining a high-quality and diverse work force more than one year ago.  Approval of this plan has been delayed as the City has not yet developed a method for complying with Paragraph 283(a) of the Consent Decree, which requires the City to offer salaries that will place FPD among the most competitive of similarly sized agencies in St. Louis County.  The Monitoring Team has anticipated completion of the Recruitment Plan during the previous two reporting periods, but the City has been unable to make further progress with respect to this requirement.  Under the Workplan, the City was expected to finalize and train on the Recruitment Plan by December 31, 2018.  App. A at 12.  The City did not meet this requirement and attributes the delay to the collective bargaining process.  The Monitoring Team urges the City to finalize the Recruitment Plan during the next reporting period.  Once completed, the provisions of the Recruitment Plan must be explained to rank and file members of FPD, with documentation of this training provided to the Monitoring Team.  Upon implementation, the Monitoring Team will review job applications and background investigation files to assess compliance.

### F.      Municipal Court Reform

As required by Paragraph 323 of the Consent Decree, the Monitoring Team has collaborated with DOJ and the City to support the City's efforts to reform the Municipal Code, which must protect public safety and enable fair and impartial resolution of municipal charges. The Consent Decree delineates measures that are designed to (1) ensure enforcement of the Municipal Code is driven by public safety; (2) implement the Comprehensive Amnesty Program; (3) reform the practices of the Municipal Court; and (4) ensure ongoing assessment and improvement of the Municipal Court.

### 1.        Audit Procedures & Methodology

Pursuant to Paragraph 424 of the Consent Decree, the Monitoring Team established a biannual audit schedule for the specific provisions addressing the Municipal Code and Municipal Court reform.  The first audit was conducted in August 2017.  Biannual audits are now scheduled to occur each year in March and September.

As part of the original workplan for the Municipal Court, sent to the Parties in July 2017, the Monitoring Team identified twenty provisions of the Consent Decree designated for auditing.   The methods and procedures for auditing these provisions are divided into six categories:

i.  ***Document Review***:  Review of policies, procedures, reports, schedules, and other documents such as the City budget;

ii.  ***City Ordinance Review***:  Review of ordinances that the City was required to enact, repeal, or revise in compliance with the Consent Decree; most, if not all, required changes to City ordinances were completed before the effective date of the Consent Decree;

iii.  ***Database Review***:  Access or review reports from the Computerized Computer System or database, ITI, used by the Municipal Court to track cases, and confirm the existence, or non-existence of arrests and citations for rescinded ordinances like Failure to Appear; confirm data related to waived Failure to Appear fees; and review other reports as necessary, including reports on fees collected for various state and municipal funds. Because the Monitoring Team currently does not have remote access to ITI, this task has been accomplished through observing the database information on a Municipal Court computer during onsite visits or reviewing ITI reports generated by the Court Staff;

iv.  ***Website Review:***  Review the Ferguson Municipal Court's public website, as well as the website of the City's online payment vendor, to ensure compliance with the Consent Decree provisions that require the City to maintain a website and to make certain information publicly available and readily accessible through the website;

v.  ***Case File Review***:  Onsite review of case files to audit compliance with the Consent Decree provisions related to the Comprehensive Amnesty Program, the reduction or dismissal of cases in which defendants were subject to fines and fees related to Failure to Appear charges, and collecting updated contact information for individual defendants; and

vi. ***Observation of Municipal Court Operations:*** Attend court sessions to observe the operations of the Ferguson Municipal Court, including the judge's advisements to defendants, required notifications to defendants, ability-to-pay determinations, options related to alternative sentences and payment plans, and the independence and impartiality of the Municipal Court Judge and City Prosecutor.

## 2.    The Monitor's Assessment

During the September 2018 audit, each provision related to Municipal Court Reform was evaluated and provided with one of the following compliance grades:

i. ***Substantial Compliance:*** Indicating that the City has satisfied the written ***requirements*** of the Consent Decree provision and fulfilled the purpose of the provision by doing so;

ii. ***Partial Compliance****:* Indicating that the City has satisfied some but not all requirements of the Consent Decree provision;

iii. ***Initial Development****:* Indicating that, during the audit period, the City has taken at least one measure in the process of fulfilling the requirements of the Consent Decree, but has not yet completed its requirements;

iv. ***Out of Compliance****:* Indicating that the City received notice that the Consent Decree provision would be assessed during the audit period, but has not yet ***fulfilled*** the requirements of the provision and has not taken meaningful steps to do so; and

v. ***Not Assessed****:* Indicating that the Monitoring Team did not give the City notice that this provision of the Consent Decree would be assessed this reporting period.  For Consent Decree provisions that the City addressed ahead of schedule, without notice of assessment from the Monitoring Team, the City has received one of the compliance grades outlined above.

This report outlines the findings of the September 2018 audit as well as the status of each actionable Consent Decree provision related to Municipal Court Reform.[8]  A detailed summary of this information is contained in **Appendix B** to this report.

## 3.    The Comprehensive Amnesty Program

Pursuant to Paragraph 326 of the Consent Decree, the City implemented a Comprehensive Amnesty Program.  Specifically, Paragraph 326(a) requires the City to decline

---

[8] The results of the March 26-28, 2019 audit will be reported on in the Monitor's Fall 2019 Status Report.

prosecution of cases initiated prior to January 1, 2014 that were open and without a disposition, except in cases where the City Prosecutor found good cause to continue the prosecution. The Parties worked collaboratively to develop and agree upon good cause criteria to evaluate these cases. See Appendix B to the Monitor's Fall 2018 Status Report, Dkt. No. 100-1 at 7. The Parties also agreed that the City Prosecutor would document which good cause criteria was used to justify the decision to keep cases open for continued prosecution.

The City has completed review of all 7,595 cases and has indicated the good cause criteria under which the 1,744 cases filed prior to January 1, 2014 have been kept open. The City declined prosecution of 5,851 cases, including 1,362 cases during the last audit period. The number of cases that remain open under each of the good cause criteria are as follows:

| Criteria | Description of Good Cause Criteria | Number |
|---|---|---|
| 1 | Involving assaultive behavior or reckless endangerment to others, including Driving While Intoxicated. | 316 |
| 2 | Involving an identified victim who is available to assist in further prosecution. | 563 |
| 3 | Involving the following charges:<br><br>Driving While License Suspended or Driving While License Revoked, and<br><br>    (a) the original Driving While License Suspended charge was issued because of something other than failing to appear or pay pursuant to RSMo 302.341.1; and<br><br>    (b) the defendant is unable to show that either his license was reinstated or that he/she is no longer driving. | 857 |
| 4 | Involving a defendant convicted of an additional offense since 2014 that involves assaultive behavior or reckless endangerment to others, including Driving While Intoxicated. | 0 |

| 5 | Where the City Prosecutor reasonably believes that, in the interests of justice and public safety, the case should proceed. | 8[9] |
|---|---|---|
| **Total number of pre-2014 cases that remain open for prosecution:** | | **1,744** |

The Monitoring Team reviewed 10% of the pre-2014 cases that have been kept open under at least one of the good cause criteria listed above.  Among the 175 cases reviewed by the Monitoring Team, the audited sample included all cases that were kept open under good cause criteria number two and which pertained to a failure to comply with law enforcement, as well as all cases kept open under good cause criteria number five.

With respect to cases kept open under good cause criteria number two, the Monitoring Team's review raised issues of concern.  Specifically, none of the 51 case files that were audited contained notes by the City Prosecutor documenting a recent effort to confirm whether there is a victim available to assist in further prosecution of the case.  In fact, only one of the cases included any recent notes—i.e. notes that were created between 2017 and 2019 as part of the Comprehensive Amnesty Program review—explaining why the case was kept open.  For that case, which involved the burning of a victim's clothes, the Prosecutor's memorandum stated that the case was continued for prosecution because it "directly related to the burning."  The memorandum did not otherwise clarify whether the victim remained available to assist in prosecution.[10]

The cases that remain open pursuant to good cause criteria number two raise legitimate questions about whether the identified victim is available to assist in further prosecution.

---

[9] Each of these eight case files contains a memorandum from the City Prosecutor explaining why the case has been kept open.  Six of these cases involve the exterior of real property, including issues associated with trash accumulation or tree removal.  During the next reporting period, the Monitoring Team will meet with the Parties to discuss in more detail the application of criteria number five to these specific cases.

[10] The Monitoring Team notes that this case, like others kept open under good cause criteria number two, would arguably comport with good cause criteria number five as well.

23

Indeed, given that it is now seven to nine years after the alleged conduct occurred, the victims, whether they are individuals or companies, may find themselves unavailable or unwilling to either assist or provide information about or access to relevant witnesses who are necessary to prosecute the case.  The Monitoring Team has expressed this concern to the City, and is optimistic that a resolution agreed to by the Parties will be reached during the next reporting period.

The Monitoring Team also assessed the City's compliance with Consent Decree Paragraph 326, Sections (b), (c), and (d).  Pursuant to Paragraph 326(b), the City eliminated all pending charges, fines, and fees related to Failure to Appear ("FTA") violations through an order issued by the Municipal Court Judge, without requiring defendants to make bond payments, appear in court, or take any other action.  The Monitoring Team also reviewed a report from the court file system in order to confirm that there are no active or pending FTA cases.  Pursuant to Paragraph 326(c) of the Consent Decree, the City repealed all or parts of Ferguson Municipal Code § 13-60, § 13-63, § 13-70(2) and (3), and § 44-50, and eliminated all pending fines and fees imposed pursuant to the applicable provisions of these sections.  The Monitoring Team's audit confirmed that all cases related to these obsolete provisions have been cleared out of the Municipal Court's electronic file.  The Monitoring Team is pleased to report that there are no active or pending cases associated with these provisions.

Finally, pursuant to Paragraph 326(d) of the Consent Decree, where a defendant made total payments exceeding the amount of the initial fines and fees imposed for a municipal ordinance violation, including payments for associated FTA violations, the City recommended that any additional fines be stayed and the case closed without requiring defendants to make a bond payment, to appear in court, or to take any further action.  Where payments did not total or

exceed the original fine amount, the City recommended lowering the amount owed to the amount of the initial fines and fees imposed, minus any payment amount already made by the defendant.   The Municipal Court judge entered orders reducing the amount due for each defendant as recommended by the City, and FMC staff updated the court's electronic file system to account for the fine reduction in each case.  The Monitoring Team reviewed a random sample of 10% of the defendants for which FTA fees were reduced between March 2018 and August 2018 (totaling 40 defendants) and confirmed that the FMC electronic file system reflects the appropriate FTA fee reductions.  In total, between March and September 2018, the City waived $135,569 in FTA fees for 1,226 unique cases involving approximately 400 defendants.

To date, the City has implemented all aspects of the Comprehensive Amnesty Program as required under Paragraph 326 of the Consent Decree, except for those related to good cause criteria number two, as explained above.  In addition, Paragraph 327 of the Consent Decree requires underline complete implementation of the Comprehensive Amnesty Program as well as an agreement by the City not to execute any municipal arrest warrants or to collect any fines or fees identified in Paragraph 326 while implementing this program.  Consent Decree, ¶ 327.  The City has fully complied with this provision, with the exception of good cause criteria number two, discussed herein.  Accordingly, substantial compliance with respect to Paragraph 27 is linked to the resolution of the outstanding issues pertaining to good cause criteria number two.  The Monitor recognizes the City's commendable work with respect to the implementation of the Comprehensive Amnesty Program and is optimistic that the City will achieve substantial compliance with respect to Paragraphs 326 and 327 during the next reporting period.

### 4.      Summary of Audit Findings

Pursuant to Paragraph 328 of the Consent Decree, the City has worked cooperatively with both the DOJ and the Monitoring Team to develop and implement most of the ordinances and policies necessary to ensure the fair administration of justice, the constitutionality of Municipal Court procedures, and the legality of its processes.  As outlined in Appendix B, the Ferguson Municipal Court was assessed as follows during the September 2018 audit:

- Substantial Compliance: ¶¶ 324; 325; 326(b-d); 333; 335; 336; 340; 342; 344; 345; 353; 356; and 358.
- Partial Compliance: ¶¶ 326(a);  327; 329; 338; 339; 348; 357; and 413.
- Not Yet Assessed: ¶¶ 330; 331; 334; 337; 341; 346; 349; 350; 351; 352; 354; 355; 359; and 360.

Details pertaining to each of the audited provisions (excluding the Comprehensive Amnesty provisions) are presented below.  Consent Decree paragraphs that were not assessed by the Monitoring Team during the September 2018 audit will be reported on in subsequent reports, once those provisions have been audited.[11]  The assessed provisions are discussed in accordance with the fourteen key areas for remediation of the Municipal Court as they are outlined in the Consent Decree:

➢      ***Increasing transparency of court operations.***  To increase the transparency of accessibility to municipal court operations, Paragraph 329 requires the City to make public, through a variety of means, clear and accurate information about certain aspects of municipal court operations including payment collection and processing and alternative fee arrangements. The Monitoring Team determined that the City has posted the required information on its

---

[11] The following Consent Decree paragraphs were audited for the first time during the March 2019 audit: ¶¶ 330; 331; 334; 351; and 359.  The results of the March 2019 audit will be included in the Monitor's Fall 2019 Status Report.

website.   However, because the City has yet to articulate alternative methods for wider dissemination of this information, this provision remains in partial compliance.

> ➢ ***Ensuring adequate notice to individuals charged with a violation of the Ferguson Municipal Code.***   The City provided the Monitoring Team with citations, summonses, arrest notification forms, and other charging documents used by FPD which contain information required under Paragraph 333 of the Consent Decree.   The City also created a supplemental form containing information specifically required by Sections (d), (h), (i), and (j) of Paragraph 333, and which was not already included on the citation, summons, arresting, and charging documents.   This supplemental form advises defendants of their right to challenge the charge in court and includes instructions regarding how to initiate that challenge, provides a clear statement that the recipient is entitled to have the amount of the imposed fine proportioned to the recipient's ability to pay, includes a range of possible penalties for failing to meet court requirements, and explains how to acquire information regarding a pending charge, including how to contact a clerk of the Municipal Court by phone or in person.   The supplemental form was provided to FPD for officers to distribute in conjunction with each citation issued. Accordingly, the City is in substantial compliance with Paragraph 333 of the Consent Decree.

During the September 2018 audit, the Monitoring Team observed court proceedings and confirmed that FMC staff provides each defendant who appears in court with an "Updated Contact Information" form, pursuant to Paragraph 335 of the Consent Decree.   The City updated the form to request a signature when a defendant refuses to provide updated contact information. Completion of the form is optional.   The Monitoring Team reviewed all 26 files from the September 17, 2018 night court docket and confirmed that each file contained the Updated Contact Information form.   Most of the forms were signed by the defendants, even if new

contact information was not provided.  Accordingly, the Monitoring Team has assessed the City as being in substantial compliance with this provision.

➢ *Revising the online payment system to make all municipal court payments available online except where prohibited by law.*  The City achieved substantial compliance with Paragraph 336 of the Consent Decree as it engaged a vendor called The Payment Group (TPG) to manage its online payment system.  In anticipation of the fact that the Monitoring Team will audit Paragraph 337 in the future, the City entered into a Memorandum of Understanding with Rise Community Development/CivTech St. Louis in order to give FMC citation recipients access to the "YourSTLCourts" online information system.  The Monitoring Team is pleased to see the City's progress in this area even though this provision has not yet moved to the auditing phase.  Pursuant to Paragraph 338, the City provided the Monitoring Team with a copy of the Privacy Policy of its online payment vendor TPG, but will need to ensure similar protections once the forthcoming online information system is operational.

➢ *Eliminating unnecessary barriers to resolving cases.*  Pursuant to Paragraph 339 of the Consent Decree, the City developed and implemented a continuance policy, which is available through FMC's website.  During the next reporting period, the City must develop a method of recording all requests for a continuance, including whether those requests were granted or denied, to enable effective auditing of compliance with the continuance request process required by Paragraph 339(b).  The City's website, as well as the reception window at FMC and FPD, provide accurate information regarding the hours and location of the Court, pursuant to Paragraph 339(c).  Through its online payment vendor TPG, the Court provides the option to make payments in full, partial payments, or late payments, as required by Paragraphs

336 and 339(d), and the Court accepts credit cards, money orders, and cash for payment of all court-related fines and fees, as required by Paragraph 339(e).

> ➢ ***Conducting ability-to-pay determinations in conjunction with imposing fines and fees.*** Pursuant to Paragraph 340, the City developed and implemented a policy to ensure that defendants are provided with appropriate ability-to-pay determinations. The Parties agreed to amend the language of Paragraph 341, and the Monitoring Team suspended review of this provision until further notice. In compliance with Paragraph 342, the City repealed all or parts of Ferguson Municipal Code § 13-60, § 13-63, § 13-70(2), and § 13-70(3), and has not imposed any additional charges, fines, fees, or costs in response to any alleged or found "Failure to Appear" violation, or any other violations previously imposed pursuant to the applicable provisions of these sections. Accordingly, the City is in substantial compliance with Paragraphs 340 and 342 of the Consent Decree. The Monitoring Team will reassess compliance with Paragraph 341 in the future.

> ➢ ***Ensuring appropriate alternative sentences, like community service, and the availability of payment plan options.*** The City is in substantial compliance with Paragraphs 344-345 of the Consent Decree. In compliance with these paragraphs, the Municipal Court provides for appropriate alternative sentences such as community service and payment plan options for satisfying fines, fees, and costs, and has developed and implemented corresponding policies. During court sessions, the Municipal Court consistently provides each defendant with a "Know Your Rights" form, explaining the right to make periodic payments, to present evidence of financial condition if unable to pay, and to request community service as an alternative.

Currently, defendants who fail to fulfill payment or community service obligations in a timely manner are given additional time to comply.  There is no threat of arrest unless the defendant fails to appear in court to request additional time.  As of the September 2018 audit period, a defendant who misses a payment or community service obligation would be summoned into court through the Show Cause process.  After two consecutive missed appearances, an arrest warrant issues for the underlying offense rather than for the obsolete charge of FTA.  These procedures are outlined in appropriate policies made available to the public through the Municipal Court website.

➢ *Implementing requirements for municipal arrest warrants to avoid using them as a means of collecting civil court debt.*  Both the Municipal Court summons and the Show Cause Notice explain the consequences of a defendant's failure to appear.  The City also successfully developed a written policy outlining the Show Cause process required by Paragraph 348 of the Consent Decree.  In future audits, to determine whether substantial compliance with this provision has been achieved, the Monitoring Team will review a random sample of cases that have been placed in warrant status as well as cases where a Show Cause Notice was sent to the defendant.

➢ *Ensuring individuals are not held in custody after arrest because they cannot afford the bond.*  Although Paragraphs 349 and 350 were not assessed during the Monitor's audit, this section bears mention because bond is an important aspect of the reform of the Municipal Court.  The Monitoring Team notes that although the City currently does not staff the municipal jail on a full-time basis, the City must nevertheless comply with the reformed bond policy as it relates to defendants held at facilities outside the City.  The Monitor will assess compliance in this area during a future Court audit.

➢ *Ensuring lawful license suspensions and reinstatement procedures.* Paragraphs 351 and 352 have not yet been audited.  Although the Court Staff utilize uniform notations in the notes section of the Court's online file system to indicate that the required notifications to the Missouri Department of Revenue have been sent when defendants fail to appear or pay outstanding fines in a timely manner, the Monitoring Team has been informed that this process will change once the state-mandated online court file system has been implemented. Accordingly, these provisions will be assessed at a later time.

➢ *Implementing fair trial procedures.* Pursuant to Paragraph 353 of the Consent Decree, the City drafted an order on trial procedures, the Municipal Court Judge signed and issued the order on August 16, 2017, and the order on trial procedures is available on the City's website.  The City also developed and implemented a trial procedures policy in coordination with DOJ and the Monitoring Team.  The City has achieved substantial compliance with this measure.

➢ *Collecting and reporting court data via electronic and online court systems.* Paragraphs 354 and 355 have not yet been audited.  However, the Monitoring Team draws attention to the fact that implementation of these provisions will be affected by the state-mandated online court file system, which is not yet in effect.  Accordingly, like Paragraphs 351 and 352 listed above, these provisions will be assessed at a later time.  With respect to Paragraph 356, the City published to the website all OSCA reports from June 2017 through July 2018 and is therefore in substantial compliance with this provision.  In addition, the City has achieved substantial compliance with Paragraph 413 because all <u>completed</u> municipal court policies and protocols are available on the website; to remain in substantial compliance with this provision, the City should continue to post municipal court policies and protocols as they are completed.

➢ *Ensuring the independence of the Municipal Court from the City Prosecutor.* Pursuant to Paragraph 357, the City implemented procedures to ensure compliance with substantially all of the requirements related to the independence of the City Prosecutor. However, the City is in only partial compliance because as of the September 2018 audit, the City Prosecutor had not fully transitioned to maintaining separate court files from those of the Municipal Court.

➢ *Ensuring the impartiality of the Municipal Judge.* Consistent with the requirement to ensure the impartiality of the Municipal Court Judge required by Paragraph 358 of the Consent Decree, the City enacted revisions to Ferguson Municipal Code § 13-26 by Ordinance Number 2016-3608, § 1, adopted February 23, 2016. As part of the September 2018 audit, the City submitted an annual report of compliance, showing that the Municipal Judge, Judge Terry Brown, was current on the ethical training required by the state of Missouri.

➢ *Ensuring appropriate accommodations for defendants with mental illness or intellectual or developmental disabilities.* The Parties have discussed Paragraph 359 of the Consent Decree and the Monitoring Team will audit this provision once a policy has been developed to address this requirement.

➢ *Miscellaneous provisions designed to ensure that Municipal Code Enforcement is driven by public safety.* Pursuant to Paragraph 324 of the Consent Decree, the City achieved full compliance with the 12.5% cap on revenue from municipal fines and fees, consistent with the mandate of Mo. Rev. Stat. § 479.350. The City of Ferguson Annual Operating Budget for 2018-2019 reflected Revenues of $292,200 for Fines and Public Safety, with total revenues of $20,313,946. Therefore, the City remained in full compliance with this provision where

municipal fines and fees represented less than 1.5% of total revenues for the September 2018 audit period.

As required by Paragraph 325, the City removed the Municipal Court from the oversight of the City Finance Director within 60 days of the effective date of the Consent Decree. Additionally, the Missouri Supreme Court issued an order, effective July 1, 2017, directing the presiding judge of the St. Louis County Circuit Court to supervise the Municipal Court. The Municipal Court is required by Missouri Law to report directly to the St. Louis County Circuit Court and Missouri Supreme Court.

### 5.  Municipal Court Audit Conclusions

While there are several court-related provisions of the Consent Decree that remain to be completed, the City has implemented many significant changes to the Ferguson Municipal Court as required by the Consent Decree. The Monitoring Team will continue to assess the City's efforts to maintain its current achievements and advance its progress on unfinished provisions related to the Municipal Court.

### G.  Accountability

During the reporting period, the City posted policies and guidelines relating to complaint intake and investigations, including the Community-Police Mediation Process, Community Mediation Services of St. Louis Agreement to Mediate, Internal Investigations, Professional Standards and Internal Investigations Disciplinary Guidelines, and Non-Disciplinary Responses to Minor Violations, to its website for public comment from February 27, 2019 through March 31, 2019.[12]

---

[12] The City also revised its civilian complaint form, but did not originally include it in the suite of accountability policies made available for public comment. This form has since been posted on the City's website.

During the next reporting period, the Parties will consider, and incorporate where appropriate, the commentary received from the community with respect to these policies, and submit the revised policies to the Monitoring Team for final approval.  The City should also prioritize roll call and in-service training on these policies.  During the next reporting period, the Monitoring Team will also complete a Pre-Baseline Review pertaining to the City's internal investigations.

### H.     School Resource Officer Program

As stated in the Fall 2018 status report, the City, working together with the DOJ, continues to develop the School Resource Officer Program Operations Manual ("SRO Manual"), which should be developed in consultation with FFSD faculty and staff, the Youth Advisory Board, and other FFSD stakeholders.  During the next reporting period, the Parties will conduct public forums regarding this manual, incorporate feedback received from those forums into a revised manual, and submit the draft SRO Manual to the Monitoring Team for review and approval.

### I.     Body-Worn and In-Car Cameras

During the reporting period, the City posted draft body-worn and in-car camera policies to its website from December 21, 2018 through January 31, 2019, and began reviewing and incorporating community feedback into the initial draft policies.  Once this process is complete, the Parties will submit the revised policies to the Monitoring Team for final approval.  In the next six months, the City should begin implementation of these policies by initiating and completing roll call trainings and initiating its in-service training program with respect to these policies.

### J.   First Amendment Protected Activity

During the reporting period, the Parties initiated policy development in the area of First Amendment protected activity.  Most recently, they held public policy forums in June 2019. These policy forums allowed the Ferguson community to engage with, share perspectives on, and discuss the City's policies as they relate to First Amendment protected activities.  Following the public forums, the Parties will incorporate feedback from the community into the draft policies as appropriate.  The Parties will continue to work toward completion of policy development during the next reporting period.

### K.   Data Collection

By the end of Year Three, the City is expected to provide the Monitoring Team with a worksheet identifying each provision of the Consent Decree that requires data collection, and analyzing whether the required data is currently tracked by the FPD, and if so, where that data is stored, and if not, how it will be collected and where it will be stored in the future.  See Dkt. No. 100-1 at 27.  In the Fall 2018 Status Report, the Monitor recommended that FPD designate a data collection coordinator or manager with the required expertise (e.g. in analytical methods, information technology, or software systems) to assist in this project.  Because it has not identified a data collection coordinator, the City has relied on FPD employees—who already spend considerable effort on policy development and training—to develop its comprehensive data collection plan.  The City did not meet the Workplan's deadline for completion of this worksheet, and the City's progress in this area remains slow as significant work must still be completed to identify the City's gaps in data collection as well as how and where data will be

collected and stored.  Given the pace of implementation in this area, substantial compliance with the Consent Decree's data-related provisions by Year Five appears unlikely.

## III.    CONCLUSION

The Monitoring Team is pleased that policy development has resulted in the finalization or near finalization of policies in various subject areas, including use of force, body-worn and in-car cameras, and accountability.  It appears that the City is on track to roll out these, as well as other policies, during the next reporting period, with dedicated effort to ensure roll call training is developed and implemented.  With respect to community policing and engagement, training development, and data collection, progress continues to be sluggish. These areas require concrete steps from the City to ensure that timely progress is made.

Furthermore, a number of vacancies with respect to City personnel have compounded difficulties in these areas.  The City has been faced with hiring for the positions of Chief of Police, City Manager, Municipal Court Judge, Municipal Court Clerk, and Consent Decree Coordinator.  Each of these roles carries out responsibilities that are integral to the Consent Decree's implementation, and the failure to have these roles filled will result in continued delays.  It should also identify someone with the requisite expertise—and who is not on the Training Committee or otherwise already deeply involved in implementation efforts—to assist FPD and FMC with data collection.

In spite of these vacancies, FPD, under the leadership of Interim Chief McCall, and FMC, with the dedication of the former municipal court judge and clerk, Ms. Lanfersieck, have driven forward progress.  The Monitoring Team applauds these efforts as much of the progress completed to date can be credited to their hard work and commitment to the implementation process.  It is the Monitor's hope that by filling the positions referenced

above, the individuals at FPD and FMC working diligently to achieve substantial compliance with the Consent Decree will receive the support and resources needed to be successful.  The Monitoring Team looks forward to continuing to work collaboratively with the City to achieve the stated goals of the Consent Decree.


Date: June 28, 2019                                        Respectfully submitted,


                                                          */s/ Natashia Tidwell*
                                                          Natashia Tidwell
                                                          Hogan Lovells US LLP
                                                          100 High Street
                                                          20th Floor
                                                          Boston, MA 02110
                                                          617-371-1076
                                                          *natashia.tidwell@hoganlovells.com*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that the foregoing was filed electronically on June 28, 2019 with the Clerk of the Court for the United States District Court for the Eastern District of Missouri, and was served by ECF notice by operation of the Court's electronic filing system.


*<u>/s/ Natashia Tidwell</u>*