**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>THE CITY OF FERGUSON,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 4:16-cv-180**<br><br>**Hon. Catherine D. Perry** |

**INDEPENDENT MONITOR'S 2025 SEMIANNUAL STATUS REPORT**

## I.      INTRODUCTION

Pursuant to Paragraph 438 of the Consent Decree entered into between the United States Department of Justice ("DOJ") and the City of Ferguson, Missouri (the "City") (together, the "Parties"), the Independent Monitor (the "Monitor" or the "Monitoring Team") submits this Semiannual Report detailing the City's progress through July 22, 2025.

Despite some external challenges, the Ferguson Police Department ("FPD") and its Municipal Court ("FMC") continue to experience, and benefit from, a period of sustained consistency and progress.  Under the steady leadership of City Manager John Hampton and Police Chief Troy Doyle, there is a noticeable cultural shift towards transparency and accountability. This "tone from the top" has permeated both agencies, empowering key personnel to maximize and consolidate their individual talents towards the shared goal of Consent Decree implementation.[1]  As detailed in the compliance charts below, the advances made during this reporting period evidence the City's ability to achieve the Consent Decree's goals when the individuals tasked with leading implementation are supported in that effort.  The Monitoring Team

---

[1] While the list of key FPD and FMC personnel is long, the Monitoring Team recognizes two individuals whose work during this reporting period is especially laudable: (1) Patricia Washington, who while serving as the City's Public Information Officer, seamlessly assumed the role of Consent Decree Coordinator; and (2) Sgt. Sammy Numan, who has emerged as an invaluable contributor to FPD's policy development efforts.

1

looks forward to continued work with the Parties on this collaborative path towards substantial compliance.

### A.    The Monitoring Process

As with prior status reports, this report details the City's progress with respect to the three phases of Consent Decree Implementation—policy development, training, and compliance assessment by the Monitoring Team.  Consent Decree ¶ 427.  In most subject areas, there are two training components: (1) roll call training, a brief overview of a newly-finalized policy to ensure familiarity; and (2) in-service training, a more robust and substantive training that often encompasses an entire subject area rather than a specific policy.  Although the City is still developing in-service training in most areas, the Monitoring Team has initiated compliance auditing in three areas in which existing policies have been in place for several years: Force (Consent Decree § IX), Body-Worn and In-Car Cameras (Consent Decree § XII), and Accountability (Consent Decree § XIX).

### 1.    Policy Revision and Review

The Parties continue to develop policies by following the below protocol:

i.    ***Kick-off/Announcement of Policy Area:*** FPD notifies DOJ and the Monitor of its intent to begin drafting or revising policies in an identified subject area.

ii.    ***Technical Assistance:*** The appropriate Subject Matter Expert on the Monitoring Team provides FPD and DOJ with technical assistance in the form of model policies and/or initial guidance as to best practices in the identified subject area.

iii.    ***Gap Analysis:*** FPD and DOJ conduct an assessment or gap analysis of FPD's current state of affairs (i.e., ascertain how FPD's existing policies, practices, and systems differ from the Consent Decree's requirements and best practices).

iv.    ***Solicitation of Community Input:*** Several provisions of the Consent Decree require community involvement in the implementation of specific policies, including those designed to improve police/community relations.  The Parties are committed to soliciting community feedback on other policies as well, even where not explicitly required by the Consent Decree.

v.   ***Policy Revision:*** FPD and DOJ revise policies, practices, and systems in the target subject area to the extent required under the gap analysis.

vi.  ***Return to Monitor/SME:*** Upon completion of a draft policy, the Parties submit the policy to the Monitor and/or appropriate Subject Matter Expert for review.  The Subject Matter Expert will review the policy and either provide approval or arrange for a conference call to discuss additional revisions.

vii. ***30-Day Comment Period:*** In certain designated subject areas, after the Monitoring Team has approved a draft policy, the City will email the policy to FPD officers from varying ranks and units.  Officers will have a meaningful opportunity to review and comment on the new or revised policy or procedure during a 30-day period.  At the same time, FPD will post the policy to the FPD website for review by the community.  Community members will also have 30 days to provide comments on the draft policy or procedure.  At the close of the 30-day period, the Parties will determine whether any modifications to the draft policy are appropriate.  If modifications are made, the revised policy is submitted to the Monitor for review and final approval.  After the Monitor has approved the final policy, officers will be provided roll call training, and the finalized policy will be implemented and published.

viii. ***Public Access:*** Once the policy has been finalized, FPD will post it to its website along with the "status" of the policy (e.g., finalized, awaiting training, etc.).  If and when a policy is later updated, its status will read: "new updated policy," and the changed provisions in the policy will be highlighted so that the public may easily review the amended provisions.  *See  https://www.arcgis.com/apps/MapSeries/index.html?appid=7aed307d6ad94f22a6c fb046644f2597.*

## 2.    Training and Implementation

During this reporting period, the City, through the dedicated effort of its Training Coordinator, Lisa Stephens, and the Training Committee, a group of community volunteers, worked to complete and finalize, for the first time, a "schedule for delivering all training specifically required" by the Consent Decree.  ¶ 50.  This Training Plan represents a significant milestone, and the Monitoring Team appreciates the Parties for their collaboration.  As FPD works to achieve timely delivery of the trainings detailed in its Training Plan, it continues to engage positively with the Training Committee, the DOJ, and the Monitoring Team in vetting external subject-matter experts and consultants who can assist in developing those training courses and reviewing training materials as they are submitted.

### 3.      Auditing and Assessing Compliance

As noted above, in consultation with the Parties, the Monitoring Team has determined that auditing is appropriate in some areas even though the in-service training component is still in development.  During this reporting period, the Monitoring Team completed compliance audits in two areas: Force (§ IX) and Body-Worn/In-Car Camera (§ XII). [2]   A third audit, in Accountability (§ XIX), is ongoing with an anticipated completion date of early fall.

## II.      SUBJECT MATTER UPDATES

While previous status reports have included an "at a glance" style snapshot of progress towards implementation in each subject area, the Monitoring Team, with invaluable assistance from the Parties, is pleased to provide the following listing of Consent Decree requirements for Sections III through XII.[3]

### A.      COMMUNITY POLICING AND ENGAGEMENT (§ III)

While more work remains, FPD has taken important steps to repair its relationship with the community through a strong engagement framework and the laying of a strong policy foundation for community engagement, making strides towards rebuilding trust between police and residents.  In this reporting period alone, the City finalized one of two foundational pillars of its overall Community Policing vision and is near completion and implementation of the second. The Neighborhood Policing and Community Policing Plan, adopted in early 2025, includes concrete plans for officer participation in neighborhood meetings, youth engagement programs, community coalitions like the Safe Streets initiative, and efforts to resolve conflict through mediation and dialogue.  The City has also made substantial progress in completing the second foundational document, the Crime Prevention Plan, following multiple rounds of revisions based

---

[2] Reports of the Monitoring Team's compliance audit findings can be found in **Appendix A** (Use of Force) and **Appendix B** (Body Worn/In Car Cameras).
[3] The Monitoring Team will provide a status update on the City's compliance with the remaining sections in a separate report to be filed later this summer.

on feedback from DOJ and the Monitoring Team's subject matter consultant, Dr. Leigh Anderson. While the City has drafted most of the necessary policies and plans in this area, training, at both the roll-call and in-service levels, is not scheduled for delivery until later this year.

Relatedly, the City has fulfilled the Consent Decree's requirements to establish a Neighborhood Policing Steering Committee (NPSC), Consent Decree ¶ 22, and to maintain the Ferguson Youth Advisory Board (FYAB), Consent Decree ¶ 24. The NPSC functions as a platform for residents to provide input on policing strategies and public safety concerns, and it played a key role in shaping the Community Policing and Engagement Plan. Late last year, FPD formalized its partnership with the NPSC through implementation of the NPSC Recommendations Policy which outlines the process by which FPD receives, considers, responds to, and acts upon NPSC recommendations. Consent Decree ¶ 23.

Similarly, the City continues to devote time and resources to sustaining the FYAB to ensure it plays a more active and formalized role in advising on law enforcement matters. Efforts have been made to increase youth participation and ensure the Board reflects the diversity of Ferguson's young population. While these and other reforms are still evolving, the Monitoring Team believes that these initiatives represent an important step toward giving the Ferguson community a sustained voice in shaping public safety policy and ensuring that police practices are responsive to community experiences and concerns. In the coming months, the Monitoring Team will fully assess FPD's Community Engagement efforts to determine whether implementation is proceeding as the Consent Decree requires.

| Consent Decree Provision | Compliance Rating |
| --- | --- |
| ¶ 19 Within 180 days of the Effective Date, the City will begin to host and participate in a series of small-group structured dialogues, arranged and led by a qualified neutral facilitator, between police officers and community members and groups, with an emphasis on community members and groups who previously have not had strong or positive relationships with FPD or the City. | |
| ¶ 19 Compliance Rating | Implementation – Substantial Compliance |
| ¶ 20 Within 180 days of the Effective Date, the City and FPD will develop and begin implementing an FPD community-engagement plan for creating opportunities for routine and frequent positive interactions between officers and community members. | |

| ¶ 20 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| --- | --- |
| | Training – Not Yet Implemented |
| | Implementation Ongoing |

¶ 21 Within 90 days of the Effective Date, the City will begin community meetings to solicit volunteers and community members to serve on the Neighborhood Policing Steering Committee (NPSC), which shall perform a separate function than the Civilian Review Board (CRB) already established by the City and addressed in Section XX.

Within 180 days of the Effective Date, the City will establish the NPSC. The NPSC will serve as a meaningful, but not exclusive, mechanism through which a diverse and broadly representative set of members of the Ferguson community can provide input to FPD and the City on law enforcement issues. The NPSC will provide input and be instrumental in developing the City's Neighborhood Policing Plan.

| ¶ 21 COMPLIANCE RATING | Implementation – Not Yet Assessed |
| --- | --- |

¶ 22 Within 180 days of the Effective Date, the City agrees to enact any City ordinances necessary to establish the NPSC and agrees to either: (a) select, pursuant to selection protocols developed in consultation with DOJ and with input of the broader Ferguson community, members of the NPSC who are representative of the diverse communities served by FPD; or (b) not limit the number of participants on the NPSC and allow attendees and volunteers to participate and choose the specific category to which such attendees and volunteers would like to devote time.

| ¶ 22 COMPLIANCE RATING | Implementation – Substantial Compliance |
| --- | --- |

¶ 23 The City will, in consultation with FPD and the NPSC, develop and implement policies to receive, consider, respond to, and act upon NPSC recommendations in a fully transparent and timely manner. The City will designate a City employee to provide administrative support necessary for the NPSC to effectively perform its advisory function.

| ¶ 23 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| --- | --- |
| | Implementation Ongoing |

¶ 24 The City will continue the Ferguson Youth Advisory Board that was established in 2011. The City will revise as necessary the enabling ordinances to ensure that the Ferguson Youth Advisory Board provides input to FPD and the City on law enforcement issues, especially issues that have a particular impact on young people, such as FPD's School Resource Officer Program, FPD's pedestrian stop practices, and the selection and implementation of youth-focused FPD community engagement programs set out in paragraph 20 above.

| ¶ 24 COMPLIANCE RATING | Implementation Ongoing |
| --- | --- |

¶ 25 Within 180 days of the Effective Date, the City agrees to assist with the establishment of a Neighborhood Association in each of Ferguson's apartment complexes, including, for example, Canfield Green, Parkridge, and Northwinds. The City will work with these apartment complex Neighborhood Associations in the same manner that the City consults and works with other Neighborhood Associations, such as Old Ferguson East, Jeske Park, and Old Ferguson West.

| ¶ 25 COMPLIANCE RATING | Implementation Ongoing |
| --- | --- |

¶ 26 Building on its ongoing development of a Neighborhood Policing Plan and the community engagement efforts outlined above, within one year of the Effective Date, the City will develop an FPD crime-prevention plan and a community-policing plan to ensure that policing is oriented around community priorities and partnerships, and based on problem-solving principles.

| ¶ 26 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| --- | --- |
| | Implementation Ongoing |

¶ 27 FPD's Community-Policing Plan will include a commitment to, and timelines for, implementing within two years, Ferguson's "Neighborhood Policing Plan: A Police Community Partnership," along with the additional elements set out in this section.

| ¶ 27 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| --- | --- |
| | Training – Not Yet Implemented |
| | Implementation Ongoing |

| | |
|---|---|
| ¶ 28 FPD will conduct monthly command staff meetings to discuss and analyze significant crimes, crime trends, policing complaints, neighborhood quality of life issues, as well as community priorities for policing, and to develop strategies for working with community members to address these issues. FPD commanders also will discuss and assess progress and identify needed and available resources to reduce crime and improve police-community relationships. | |
| ¶ 28 COMPLIANCE RATING | Not Yet Implemented |
| ¶ 29 FPD will structure individual officer patrol areas around specific neighborhood boundaries, and, through supervision and evaluation, will encourage direct officer-resident communication. FPD will assign officers to specific areas to allow for neighborhood problem-solving projects, and will assign officers to patrol such areas for a minimum of one year. | |
| ¶ 29 COMPLIANCE RATING | Implementation Ongoing |
| ¶ 30 FPD will revise its current shift schedules and deployment to better support a community-oriented approach to policing, and will post officer patrol area assignments on the FPD website. | |
| ¶ 30 COMPLIANCE RATING | Not Yet Implemented |
| ¶ 31 FPD will timely collect, analyze and disseminate public crime data for each patrol area or other geographic area, as feasible and appropriate. | |
| ¶ 31 COMPLIANCE RATING | Implementation Ongoing |
| ¶ 32 Within two years of the Effective Date, the City will affiliate with the Community Mediation Services of St. Louis to conduct neighborhood mediations that promote lasting resolutions of appropriately selected disputes among community members, while reducing the need for involvement in the criminal justice system. | |
| ¶ 32 COMPLIANCE RATING | Implementation – Substantial Compliance |
| ¶ 33 Within 180 days of the Effective Date, the City will, in consultation with members of the Ferguson community and the Monitor, develop a plan for providing neighborhood mediations in Ferguson. | |
| ¶ 33 COMPLIANCE RATING | Implementation – Substantial Compliance |
| ¶ 34 This neighborhood mediation program will:<br>a. Support mediation at all stages of the dispute, from early-intervention to intervention after charges have been filed, as a diversion from the criminal justice system;<br>b. Be administered by an individual with experience in neighborhood mediation or the administration of mediation programs, including the selection and training of mediators (this individual may also administer the misconduct mediation program required by Section XIX);<br>c. Use mediators that reflect the diversity of, and come from the communities served by, the program;<br>d. Ensure that mediators are trained consistently with best practices;<br>e. Have a screening tool to ensure that mediation participants can speak for themselves in the mediation without fear of retaliation; and<br>f. Have quality assurance mechanisms to ensure that all components of the program, including volunteer participants, are operating effectively and consistently with best practices. | |
| ¶ 34 COMPLIANCE RATING | Implementation – Not Yet Assessed |
| ¶ 35 Within one year of the Effective Date, the City will develop protocols for regularly, and at least annually, conducting cost-feasible data-driven and qualitative assessments to measure the level and impact of its community engagement and community policing initiatives. | |
| ¶ 35 COMPLIANCE RATING | Not Yet Implemented |
| ¶ 306 The City agrees to provide FPD officers initial and ongoing annual in-service training on community and problem-solving policing, critical thinking, and communication skills, for all current and new FPD sworn employees. This training will include:<br>a. Methods and strategies to improve public safety and prevent crime through problem-solving techniques;<br>b. Effective communications skills, including how to recognize and overcome communication obstacles (such training may include Tact, Tactics, and Trust (or "T3" training));<br>c. Critical thinking, leadership, ethics, social intelligence, and interpersonal skills, such as the "Blue Courage" training;<br>d. Community engagement techniques, including how to establish formal partnerships and actively engage community organizations and diverse groups within the community to form positive relationships;<br>e. Policing in accordance with the concepts of procedural justice, fairness, and legitimacy;<br>f. How to promote and facilitate use of FPD's Community Mediation Program; and | |

| | |
|---|---|
| g.   Conflict resolution and verbal de-escalation of conflict. | |
| ¶ 306 COMPLIANCE RATING | Not Yet Implemented |

### B.    REFORM OF THE FERGUSON MUNICIPAL CODE (§ IV)

The City has successfully repealed or amended the specific Municipal Code provisions outlined in the Consent Decree and is collaborating with the DOJ to develop and implement a plan to annually reassess and revise the Municipal Code where appropriate.  Consent Decree ¶ 40.

| CONSENT DECREE PROVISION | COMPLIANCE RATING |
|---|---|
| ¶ 37 The City has repealed Code Section 13-58 ("Failure to Appear Upon Arrest or Summons"); Section 13-60 (authorizing a fee for "Withdrawal of Complaint"); Section 1-16 (providing that individuals who fail to pay a fine or costs imposed for a municipal violation shall be imprisoned one day for every ten dollars of any such unpaid fine); and Section 1-17 (which pertained to imprisonment for failure to pay fine or cost of prosecution to include work). The City agrees that these provisions of the Ferguson Municipal Code will remain repealed and will not be replaced with any similar ordinance. | |
| ¶ 37 COMPLIANCE RATING | Substantial Compliance |
| ¶ 38 The City has prepared amendments, attached to this Agreement (see Attachment A), to the following sections of the Municipal Code. To the extent that the City has not yet adopted such amendments as of the Effective Date of the Agreement, the City agrees to do so within 30 days of the Effective Date.<br><br>a.   Sections 13-26, 13-52, 13-61, 13-63, 13-68, and 13-70(2) and (3), regarding the administration of the Ferguson Municipal Court;<br>b.   Sections 29-16, the "Failure to Comply with Order of Police Officer" ordinance;<br>c.   Sections 1-15 and 44-15 regarding available penalties;<br>d.   Section 7-145.1, "Occupancy Permit;"<br>e.   Section 44-339, "Use of Right Half of Crosswalks," Section 44-341, "Crossing at Right Angles," and Section 44-344, "Manner of Walking Along Roadway," each of which will be repealed. | |
| ¶ 38 COMPLIANCE RATING | Substantial Compliance |
| ¶ 39 The City agrees to make any additional revisions to the Code necessary to enable the City to comply with this Agreement and the law. Where the Parties do not agree whether a revision is required, the Parties may seek resolution by the Court. | |
| ¶ 39 COMPLIANCE RATING | Not Yet Implemented |
| ¶ 40 Within 120 days of the Effective Date, the City agrees to develop and implement a plan for the comprehensive reassessment and revision of remaining Code provisions in order to ensure that they are consistent with the United States Constitution and other laws and provide clear and appropriate guidance to the public and law enforcement officers. The reassessment and revision process will also be aimed at ensuring that the Code is designed and enforced in a manner that is focused on protecting public health, safety, and welfare. To help ensure that the Code's design and enforcement are not unnecessarily burdensome on members of the Ferguson community and furthers public health, safety, and welfare, the City will conduct outreach meetings, including holding and attending meetings in locations throughout Ferguson, to hear the views of persons within the community, and will consider and incorporate these views into its code revisions where appropriate. | |
| ¶ 40 COMPLIANCE RATING | Not Yet Implemented |

### C.    POLICIES AND TRAINING (§ V)

The City has committed significant time and resources to streamlining its processes for implementing and managing policies and to developing the curriculum for numerous training

programs.  Consent Decree ¶¶ 41-42, 48.  The City is currently establishing a database of all Consent Decree-related General Orders, indexed by date to ensure they are either incorporated in the annual review process or reviewed separately.  Consent Decree ¶ 45.  Additionally, while FPD has historically maintained a hard copy of its policy manual at the police department for employees and the public, the City is updating its information-technology systems to ensure that a complete set of those policies and procedures is made available electronically.  Consent Decree ¶ 46.  While the City does regularly monitor changes in relevant case law and statutes that are communicated to line officers at roll call via the Police Chief and his supervisory staff, the City has yet to formalize that process to ensure continued implementation if there are changes to key personnel.  Consent Decree ¶ 47.

Most significantly, the City has established a Training Committee, hired and retained a dedicated Training Coordinator, and empowered each to work in tandem to develop programs to supplement and enrich FPD's robust training program.  Spearheaded by Ms. Stephens, the Training Coordinator, the City has completed a Training Plan outlining the content and delivery of trainings on a variety of topics.  Consent Decree ¶ 50.  Recently, Ms. Stephens and the Training Committee dedicated significant time and effort to the development of the Police Training Officer (PTO) program.  The program's curriculum, consisting of 14 modules, was approved for delivery by DOJ and the Monitoring Team at the close of this reporting period.  Consent Decree ¶¶ 58-62.  The City has demonstrated its commitment to facilitating high quality training and continues to prioritize compliance with provisions in this subject area.

| CONSENT DECREE PROVISION | COMPLIANCE RATING |
|---|---|
| ¶ 41 To ensure that officers have the knowledge, skills, and direction necessary to police constitutionally, effectively, and in a manner that promotes both officer and public safety, the City agrees to continue to enhance its policies and increase the quality and scope of training provided to FPD officers and other FPD employees. As set forth in this section, the City agrees to develop systems for policy and training development and delivery that will generate policies and training that are current, responsive to identified needs, and effective. The City agrees to implement policies that reflect its commitment to community policing, procedural justice, and bias-free policing, and to support these directives through effective training for recruits, as well as for new and experienced officers, that reflects these same principles. Substantive training requirements for in-service and supplemental basic training are set out in Section XVII below. | |

| ¶ 41 COMPLIANCE RATING | Partial Compliance – the City has generated policies and trainings in most subject areas |
|---|---|

¶ 42 The City agrees to incorporate the requirements of this Agreement into FPD and City policies and procedures as appropriate. These policies and procedures will fully incorporate the terms of this Agreement, be consistent with best practices, and comply with applicable law. The City agrees that its policies and procedures will be plainly written, logically organized, and use terms that are clearly defined. Unless otherwise noted, the City will seek to develop and implement all policies and procedures required by this Agreement within one year of the Effective Date, and will ensure the development and implementation of all such policies and procedures within two years of the Effective Date.

| ¶ 42 COMPLIANCE RATING | Partial Compliance – the City has generated policies in most subject areas |
|---|---|

¶ 43 The City agrees to ensure that officers from all varying ranks and units have a meaningful opportunity to review and comment on new or revised policies and procedures.

| ¶ 43 COMPLIANCE RATING | Substantial Compliance |
|---|---|

¶ 44 The City agrees to submit all policies, procedures, protocols, plans and other administrative orders or directives related to this Agreement, as well as any proposed revision to such materials, to the Monitor and DOJ for review and approval prior to publication and implementation. Approval by the Monitor and DOJ will be based upon consistency with this Agreement, best practices in the relevant area, and applicable law.

| ¶ 44 COMPLIANCE RATING | Substantial Compliance |
|---|---|

¶ 45 The City agrees to review each policy or procedure within one year of its implementation, and annually thereafter, to ensure that the policy or procedure provides effective direction to FPD personnel and remains consistent with this Agreement, best practices in the relevant area, and current law. The City agrees to review and revise policies and procedures as necessary upon notice of a significant policy deficiency during audits or reviews.

| ¶ 45 COMPLIANCE RATING | Not Yet Implemented |
|---|---|

¶ 46 The City agrees to maintain a complete, up-to-date manual of all FPD policies and procedures that is organized and maintained in a manner that makes it easily accessible and clear to officers, employees, and others. Officers and employees will have access to the manual in hard copy form, and in a readily usable electronic format (e.g., through an FPD intranet system accessible within the mobile data computers of FPD officers). Revisions and updates to FPD policies and procedures will be incorporated into the manual.

| ¶ 46 COMPLIANCE RATING | Partial Compliance |
|---|---|

¶ 47 The City agrees to ensure that changes in relevant case law and statutes are disseminated to relevant FPD personnel in a timely manner and incorporated, as appropriate, into FPD policies, procedures, and training.

| ¶ 47 COMPLIANCE RATING | Partial Compliance |
|---|---|

¶ 48 Unless otherwise noted, the training required under this Agreement, as set out in this section and in Section XVII, and training on all policies revised or developed pursuant to this Agreement, will begin within 90 days of the Effective Date and be fully delivered within two years of the Effective Date. The parties acknowledge that FPD has already undertaken training on certain topics described in this Section and in Section XVII.

| ¶ 48 COMPLIANCE RATING | Partial Compliance – the City has trained on all completed policies |
|---|---|

¶ 49 Within 180 days of the Effective Date, FPD agrees to establish a Training Committee that will include representatives from FPD and the Neighborhood Policing Steering Committee. The Training Committee may consult with additional training and subject matter experts as the Training Committee deems necessary.

| ¶ 49 COMPLIANCE RATING | Substantial Compliance |
|---|---|

¶ 50 Within 180 days of the Effective Date, FPD, in coordination with the Training Committee, will develop a schedule, to be approved by the Monitor and DOJ, for delivering all training specifically required by the provisions of this Agreement.

| ¶ 50 COMPLIANCE RATING | Substantial Compliance |
|---|---|

¶ 51 Within one year of the Effective Date, the Training Committee will develop a written Training Plan for supplementing FPD recruits' academy training; enhancing FPD's field training with a revised Police Training Officer program; and implementing comprehensive in-

service training for officers and other City and FPD employees. The Training Plan will be developed in consultation with the Monitor and the City's retained expert and must be approved by DOJ. The Training Plan will:

a.  Identify training priorities, principles, and broad goals consistent with this Agreement and the substantive training requirements set out in Section XVII below;
b.  Include a plan for delivering supplemental basic training and in-service training, as necessary to provide the relevant training required by this Agreement;
c.  Coordinate the topics of supplemental basic training and in-service training with Police Training Officer training;
d.  Establish the frequency and subject areas for supplemental basic and in-service training;
e.  Develop a plan for at least 50 hours of annual in-service training each year, with approximately 65 hours of annual in-service training for each of the first two years of the Agreement;
f.  Identify available training delivery and related resources, as well as unmet needs, such as instructors, curricula, and equipment;
g.  Coordinate with City and others to assist in obtaining necessary training resources; and
h.  Establish a rubric for assessing the content and delivery of training, including training provided by outside instructors or non-FPD entities. This rubric will allow for the measurement and documentation of student reaction to, and satisfaction with, the training they received, and student learning as a result of training, including the extent to which students are applying the knowledge and skills acquired in training to their jobs.

| ¶ 51 COMPLIANCE RATING | Partial Compliance – initial Training Plan developed in 2024 but annual review has yet to occur |
|---|---|

¶ 52 The Training Committee, pursuant to the Training Plan and in consultation with FPD's training coordinator, the Monitor, and DOJ, will review all training curricula and lesson plans for consistency, quality, and compliance with applicable law, FPD policy, and this Agreement. The Training Committee will ensure that a variety of adult learning techniques, scenario-based training, and problem-solving practices, in addition to traditional lecture formats, are incorporated into training delivery. The Training Committee will advise the Parties regarding training that can be delivered in roll-call or online, as opposed to training that will require more intensive delivery. The Training Committee will also assess instructor qualifications and testing materials.

| ¶ 52 COMPLIANCE RATING | Partial Compliance |
|---|---|

¶ 53 Within 18 months of the Effective Date, in consultation with the Training Committee, FPD will develop or adopt supplemental basic training and in-service training curricula and lesson plans for the training required pursuant to this Agreement. All training required by this Agreement that is conducted by an outside instructor or non-FPD entity will be reviewed and approved by the Monitor and DOJ prior to delivery.

| ¶ 53 COMPLIANCE RATING | Partial Compliance – training in some areas has been developed |
|---|---|

¶ 54 With the assistance of the Training Committee, FPD will ensure that instructors are qualified, and that all instructors, curricula, and lesson plans have been approved by the Training Committee, the Monitor, and DOJ. With the assistance of the Training Committee, FPD will actively seek out and retain qualified instructors from outside FPD to supplement the skills of its in-house training staff and adjunct instructors. As appropriate, FPD will incorporate experts and guest speakers, including judges, prosecutors, crime victims, criminal justice professors, community resource providers, and community members, including youth, to participate in relevant courses.

| ¶ 54 COMPLIANCE RATING | Partial Compliance |
|---|---|

¶ 55 The Training Committee will review and update FPD's Training Plan every 18 months. To inform these updates, the Training Committee will conduct a needs assessment, taking into consideration: effectiveness of past training, as measured by the rubric described above; trends in misconduct complaints; any problematic uses of force; analysis of officer safety issues; input from members at all levels of FPD; input from members of the community, including community concerns; court decisions; research reflecting the latest in law enforcement trends; and any changes to Missouri or federal law, or FPD policy. The Training Committee will also assess FPD's Police Training Officer program on an annual basis, as set out in Section V.B.5 below.

| ¶ 55 COMPLIANCE RATING | Not Yet Implemented |
|---|---|

¶ 56 FPD agrees to designate a Training Coordinator to oversee implementation of all training; provide administrative assistance to the Training Committee; track training delivery; and ensure that training is delivered consistently with FPD's Training Plan and the terms of this Agreement. The Training Coordinator will also be responsible for ensuring the measurement and documentation of training effectiveness, using the rubric designed by the Training Committee, described above.

| ¶ 56 COMPLIANCE RATING | Substantial Compliance |
|---|---|

¶ 57 The Training Coordinator shall ensure that all officers complete training as required and that documentation of training is maintained. FPD will accurately document all training provided to, or received by, FPD officers (whether required or otherwise) in a manner that

allows analysis by training type, training date, training source, and by individual officer name. FPD will facilitate and encourage officer training by allowing for sufficient overtime and time off, as necessary. FPD will develop and implement measures, including disciplinary and non-disciplinary corrective action, to ensure that all officers successfully complete all required training programs as scheduled by FPD.

| ¶ 57 COMPLIANCE RATING | Implementation Ongoing |
|---|---|

¶ 58 Within two years of the Effective Date, FPD will redevelop its field training program for new recruits into a Police Training Officer (PTO) program that is consistent with FPD's Training Plan and this Agreement. The PTO program will incorporate established standards for police training officer programs, such as employing contemporary methods of adult education and problem-based learning methods.

| ¶ 58 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Training – Substantial Compliance<br><br>Implementation Ongoing |
|---|---|

¶ 59 Within one year of the Effective Date, FPD will develop and implement a participation policy that ensures only highly qualified officers serve as Police Training Officers. FPD agrees to develop eligibility criteria and methodology to select PTOs based on their written applications, performance evaluations, previous performance as police officers, and complaint and disciplinary histories.

| ¶ 59 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Implementation Ongoing |
|---|---|

¶ 60 FPD agrees to ensure that all PTOs receive a minimum of 40 hours of initial training, as well as necessary refresher training, consistent with the training plan, after one year of participation in the program. This training will be adequate in quality, quantity, scope, and type, and will address management and supervision; community-oriented policing; effective problem-solving techniques; and field communication. PTOs will be required to maintain, and demonstrate on a regular basis, their proficiency in managing recruits and subordinates, practicing and teaching community-oriented policing, and solving problems effectively. FPD will maintain current documentation of PTOs' evaluations and training and remove PTOs or add as appropriate and necessary.

| ¶ 60 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Implementation Ongoing |
|---|---|

¶ 61 Within one year of the Effective Date, FPD will create a mechanism for recruits and lateral hires to provide confidential feedback regarding the quality of their PTO training, including the extent to which that training was consistent with what they learned in the academy or prior experience, and suggestions for changes to FPD's training programs. FPD will document its response, including the rationale behind any responsive action taken or decision to take no action.

| ¶ 61 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Implementation Ongoing |
|---|---|

¶ 62 FPD's Training Committee will, on an annual basis, assess FPD's PTO program and consider emerging national policing practices in this area, and make recommendations for modifications to the City as appropriate. The City will institute appropriate changes to policies, procedures, and training related to FPD's PTO program.

| ¶ 62 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Implementation Ongoing |
|---|---|

¶ 63 FPD agrees to ensure that: (a) new police recruit hires will have graduated from a police academy requiring at least 900 hours of basic training for graduation; or (b) for recruits who did not graduate from such an academy, FPD will develop a plan for providing supplemental individualized training to such FPD recruits, to ensure that such recruits have at least 900 hours of basic training which include the supplemental basic training content described in Section XVII. FPD further agrees to develop individualized training plans for lateral police hires for providing supplemental training as necessary to ensure that the lateral police hire, through a combination of academy training, subsequent in-service training, and the supplemental training provided by FPD, has training that is substantively equivalent to a 900-hour training academy and the training requirements of this Agreement.

| ¶ 63 COMPLIANCE RATING | Not Yet Assessed |
|---|---|

### D.     BIAS-FREE POLICE & COURT PRACTICES (§ VI)

The Ferguson Municipal Code now expressly prohibits unlawful discrimination, and the City continues to work diligently to ensure that police and municipal court services as well as <u>all other</u> City programs and activities are administered in a non-discriminatory manner. Consent Decree ¶ 65. FPD has created and adopted policies reflecting the City's commitment and has also facilitated numerous trainings in this subject area, but additional training and assessment is required in some areas. For instance, the City has yet to revise its policies, training, and supervisory direction related to officer responses to allegations of domestic violence and sexual assault. Consent Decree ¶ 68. Similarly, while FPD and the FMC have developed policies for provision of services to people with limited-English proficiency (LEP individuals), training on those policies remains undeveloped. Consent Decree ¶ 67.

The City and police department have, on an ongoing and annual basis, collected and analyzed racial profiling data for the purposes of internal review and reporting to the state of Missouri, and are also investigating additional avenues for obtaining relevant data to conduct the assessments required by Consent Decree ¶ 70.

| CONSENT DECREE PROVISION | COMPLIANCE RATING |
|---|---|
| ¶ 65 The City has prohibited unlawful discrimination as provided in Chapter 21 of the Ferguson Municipal Code. The City will administer all programs, initiatives, activities and police services without unlawful discrimination on the basis of race, color, ethnicity, national origin, religion, gender, gender identity, sexual orientation, age, immigrant status, disability, housing status, occupation, or limited English proficiency. | |
| ¶ 65 COMPLIANCE RATING | Partial compliance – provision has been incorporated into the Municipal Code and applicable policies.<br><br>Implementation Ongoing |
| ¶ 66 The City agrees to provide clear policy, training, and supervisory direction on prohibited conduct, including selective enforcement activities or decisions, or non-enforcement of the law, and the selection or rejection of particular tactics and strategies based upon stereotypes or bias. If necessary, the City will retain consultants in developing this policy, training, and supervisory direction, and such consultants shall possess the requisite expertise and be approved by DOJ. The City's policies, training and supervisory direction shall take into account the influences of implicit bias, stereotype threat, and gender bias on officer enforcement decisions, use of force, and other police and court activity. | |
| ¶ 66 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Training – Partial Compliance<br><br>Implementation – Partial Compliance |

| | |
|---|---|
| ¶ 67 The City agrees that all FPD police and court employees will provide timely and meaningful access to police and court services to all, including individuals who have a limited ability to speak, read, write, or understand English (LEP individuals). The City will develop and implement, in consultation with the Monitor and with approval by DOJ, the policies and training necessary to ensure timely and meaningful police services to LEP individuals. | |
| ¶ 67 COMPLIANCE RATING | Policy Development – In Progress<br><br>Training – Not Yet Implemented<br><br>Implementation – Not Yet Implemented |
| ¶ 68 The City agrees to revise policy, training and supervisory direction related to officer response to allegations of domestic violence and sexual assault, which are largely crimes against women, to ensure that the law enforcement response is both effective and not undermined by gender bias. | |
| ¶ 68 COMPLIANCE RATING | Not Yet Implemented |
| ¶ 69 The City agrees to consider any indicia of unlawfully discriminatory policing or other bias by officers or officer candidates in evaluating officer performance and making hiring and promotion decisions. This includes giving significant weight to an individual's history of sustained bias-related violations, including sexual harassment or discrimination against City employees or members of the public. | |
| ¶ 69 COMPLIANCE RATING | Partial compliance – City has incorporated consideration of discriminatory policing practices in assessing candidates for various assignments. Others in development. |
| ¶ 70 The City agrees to assess, and if necessary, improve upon the accuracy and reliability of, FPD's current processes for collecting and analyzing state-mandated "racial profiling" data. The City will develop protocols for collecting and analyzing such data, which will set forth additional data to be collected and analyzed and improve the accuracy and reliability of data collection methods. Such protocols will be consistent with the data collection requirements of Section XXI of this Agreement. | |
| ¶ 70 COMPLIANCE RATING | Implementation Ongoing. Not yet assessed. |
| ¶ 71 The City agrees that, if at any point it identifies indicia of unlawfully discriminatory conduct, it will take immediate corrective action as necessary to ensure that the program, initiative, activity, or service in question is not further applied or administered in a manner that unlawfully discriminates against individuals on the basis of protected characteristics. | |
| ¶ 71 COMPLIANCE RATING | Not Yet Implemented |
| ¶ 72 The City and FPD will develop cost-feasible protocols for regularly, and at least annually, conducting data-based assessments of the impact of all police and court programs, initiatives, activities, and services to determine whether they impose a disparate impact on the basis of protected characteristics. These ongoing disparate impact assessments will be consistent with the data collection requirements of Section XXI of this Agreement, and subject to the approval of DOJ. Such assessments will include regression analyses that will control for factors other than protected characteristics. Examples of regression analyses that will be conducted are set forth in Section XXII.C of the Agreement as outcome measures. | |
| ¶ 72 COMPLIANCE RATING | Not Yet Implemented |
| ¶ 73 For the duration of this Agreement, the Monitor will be responsible for conducting the ongoing disparate impact assessments required by this section. The City agrees to work with the Monitor, or work with third parties with expertise in relevant data collection and analysis, during the duration of this Agreement to develop the capacity to conduct these assessments so that it can continue the performance of such assessments following termination of this Agreement. | |
| ¶ 73 COMPLIANCE RATING | Not Yet Implemented |
| ¶ 74 Within one year of the Effective Date, the City will develop protocols for correcting any identified disparate impact in any FPD program, initiative, activity, or police or court service. Such protocols will require that, if any disparate impact on the basis of a protected characteristic is identified, the City will determine whether there are appropriate modifications or alternatives to the program, initiative, activity, or service that would have less of a disparate impact. If appropriate modifications or alternatives are available, the City will implement them within a reasonable time. | |
| ¶ 74 COMPLIANCE RATING | Not Yet Implemented |

**E.    VOLUNTARY CONTACTS, STOPS, SEARCHES, CITATIONS, AND ARRESTS (§ VII)**

The City has incorporated 21 of the required 35 provisions of this section into policy and delivered roll-call training in each of the accompanying policy areas.  Consent Decree ¶¶ 77-89, 95, 101-108.  At least eight of the remaining provisions are in policy development and FPD is working diligently to submit those policies for approval from the DOJ and the Monitoring Team.  Sometime this fall, the Monitoring Team anticipates initiating compliance audits to assess whether the provisions are being successfully implemented.

| CONSENT DECREE PROVISION | COMPLIANCE RATING |
|---|---|
| ¶ 75 The City agrees to ensure that all FPD voluntary encounters, investigatory stops and detentions, searches, citations, and arrests are conducted in accordance with the rights, privileges, and immunities secured or protected by the Constitution and the laws of the United States. FPD will ensure that these police activities are part of an effective overall crime prevention strategy; are consistent with community priorities for enforcement; build trust between FPD and the community; and are adequately documented for tracking and supervision purposes. | |
| ¶ 75 COMPLIANCE RATING | Implementation – Not Yet Assessed |
| ¶ 76 With respect to the subsections below, the City agrees to ensure that FPD officers adhere to the following principles:<br><br>a.  No City or FPD employee will recommend, develop, or implement any law enforcement program, strategy, tactic, or action in order to generate revenue. Any revenue generated by law enforcement actions will be incidental to the public safety purpose;<br>b.  FPD officers will not use race, color, ethnicity, national origin, religion, gender, sexual orientation, disability, or other protected characteristics as a factor, to any extent or degree, in investigating, searching, or restraining the liberty of any person, except as part of an actual and credible description of a specific suspect in an ongoing criminal investigation;<br>c.  FPD officers will not initiate an encounter with any person or stop any person, or attempt to do so, for the purpose of checking for warrants even where there is an alternative pretext for the stop, unless the officer knows the person's identity and that the person has outstanding warrants for his/her arrest, prior to the encounter;<br>d.  FPD officers will not use "canned," boilerplate, or conclusory language in any reports documenting investigatory stops or detentions. Articulation of reasonable suspicion, probable cause, or any other applicable legal standard will be specific, clear, and based on objective facts particular to the stopped, detained, or arrested person; and<br>e.  FPD officers will not use or rely on information known to be materially false or incorrect in conducting or justifying any police activity. | |
| ¶ 76 COMPLIANCE RATING | Implementation – Not Yet Assessed |
| ¶ 77 FPD will recognize two distinct classes of voluntary contacts: social contacts, which are non-investigative conversations, and non-custodial interviews, in which the officer seeks to investigate the person he or she questions. Officers will be encouraged to engage in social contacts to develop relationships and implement FPD's commitment to community-oriented policing. Officers conducting or attempting to conduct non-custodial interviews will:<br><br>a.  Introduce themselves by name and rank as soon as reasonable and practicable;<br>b.  Notify the person(s) encountered that they are free to leave and do not have to answer any questions;<br>c.  Inform the subject that the encounter is being recorded; and<br>d.  Refrain from using words or actions that would tend to communicate that the person(s) are not free to leave or must answer questions. | |
| ¶ 77 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |

| | |
|---|---|
| ¶ 78 FPD will ensure that officers engaged in, or attempting to engage in, a social contact or non-custodial interview do not use a person's failure to stop, failure to answer questions, decision to end the encounter, or departure to justify an investigatory stop or detention, search, citation, or arrest of the person. | |
| ¶ 78 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 79 FPD will ensure that officers conduct investigatory stops or detentions only when they have reasonable suspicion that a person has been, is, or is about to be engaged in the commission of an offense. | |
| ¶ 79 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 80 FPD officers will not conduct pretextual stops except where the actual reason for the stop is to investigate a felony. | |
| ¶ 80 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 81 FPD will ensure that, upon initiating an investigatory stop or detention, officers:<br><br>a. Introduce themselves by name and rank as soon as reasonable and practicable. It will be FPD practice to also provide the stopped individual an FPD business card at the end of a stop;<br>b. Immediately notify the person(s) encountered that they are not free to leave, and, if the officer intends to ask questions, that they do not have to answer any questions;<br>c. State the reason for the investigatory stop or detention as soon as reasonable and practicable;<br>d. Inform the subject that the encounter is being recorded;<br>e. Ensure that the stop or detention is no longer than necessary to take appropriate action; and<br>f. Act with professionalism and courtesy throughout the interaction. | |
| ¶ 81 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 82 FPD will ensure that officers do not further limit a person's freedom during an investigatory stop or detention in any of the following ways unless the officer has an articulable basis (including but not limited to officer safety) to justify the action:<br><br>a. Taking a subject's identification or driver's license away from the immediate vicinity;<br>b. Ordering a motorist to exit a vehicle;<br>c. Placing a pedestrian against a wall;<br>d. Directing a person to stand or remain standing, or to sit on a patrol car bumper or any other place not of his or her choosing;<br>e. Directing a person to lie on the ground;<br>f. Applying handcuffs;<br>g. Transporting a person any distance away from the scene of the initial stop, including for the purpose of witness identification;<br>h. Placing a person into a police vehicle;<br>i. Frisking (see paragraph 83 below); or<br>j. Unholstering or pointing a weapon. | |
| ¶ 82 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |

| | |
|---|---|
| ¶ 83 In order to frisk, or pat down, any person, that person must first be lawfully stopped or detained pursuant to reasonable suspicion. In addition, the officer must have reasonable grounds to suspect the person is armed and dangerous, and the frisk must be reasonably designed to discover weapons or instruments that could be used to assault the officer. | |
| ¶ 83 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 84 FPD will ensure that officers do not conduct any other search, of person or property, without: (a) probable cause, meaning that the objective facts available to the officer would warrant a person of reasonable caution in believing there is a fair probability that contraband or evidence of an offense is present in the place to be searched; and (b) a warrant or an exception to the warrant requirement, including but not limited to a search incident to arrest or exigent circumstances. | |
| ¶ 84 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 85 FPD will prohibit officers from seeking consent to search unless the officer has a reasonable and articulable suspicion that the search will reveal evidence of an offense, or the officer has legal authority for the search that is independent of consent. Officers will document in writing the basis for this suspicion or other legal authority. | |
| ¶ 85 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 86 FPD officers seeking consent for a search will affirmatively inform the subject of the right to refuse and to revoke consent at any time. The officer will record this notification and the subject's affirmative statement of consent or denial of consent on his or her body-worn camera, except where exigent circumstances preclude such recording, in which case the officer will be required to obtain written consent on a form that notifies the individual of those rights. | |
| ¶ 86 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 87 Any affidavit or sworn declaration supporting an application for a search warrant will provide an accurate, complete, and clear description of the offense, the place or thing to be searched, the scope of the search, and the time and method of the search. | |
| ¶ 87 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 88 Administrative searches for building and housing code purposes by non-FPD officers, e.g., by building code inspectors or code enforcement officers, will be handled differently than the FPD searches covered by this section. The City agrees to develop and implement protocols for interaction between FPD officers and those performing administrative searches, including criteria for, and documentation of, FPD accompaniment of these officials during housing searches. | |
| ¶ 88 COMPLIANCE RATING | Not Yet Assessed |
| ¶ 89 FPD will maintain centrally a log listing each search warrant, the case file where a copy of such warrant is maintained, the officer who applied for the search warrant, and each supervisor who reviewed the application for the search warrant. | |
| ¶ 89 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance |

| | Implementation – Not Yet Assessed |
|---|---|
| ¶ 90 FPD will ensure that officers issue a citation or make a custodial arrest only when they have probable cause to believe a person has committed or is committing an offense. | |
| ¶ 90 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |
| ¶ 91 The City will not use citation or arrest quotas, whether formal or informal, of any kind. | |
| ¶ 91 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |
| ¶ 92 FPD will ensure that FPD officers obtain verbal supervisory approval, which shall be documented as soon as practicable:<br><br>a.  Before issuing three or more citations to any person in any single encounter, or more than one citation for the same act;<br>b.  Before issuing citations for any of the following offenses: any housing or zoning code violation, including any occupancy or maintenance violation; failure to comply/obey; disorderly conduct; peace disturbance; manner of walking in roadway; resisting arrest; and obstruction of government operations/interfering with an officer;<br>c.  Before transport of any arrested person on a charge of failure to comply/obey or resisting arrest; and<br>d.  Of every other arrest as soon as reasonably practicable after the person is presented at FPD headquarters. | |
| ¶ 92 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |
| ¶ 93 FPD will ensure that officers do not arrest any person for any code offense except: traffic offenses involving alcohol or drugs; offenses involving property damage or injury to others; animal neglect or cruelty; where the objective evidence indicates that, absent arrest, the person's unlawful conduct will continue; where a valid citation cannot be issued because the person refused to identify himself or herself to the officer; or if the person is considered a danger to any person or property. | |
| ¶ 93 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |
| ¶ 94 Within 180 days of the Effective Date, FPD will develop and implement a plan for correctable violations for FPD to address vehicular equipment violations, traffic violations involving the failure to provide proof of driver's license, any housing, zoning, or animal licensing violations (including occupancy and maintenance violations) enforced by FPD, and additional violations as the City deems appropriate. This plan will provide for individuals to provide proof of the correction of a violation within a reasonable period of time in lieu of a citation. | |
| ¶ 94 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |
| ¶ 95 FPD will ensure that officers complete accurate reports for all activities that warrant a report, including all arrests, before the end of their shift absent extenuating circumstances approved by a supervisor. | |
| ¶ 95 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |

| | |
|---|---|
| ¶ 96 The City has already eliminated some "stop orders" or "wanteds" issued by FPD and agrees to eliminate all "stop orders" or "wanteds" issued by FPD within 180 days of the Effective Date. | |
| ¶ 96 COMPLIANCE RATING | Substantial Compliance |
| ¶ 97 The City agrees to implement a one-year moratorium on issuing new "stop orders" or "wanteds," and on stopping, detaining, searching, citing, or arresting any person or vehicle on the basis of a "stop order" or "wanted." The sole exception to this moratorium will be where: a) there is, both when the "stop order" or "wanted" is issued and enforced, verified and current probable cause of a state violation; b) the St. Louis County Prosecutor's Office has refused the City's request to seek a warrant related to the violation on a basis other than a lack of probable cause; and c) the "stop order" or "wanted," both when issued and enforced, comports with FPD policy and is approved by the FPD Chief of Police. | |
| ¶ 97 COMPLIANCE RATING | Substantial Compliance |
| ¶ 98 During this moratorium, the City will continue to use "be on the lookout" or "all-points" bulletins, and warrants, consistent with generally accepted police practice nationwide, and evaluate alternatives to the use of "stop orders" or "wanteds." DOJ and the Monitor shall assist the City in identifying and evaluating alternative systems that improve officer and public safety and fully comport with constitutional and other legal requirements. Upon completion of the evaluation, the City shall implement the selected alternative, as approved by the Monitor and DOJ. Should the City determine after evaluation that it wishes to reinstate the "stop order" or "wanted" system and DOJ objects, the court shall resolve the matter. Under no circumstances shall the wanted/stop order system be reinstated without significant modifications to policies, use, and training to ensure that the system better protects officer and public safety, and comports with the Constitution and other legal requirements. | |
| ¶ 98 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – In Development<br><br>Not Yet Implemented |
| ¶ 99 Supervisors evaluating a request for approval to issue a citation, as set out in paragraph 92, will consider the legality of the citation, whether issuing the citation is required by public safety and would be consistent with community-oriented policing and the policing goals established by the City and the community, and whether the citation is unfairly duplicative, excessive, or retaliatory. | |
| ¶ 99 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 100 FPD will develop a protocol for checking all arrestees for signs of injury, including any complaint by the arrestee, when the arrestee arrives at FPD headquarters, and ensuring appropriate medical treatment. | |
| ¶ 100 COMPLIANCE RATING | Policy Development – Ongoing<br><br>Roll Call Training – Not Yet Developed<br><br>Not Yet Implemented |
| ¶ 101 FPD field supervisors will review each arrest report of officers under their command and will memorialize their review in writing by the end of the shift within which the arrest occurs, absent exceptional circumstances. | |
| ¶ 101 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 102 Supervisors will review each request for a search or arrest warrant, including each affidavit or declaration before it is filed by an officer in support of a warrant application, for appropriateness, legality, and conformance with FPD policy and this Agreement. | |
| ¶ 102 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance |

| | Implementation – Not Yet Assessed |
|---|---|
| ¶ 103 Supervisors will review the operational plan for the execution of a search warrant, and, absent exceptional circumstances, supervisors will be present for the execution of the search warrant. A supervisor will document in the case file the exceptional circumstances preventing his or her presence. Once executed, a supervisor will review the execution of the search warrant. Supervisors will memorialize their reviews in writing within 24 hours of the execution of a search warrant. | |
| ¶ 103 COMPLIANCE RATING | Policy Development – Substantial Compliance <br><br> Roll Call Training – Substantial Compliance <br><br> Implementation – Not Yet Assessed |
| ¶ 104 Supervisors will assess warrant applications, citation and arrest reports, and all supporting documents for: accuracy and authenticity; "canned," boilerplate, or conclusory language; inconsistent information; and inadequate articulation of a legal basis for the police action taken. | |
| ¶ 104 COMPLIANCE RATING | Policy Development – Substantial Compliance <br><br> Roll Call Training – Substantial Compliance <br><br> Implementation – Not Yet Assessed |
| ¶ 105 Supervisors will regularly audit their assigned officers' stop, search, citation, and arrest documentation for completeness, accuracy, legal sufficiency, and compliance with FPD policy and this Agreement. Supervisors will audit at least one CAD log for each officer under their supervision each week. Sergeants will conduct further review as shown to be necessary by weekly audits, data in FPD's records management system, and other indicia. | |
| ¶ 105 COMPLIANCE RATING | Policy Development – Substantial Compliance <br><br> Roll Call Training – Substantial Compliance <br><br> Implementation – Not Yet Assessed |
| ¶ 106 Each supervisor will document those stops or detentions, searches, warrant applications, citations, and arrests that are legally unsupported, are in violation of FPD policy or this Agreement, or that indicate a need for corrective action or review of agency policy, strategy, tactics, or training. The supervisor will take appropriate action to address violations or deficiencies, including recommending non-disciplinary corrective action for the involved officer(s), and/or referring the incident for administrative or criminal investigation. | |
| ¶ 106 COMPLIANCE RATING | Policy Development – Substantial Compliance <br><br> Roll Call Training – Substantial Compliance <br><br> Implementation – Not Yet Assessed |
| ¶ 107 For each subordinate, the supervisor will track each violation or deficiency and the corrective action taken, to identify officers needing repeated corrective action. | |
| ¶ 107 COMPLIANCE RATING | Policy Development – Substantial Compliance <br><br> Roll Call Training – Substantial Compliance <br><br> Implementation – Not Yet Assessed |
| ¶ 108 A command-level official will review, in writing, all supervisory reviews related to stops or detentions, searches, warrant applications, citations, and arrests that the supervisor has determined to be unsupported by proper legal justification, in violation of FPD policy or this Agreement, or indicative of a need for corrective action or review of agency policy, strategy, tactics, or training. The commander's review will be completed within seven days of receiving the document reporting the event in question. The commander will evaluate the corrective action and recommendations in the supervisor's written report and ensure that all appropriate corrective action is taken, including referring the incident for an internal or criminal investigation, if warranted. | |
| ¶ 108 COMPLIANCE RATING | Policy Development – Substantial Compliance <br><br> Roll Call Training – Substantial Compliance |

| | Implementation – Not Yet Assessed |
|---|---|
| ¶ 109 Within 180 days of the Effective Date, the City and FPD will develop protocols for regularly, and at least annually, conducting cost-feasible data-driven and qualitative assessments of its voluntary encounter; stop, including pedestrian stop; search; citation; and arrest practices, including breakdowns by the protected characteristics of the subject. These assessments will be designed to ensure these law enforcement actions are being conducted appropriately in accordance with FPD policy and state and federal law. As part of this assessment process, the City and FPD will identify deficiencies and opportunities for improvement; implement appropriate corrective action and improvement measures; and document measures taken. | |
| ¶ 109 COMPLIANCE RATING | Not Yet Implemented |
| ¶ 308 The City agrees to provide officers with initial and ongoing annual in-service training on voluntary encounters, stops/detentions, searches, citations, and arrests, including the requirements of this Agreement. Where appropriate, training will be taught by a competent legal instructor with significance experience with Fourth Amendment issues, and will:<br><br>a.  Address Fourth Amendment and related law, FPD policies, and requirements in this Agreement concerning searches and seizures;<br>b.  Address the differences between various police contacts by the scope and level of police intrusion; differences between probable cause, reasonable suspicion, and mere speculation; and truly voluntary and consensual encounters;<br>c.  Provide guidance on the facts and circumstances, in addition to legal and policy limitations, that should be considered in initiating, conducting, terminating, and expanding a stop or search;<br>d.  Incorporate role playing scenarios and other adult-learning mechanisms to facilitate officer ability to exercise good judgment about whether and how to conduct searches or frisks;<br>e.  Provide guidance on stopping and searching people for discretionary and non-violent offenses, including providing guidance about procedural justice, alternatives to conducting investigatory stops and searches, and the impact on civilians of conducting apparently arbitrary stops and searches; and<br>f.  Provide instruction on how to collect the pedestrian and vehicle stop data required by this Agreement. | |
| ¶ 308 COMPLIANCE RATING | In Progress – Training materials in development |

## F.    FIRST AMENDMENT PROTECTED ACTIVITY (§ VIII)

Along with the DOJ, the City, through its policies and training, has acknowledged the important societal functions that First Amendment protected activities serve. Consent Decree ¶ 110. To that end, FPD's incorporation of this subject area into policy and roll-call training is nearly complete. The lone remaining unincorporated provisions, ¶ 119 and ¶ 122, reflect the Parties' ongoing discussion as to how best to implement the Consent Decree's requirements when FPD enlists the help of neighboring jurisdictions during mass protests. The Monitoring Team anticipates that the Parties will reach an agreement soon. Currently, the Parties are collaborating with the Monitoring Team to design a specific audit methodology for assessing compliance in this area, one tailored to suit FPD's size and workload.

21

| Consent Decree Provision | Compliance Rating |
|---|---|
| ¶ 110 The parties acknowledge that First Amendment protected activities serve important societal functions, including promoting transparency in government affairs, ensuring accountability of public officials, and encouraging community feedback—whether critical or laudatory—that ultimately reduce tension and foster a sense of openness and trust between law enforcement and the public. | |
| ¶ 110 Compliance Rating | Substantial Compliance |
| ¶ 111 FPD will ensure that all FPD personnel respect the First Amendment rights of all persons, including:<br><br>a.   The right to observe and record officers in the public discharge of their duties in all traditionally public spaces, including sidewalks, parks, and locations of lawful public protests, as well as any other areas where individuals otherwise have a legal right to be present, including an individual's home or business and common areas of public and private facilities and buildings;<br>b.   The right to criticize or complain about police conduct without being subject to retaliation; and<br>c.   The right to engage in lawful public protest. | |
| ¶ 111 Compliance Rating | Implementation – Not Yet Assessed |
| ¶ 112 Consistent with the Order by Consent issued in *Mustafa Hussein v. County of Saint Louis, Missouri, et al.*, 4:14-cv-1410-JAR (E.D. Mo., November 21, 2014), FPD will ensure that "its officers, employees, or agents, and those acting on its behalf, shall not enforce or threaten to enforce any rule, policy, or practice that grants law enforcement officers the authority or discretion to arrest, threaten to arrest, or interfere with any individual, including any member of the media or member of the public photographing or recording in public places unless that person is threatening the safety of others or physically interfering with the ability of law enforcement to perform their duties." | |
| ¶ 112 Compliance Rating | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 113 FPD will ensure that FPD policy and training makes clear what conduct is considered "obstruction" or "interference," with specific examples, to ensure that FPD officers do not unreasonably claim that an individual's presence amounts to the offense of obstructing or interfering with a law enforcement officer, or otherwise violates the law. FPD will ensure that where the person's location is causing the obstruction or interference, the officers recommend a less-intrusive location from which the bystander may continue to observe, record, and/or protest and give the individual a reasonable opportunity to comply prior to taking further enforcement action. | |
| ¶ 113 Compliance Rating | Substantial Compliance |
| ¶ 114 Individuals shall be permitted to record officer activity by camera, video recorder, cell phone recorder, or any other means. The use of a recording device during a police encounter shall not in itself be considered a threat to officer safety and thus shall not be a basis to require a person to refrain from recording or to put away his or her recording device, as long as the person recording is in a lawful location, is not threatening the safety of others or the police officers, and is not obstructing or interfering with the officer's lawful duties, and is not otherwise violating the law. Officers may instruct an individual to cease recording and put away the recording device when that individual is being placed under arrest. | |
| ¶ 114 Compliance Rating | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 115 FPD will ensure that officers do not search, seize, or otherwise coerce production of recorded sounds, images, or videos without obtaining a warrant. Where an officer has a reasonable belief that a bystander or witness has captured a recording of critical evidence related to a serious crime and the exigencies of the circumstances demand it, the officer may secure such evidence for no more than 12 hours while a legal subpoena, search warrant, or other valid order is obtained. Upon seizing such property, officers may not search or review its contents without first obtaining a search warrant. | |
| ¶ 115 Compliance Rating | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 116 FPD will ensure that officers do not coerce individuals to consent to the search or seizure of their recording devices or recordings. | |

| ¶ 116 COMPLIANCE RATING | Policy Development – Substantial Compliance |
|---|---|
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |

| ¶ 117 FPD will ensure that officers do not intentionally destroy cameras, other recording devices, sounds, images, or videos, and that they do not order an individual to intentionally destroy the same or otherwise cause such destruction, provided, however, that the City may dispose of material in accord with the record retention and destruction requirements established by state law. |
|---|

| ¶ 117 COMPLIANCE RATING | Policy Development – Substantial Compliance |
|---|---|
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |

| ¶ 118 FPD will ensure that officers do not unlawfully interfere with individuals gathering in groups for public protests and demonstrations in a lawful manner and location. |
|---|

| ¶ 118 COMPLIANCE RATING | Policy Development – Substantial Compliance |
|---|---|
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |

| ¶ 119 FPD will revise current policies and protocols for policing public protests and demonstrations as necessary, in consultation with the Monitor and to be approved by DOJ. These policies and protocols will include:<br><br>a.   Factors officers should consider when exercising their lawful discretion to arrest;<br>b.   Clear guidelines that minimize individually applied discretionary enforcement decisions by officers during public protests;<br>c.   An effective traffic control plan for streets and sidewalks;<br>d.   Plan for public information sharing before, during, and after public demonstrations;<br>e.   Guidelines and limitations on the use of less-lethal force during public demonstrations, including the criteria and circumstances for the use of different types of force, required warnings, and documentation;<br>f.   Plan for clearly communicating to all law enforcement agencies participating in any response to a public demonstration in Ferguson the limitations and requirements for such participation, including limitations and requirements related to force, arrests, and officer uniforms, including officer identification;<br>g.   Centralized complaint intake process for use by individuals to make a complaint regarding an officer of any agency during a multijurisdictional response and referral process to an appropriate agency for adjudication of such complaint; and<br>h.   Officer safety and well-being (see Section XIV of this Agreement). |
|---|

| ¶ 119 COMPLIANCE RATING | Implementation Ongoing |
|---|---|

| ¶ 120 FPD will ensure that officers do not treat protestors differently based on the content of their speech or expression. |
|---|

| ¶ 120 COMPLIANCE RATING | Policy Development – Substantial Compliance |
|---|---|
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |

| ¶ 121 FPD will not use canines for crowd control and will not use law enforcement officers using rifle sights to monitor crowds during protests, and shall request other law enforcement agencies responding within Ferguson to refrain from doing the same. |
|---|

| ¶ 121 COMPLIANCE RATING | Policy Development – Substantial Compliance |
|---|---|
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |

| ¶ 122 FPD will ensure that all law enforcement officers employed by the City of Ferguson during public demonstrations have received appropriate training, including de-escalation techniques, key concepts of the National Incident Management System command and management, including Incident Command Systems, multiagency coordination systems, and policing consistent with the First Amendment. FPD shall request other law enforcement agencies responding within Ferguson to ensure the same. |
|---|

| ¶ 122 COMPLIANCE RATING | Implementation Ongoing |
|---|---|

| ¶ 123 FPD will ensure that officers do not take any police action in retaliation for individuals lawfully exercising their right to witness, observe, record, comment on, or protest police activity. This includes detaining, searching, arresting, issuing a citation, or using force in response to non-criminal statements or other expressive conduct, when the officer would not have taken such action in the absence of the statements or expressive conduct. |
|---|

| ¶ 123 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
|---|---|

| ¶ 124 Only the Chief or the Assistant Chief may declare an assembly to be unlawful. Orders to disperse may be issued, if at all, only following such a declaration, and only by a supervisor. FPD will ensure that officers obtain supervisory approval, to be documented as soon as practicable, before issuing any citations or making arrests related to public protest activity, including violation of any state or local law, such as Mo. Rev. Stat. § 574.060 (refusal to disperse); § 574.040 (unlawful assembly); or ad hoc police rule limiting the time, place, and manner of lawful public assembly, *see Mustafa v. Cnty of St. Louis*, No. 4:14-cv-1436 (E.D. Mo.) (Oct. 6, 2014) (issuing a preliminary injunction against the Missouri Highway Patrol and Saint Louis County with regard to the "keep-moving" policy). |
|---|

| ¶ 124 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
|---|---|

| ¶ 125 FPD will ensure that officers obtain supervisory approval, to be documented as soon as practicable, before taking any action set forth below. In each of these circumstances, if reasonably practical, a supervisor shall respond to the scene and assess the situation in person. At a minimum, supervisors must be present to approve arrests and other actions prior to arrestees being transported to a holding facility, absent exigent circumstances to be documented as soon as practicable.<br><br>a.   Issuing any citation or making any arrest related to the use of a recording device;<br>b.   Issuing any citation or making any arrest of any member of the media, whether formally credentialed or not, including citizen-journalists and live-streamers;<br>c.   Performing any warrantless seizure of a recording device or recording; and<br>d.   Taking any other significant action involving recording devices or recordings. |
|---|

| ¶ 125 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
|---|---|

| ¶ 126 Within 180 days of the Effective Date, the City and FPD will develop protocols for conducting, at least annually, cost-feasible data-driven and qualitative assessments of FPD's practices related to First Amendment protected activity. These assessments will be designed to ensure that FPD officers are policing within the parameters of the First Amendment. |
|---|

| ¶ 126 COMPLIANCE RATING | Not Yet Implemented |
|---|---|

| ¶ 127 Assessments will include the review and analysis of complaints alleging misconduct related to First Amendment protected activity; an analysis of the number and nature of recording device seizures, arrests, or other interference with members of the press; and analysis of law enforcement response to public protest or demonstration. Any officer identified as having committed such misconduct shall be afforded an opportunity to respond to such complaints. As part of this assessment process, the City and FPD will identify deficiencies and opportunities for improvement; implement appropriate corrective action or improvement measures; and document measures taken. |
|---|

| ¶ 127 COMPLIANCE RATING | Not Yet Implemented |
|---|---|

| ¶ 309 The City agrees to provide to all FPD officers initial and ongoing annual in-service training regarding First Amendment protected activity, appropriate police responses to the exercise of such activity, and common pitfalls and oversteps in responding to such activity. This training will also address policing public demonstrations and crowd control. This training may overlap with training on Stop, Search, and Arrest, and on Use of Force. Officers will also be trained on protocols for obtaining supervisory approval for seizures, searches, citations, and arrests and other significant police actions that result from First Amendment related activity. |
|---|

| ¶ 309 COMPLIANCE RATING | In Progress – Curriculum under development |
|---|---|

## G.    USE OF FORCE (§ IX)

The Consent Decree's largest section, by far, governs the Use of Force.  In recognition of its outsized importance, as reflected in the chart below, the Parties and the Monitoring Team have dedicated significant time and resources to policy development, training delivery, and compliance auditing in this area.[4]  The Monitoring Team just completed its second audit of FPD's compliance with the Consent Decree provisions related to Use of Force Reporting & Investigation.  ***See*** **Appendix A.**  As the audit findings and similar assessments by DOJ reveal, FPD still has significant work to do to achieve substantial compliance in some areas.  However, Chief Doyle and his staff have been consistently open and receptive to feedback, and Ms. Stephens has readily identified areas that FPD's performance could be enhanced through in-service training.

While most of the provisions in this section are ripe for additional compliance auditing, FPD has yet to fully implement a Force Review Board (FRB), ¶¶ 189-193, to provide additional support for FPD's use-of-force investigations process and to recommend, where appropriate, changes to tactics, training, and policy.  While the FRB's functional authority rests temporarily with the City's Civilian Review Board, full implementation of the Consent Decree's provisions will require significant additional work.  FPD recently appointed Captain Harry Dilworth and Ms. Stephens to the FRB, and the City anticipates proposing a third FRB member for DOJ approval in early August.

| CONSENT DECREE PROVISION | COMPLIANCE RATING |
|---|---|
| ¶ 128 The Parties agree that all FPD officers and employees must have an unwavering commitment to protecting human life, and to upholding the value and dignity of every person. To foster this commitment, and to ensure adherence to the Constitution and all other laws, FPD will ensure that its use-of-force policies, training, supervision, and accountability systems are designed to ensure that FPD officers, including civilian correctional officers: <br><br>a.   Use force only when necessary to accomplish a legitimate public safety objective; <br>b.   Use de-escalation techniques and tactics to minimize the need to use force and increase the likelihood of voluntary compliance with legitimate police orders; <br>c.   Use force in a manner that avoids unnecessary injury or risk of injury to officers and civilians, is proportional to the level of resistance or threat encountered, and is de-escalated at the earliest possible moment; | |

---

[4] Per agreement of the Parties, ¶¶ 168–170 have been temporarily suspended as FPD does not operate its own jail.

| | |
|---|---|
| d.  Recognize and act upon the duty to intervene to stop any officer or civilian correctional officer from using force that is unreasonable or unnecessary;<br>e.  Immediately provide any necessary emergency medical assistance after using force and immediately summon additional medical assistance as necessary;<br>f.  Accurately and completely report all reportable force used or observed by officers;<br>g.  Are recognized and supported when they achieve public safety goals while avoiding use of force; and<br>h.  Are disciplined when they use force that is unnecessary or objectively unreasonable or otherwise violates law or policy | |
| ¶ 128 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Partial Compliance |
| ¶ 129 The City will ensure that officers use force in accordance with the Constitution and other laws, FPD policy, and this Agreement. | |
| ¶ 129 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Partial Compliance |
| ¶ 130 FPD agrees to commit to a use-of-force model that, through policy, training, and supervision, provides officers with the skills and training necessary to make optimal force decisions and resolve situations without the use of force whenever possible. Under this approach, FPD will train and encourage officers to, where appropriate, slow down or stabilize a given incident, through tactical retreat or other de-escalation techniques, to create more time, space, resources, and options to resolve incidents, and to enhance officer safety. | |
| ¶ 130 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Partial Compliance |
| ¶ 131 Pursuant to this model, FPD will ensure that, whenever possible, officers gather information before using force to determine: whether the situation truly presents a threat to public safety; whether it may involve a medical/mental health crisis rather than a criminal matter; if a threat is present, what tactical options are available, including communication and negotiation; what other law enforcement personnel or resources should be involved; and whether the officer's actions would be consistent with the agency's code of ethics, including respect for the sanctity of life and the dignity of all persons. | |
| ¶ 131 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Partial Compliance |
| ¶ 132 FPD will specify all weapons and force techniques officers are authorized to use, and which weapons/use-of-force equipment officers must carry while on duty, for every officer assignment. FPD policies will clearly define and describe each force option and the circumstances under which use of such force is appropriate. If FPD makes any additional weapons/use-of-force equipment available to its officers in the future, it will likewise create a policy for the weapon/equipment. These policies, while recognizing that many incidents requiring a use of force are unique, will require that all FPD uses of force adhere to the core principles articulated in paragraph 128 above. FPD will ensure that officers carry only the weapons/equipment that have been approved by the department and that the officer has been properly trained and certified to use. | |
| ¶ 132 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Substantial Compliance |
| ¶ 133 FPD will ensure officers do not use lethal force unless: (a) a person is displaying aggravated aggressive resistance, thereby leading the officer to an objectively reasonable belief that the person poses an imminent threat of death or serious physical injury to the officer or others, or to prevent escape of a violent felon where the officer has probable cause to believe that the suspect poses a threat of immediate, serious physical injury either to the officer or others; and (b) less intrusive methods to control the subject or avoid harm have been tried | |

| and were ineffective or would be ineffective. FPD will train and encourage officers to recognize the opportunity for and to employ tactical retreat, withdrawal, and other de-escalation techniques to increase incident resolution options and enhance officer safety. | |
|---|---|
| ¶ 133 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Substantial Compliance |

| ¶ 134 FPD will ensure that officers do not use less-lethal force unless: (a) a person is displaying aggressive resistance by attacking or attempting to attack the officer or another person, and (b) less intrusive methods to control the person or avoid harm have been tried and proven to be ineffective or would be ineffective. | |
|---|---|
| ¶ 134 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Substantial Compliance |

| ¶ 135 FPD will ensure that officers use the minimum amount of force necessary, objectively reasonable, and proportional to a person's behavior when interacting with persons who are displaying passive resistance or active resistance. Force used in these situations should be low-level. | |
|---|---|
| ¶ 135 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Partial Compliance |

| ¶ 136 FPD agrees to train and require all officers to do the following:<br><br>a. Identify themselves as officers before using force whenever safely possible. Whenever possible, officers will allow individuals the opportunity to submit to arrest before force is used. Prior to the use of any approved weapon/equipment, when possible and appropriate, officers will communicate to the subject and other officers that the use of the weapon is imminent to allow the subject an opportunity to comply;<br>b. In determining whether the use of force is necessary and reasonable, consider whether a subject may be noncompliant due to a medical or mental health condition, mental health crisis, physical or hearing impairment, language barrier, or drug interaction. When noncompliance appears to be due to such a condition, officers will be trained and required to employ de-escalation tactics and techniques where possible;<br>c. Fulfill their duty to safely intercede to prevent the use of objectively unreasonable force; and<br>d. Whether or not an eyewitness to an improper use of force or other constitutional violation, bring relevant information regarding known or suspected improper uses of force to the attention of a supervisor. | |
|---|---|
| ¶ 136 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |

| ¶ 137 FPD will prohibit officers from doing the following:<br><br>a. Using force on restrained individuals (e.g., subjects handcuffed or contained in a police vehicle) except: (a) when the individual's actions must be immediately stopped to prevent imminent or ongoing injury to any person; (b) to prevent the individual's escape or significant destruction of property; or (c) when the individual is refusing to get out of a police vehicle and reasonable attempts to gain voluntary compliance have failed, and a supervisor has approved the use of force to remove the individual. FPD will closely review force used against restrained individuals to ensure that it was necessary and proportional given the offense committed by the subject and the danger the subject posed to others;<br>b. Using neck holds, a form of lethal force;<br>c. Using force only because another officer is using force, or against persons who only verbally confront them;<br>d. Using retaliatory force, including force used after a threat has diminished and that is thus not reasonably necessary; force intended to punish an individual for fleeing or otherwise resisting arrest; and force used in response to the expression of criticism or disrespect for an officer or any other person;<br>e. Using force against individuals who may be observing or recording officer behavior, absent a basis for the use of force consistent with law, FPD policy, and this Agreement; and | |

| | |
|---|---|
| f.    Using force to effect compliance with a command that is unlawful. | |
| ¶ 137 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Partial Compliance |

¶ 138 FPD will ensure that immediately following a use of force, officers adhere to the following requirements:

a.    Officers—and, upon arrival, a supervisor—will inspect and observe subjects for injury or complaints of pain resulting from the use of force. Officers will render or obtain medical assistance, including emergency life-saving care where appropriate, for any person who exhibits signs of physical distress, has sustained a visible injury, expresses a complaint of injury or continuing pain, or was rendered unconscious. As necessary, officers will provide emergency first aid until professional medical care providers arrive on the scene. Any individual exhibiting signs of physical distress will be continuously monitored by the officer involved or another on-scene officer until medical care providers can assess the individual;

b.    Officers will handcuff individuals against whom lethal force has been used only when there are objective articulable facts indicating the individual remains a threat;

c.    Officers will not restrain individuals in a manner that compromises the individual's ability to breath; and

d.    Following a use of force in which a person is killed or seriously injured, the agency controlling the scene/investigation will assign a trained officer or employee to provide the individual's family members with information about the incident, as appropriate, and provide them information about any available counseling services. Family may be kept from the seriously injured or killed person as necessary to protect the integrity of the scene, and law enforcement personnel should explain this rationale. Family members should not be restrained unless necessary to protect the integrity of the scene or when otherwise objectively reasonable.

| | |
|---|---|
| ¶ 138 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |

¶ 139 In addition to the generally applicable force requirements of this section of the Agreement, FPD will ensure that officers comply with the weapon-specific requirements below.

| | |
|---|---|
| ¶ 139 COMPLIANCE RATING | Implementation – ¶ 425 Substantial Compliance |

¶ 140 FPD will ensure that only officers who have successfully completed approved training and are currently certified may be issued, carry, and use firearms. At least once a year, officers must qualify with each firearm they are authorized to carry while on duty. Officers who fail to qualify will immediately relinquish FPD-issued firearms on which they failed to qualify. Those officers who still fail to qualify after remedial training within a reasonable time will be subject to disciplinary action, which may include termination of employment.

| | |
|---|---|
| ¶ 140 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |

¶ 141 Each shot fired is a separate use of force that officers must separately justify as reasonable.

| | |
|---|---|
| ¶ 141 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |

¶ 142 If feasible, and if to do so would not increase the danger to the officer or others, officers will issue a verbal warning to the subject and fellow officers prior to shooting a firearm.

| | |
|---|---|
| ¶ 142 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not yet assessed |

¶ 143 FPD will ensure that officers:

a.  Do not unholster and display a firearm unless the objective circumstances create a reasonable belief that lethal force may become necessary;

b.  Do consider their surroundings before discharging their firearms and will avoid unnecessary risk to bystanders, victims, and other officers;

c.  Do not fire warning shots;

d.  Do not shoot through a door or window when the target is not clearly in view; and

e.  Do not shoot from or at a moving vehicle except to prevent otherwise unavoidable serious injury or death to the officer or third parties. Officers will attempt to move out of the path of a moving vehicle rather than discharging a firearm. Officers will not place themselves in the path of or reach inside a moving vehicle. A fleeing vehicle, in and of itself, will not be considered a threat of immediate serious injury or death.

| ¶ 143 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
|---|---|

¶ 144 FPD will ensure that only officers who have successfully completed approved training and are currently certified may be issued, carry, and use Electronic Control Weapons (ECW). Officers will complete ECW certification annually, consisting of updated FPD policy, weapon retention, technology changes, scenario-based training, and report-writing.

| ¶ 144 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
|---|---|

¶ 145 Each ECW application (in probe mode or drive-stun mode) is a separate use of force that officers must separately justify as reasonable. FPD will ensure that, after the first ECW application, the officer will reevaluate the situation to determine if subsequent cycles are necessary, and will weigh the risks of subsequent cycles against other force options. In determining whether any additional application is reasonable, officers will consider that a subject may not be able to respond to commands during or immediately following an ECW application, and the officer will allow sufficient time for the subject to comply prior to applying another cycle. Officers will not employ more than three cycles or 15 total seconds of an ECW against a subject during a single incident.

| ¶ 145 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Partial Compliance |
|---|---|

¶ 146 FPD will ensure that officers:

a.  Do not continue to apply ECWs when ECW application is not leading to compliance;

b.  Do not use ECWs in drive-stun mode as a pain compliance technique. Officers may use ECWs in drive-stun mode only to supplement the probe mode to complete the incapacitation circuit, or as a countermeasure to gain separation between the officer and the subject so that the officer can consider another force option;

c.  Determine the reasonableness of ECW use based on all relevant circumstances, including the subject's apparent age, size, physical and mental condition, and the feasibility of lesser force options;

d.  Except where lethal force is the only other option, do not use ECWs when a deployment may cause serious physical injury or death from situational hazards, including falling, losing control of a moving vehicle, or becoming ignited from the presence of potentially explosive or flammable materials or substances;

e.  Except where lethal force is the only other option, do not use ECWs when the subject is visibly pregnant, apparently elderly, a child, visibly frail, of abnormally slight build, or in apparent medical or mental health crisis;

f.  Do not use ECWs on fleeing persons who do not pose an imminent threat of physical harm to the officer, third persons, or themselves. Flight will never be the sole reason for applying an ECW;

g.  Do not apply ECWs to a subject's head, neck, or genitalia;

h.  Do not activate more than one ECW at a time against a subject; and

i.  Do keep ECWs in a weak-side holster to reduce the chances of accidentally drawing and/or firing a firearm.

| ¶ 146 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance |
|---|---|

| | |
|---|---|
| | Implementation – Partial Compliance |

¶ 147 FPD will establish protocols and training on officers' responsibilities, in consultation with local emergency medical services personnel, to include:

a.  Ensuring that subjects against whom ECWs were used receive a medical evaluation by emergency medical responders in the field or at a medical facility;
b.  Ensuring that probes are removed from a subject's skin only by medical personnel or properly trained officers;
c.  Minimizing the risk of positional asphyxia and the need to use restraint techniques that do not compromise a subject's breathing;
d.  Monitoring all subjects who have received an ECW application while in police custody; and
e.  Informing medical personnel of all subjects who have been subjected to multiple ECW applications, including prolonged applications (more than three cycles or 15 seconds), or who appear to be under the influence of drugs or exhibiting symptoms associated with "excited delirium," or who were kept in restraints after ECW use.

| | |
|---|---|
| ¶ 147 COMPLIANCE RATING | Policy Development – Substantial Compliance <br><br> Roll Call Training – Substantial Compliance <br><br> Implementation – Not Yet Assessed |

¶ 148 Officers must justify the use of each separate impact weapon, such as a baton or asp.

| | |
|---|---|
| ¶ 148 COMPLIANCE RATING | Policy Development – Substantial Compliance <br><br> Roll Call Training – Substantial Compliance <br><br> Implementation – Not Yet Assessed |

¶ 149 Officers will not use improvised weapons, such as a flashlight or firearm, to strike a person, unless there is an immediate need to strike and the officer is unable to use a weapon that would be necessary and objectively reasonable under the circumstances. The failure to carry a baton when required to do so will not justify the use of an improvised weapon.

| | |
|---|---|
| ¶ 149 COMPLIANCE RATING | Policy Development – Substantial Compliance <br><br> Roll Call Training – Substantial Compliance <br><br> Implementation – Not Yet Assessed |

¶ 150 PD will ensure that only officers who have successfully completed approved training and are currently certified may be issued, carry, and use Oleoresin Capsicum spray (OC spray). Certification will be completed at least once every two years and will include information from the medical community on the effects of OC spray.

| | |
|---|---|
| ¶ 150 COMPLIANCE RATING | Policy Development – Substantial Compliance <br><br> Roll Call Training – Substantial Compliance <br><br> Implementation – Not Yet Assessed |

¶ 151 Officers must justify each separate application of OC spray.

| | |
|---|---|
| ¶ 151 COMPLIANCE RATING | Policy Development – Substantial Compliance <br><br> Roll Call Training – Substantial Compliance <br><br> Implementation – Not Yet Assessed |

¶ 152 Officers will issue a verbal warning to the subject, fellow officers, and other individuals present prior to using OC spray, whenever possible. Officers will wait a reasonable amount of time after providing the warning to allow the subject to comply with the warning.

| | |
|---|---|
| ¶ 152 COMPLIANCE RATING | Policy Development – Substantial Compliance <br><br> Roll Call Training – Substantial Compliance <br><br> Implementation – Not Yet Assessed |

¶ 153 Officers will not use OC spray against individuals or groups who merely fail to disperse.

| ¶ 153 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
|---|---|
| ¶ 154 Officers will assist exposed subjects with decontamination and water-flushing of exposed areas as soon as feasible. No spit hood or mask of any type may be placed on a person subjected to OC spray until that person has been fully decontaminated. | |
| ¶ 154 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 155 FPD will ensure that only officers who have successfully completed approved training and are current in their certification and ongoing training requirements can serve as canine handlers, and that only dogs that meet their certification requirements can be deployed as FPD canines. FPD will work with canine trainers to ensure that detailed training records are maintained regarding whether each handler-canine team has met specific control criteria for each control exercise; to ensure the documentation of remedial training given in response to a canine team's deficiencies in any area; and to ensure that all observed deficiencies are reported to FPD's canine unit supervisor. | |
| ¶ 155 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 156 Canines and handlers will be certified annually by a nationally recognized trainer or organization whose standards are consistent with the law, FPD policy, and best practices. The certification process must involve the demonstration of control and proficiency in specific, widely-accepted obedience and criminal apprehension exercises. | |
| ¶ 156 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 157 FPD agrees that a police canine is primarily a locating tool, and is only used as a force tool when reasonable and appropriate, which should be a rare occasion. | |
| ¶ 157 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 158 FPD will ensure that no canine handler uses his or her canine solely to intimidate or frighten any person. | |
| ¶ 158 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 159 FPD will ensure that canine handlers keep their canines within visual and auditory range at all times during deployments, except when a canine clears a threshold (e.g., rounding a corner, entering a room, ascending or descending a stairwell), in which case the handler will regain sight and hearing of the canine as quickly as possible. | |
| ¶ 159 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |

| | |
|---|---|
| ¶ 160 FPD will ensure that canine handlers obtain verbal supervisory approval before a canine is deployed, absent documented exigent circumstances that permit this use of force under law, FPD policy, and this Agreement. The approving supervisor will not serve as a canine handler during the course of the deployment. | |
| ¶ 160 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 161 FPD will ensure that, before deploying a canine, canine handlers issue verbal warnings that a canine will be deployed and that the suspect should surrender, unless providing such warnings would create an imminent threat of danger to the canine handler or any other person on the scene. A canine handler will allow a reasonable period of time between each warning to provide a suspect an opportunity to surrender. | |
| ¶ 161 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 162 FPD will ensure that canine searches of residences are conducted on short leash unless the canine handler can determine with certainty that there are no authorized individuals in the home. | |
| ¶ 162 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 163 To limit the risk of unnecessary canine bites, FPD will ensure that canine handlers do not deploy canines off-leash to search for or apprehend a fleeing or concealed subject unless the following requirements are all satisfied:<br><br>a.  The handler is in auditory range of a suspect;<br>b.  The subject is wanted for a violent felony, or the objective and particularized circumstances make it reasonable to believe the subject is armed with a weapon capable of causing death or serious physical injury or otherwise poses an imminent threat of death or serious physical injury to another person, including the officer; and<br>c.  Lesser means (including waiting) have been tried and have been ineffective or cannot reasonably be expected to allow for the apprehension of the subject. | |
| ¶ 163 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 164 Canines will not be used to apprehend anyone suspected of being under the influence of drugs or alcohol, if no other serious crime is involved. Absent exigent circumstances, officers will also avoid deploying canines to apprehend persons believed to be in mental health crisis. | |
| ¶ 164 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 165 FPD will ensure that, when a canine apprehends a subject by biting, the canine handler calls the canine off at the first moment the canine can safely release its bite. If the suspect is determined to be unarmed, the handler will immediately order the canine to release the bite. When deciding to call off the dog, the handler must keep in mind that the average person will struggle if being seized or confronted by a canine. This struggling will not be cause for not calling off the canine. | |
| ¶ 165 COMPLIANCE RATING | Implementation – Not Yet Assessed |

| | |
|---|---|
| ¶ 166 FPD will ensure that officers do not deploy canines against persons believed to be juveniles unless objective circumstances lead to a reasonable belief that such deployment is necessary to prevent imminent serious physical injury or death to any person, including an officer. | |
| ¶ 166 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 167 FPD will ensure that canines are not used for crowd control. | |
| ¶ 167 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 168 To minimize the unnecessary use of force and enhance safety, FPD will ensure that officers and correctional officers do not possess or use firearms or ECWs within the FPD jail booking or lockup areas. | |
| ¶ 168 COMPLIANCE RATING | Suspended by agreement |
| ¶ 169 FPD will ensure that at least two correctional officers are present in the FPD jail at all times. | |
| ¶ 169 COMPLIANCE RATING | Suspended by agreement |
| ¶ 170 In addition to the use of body-worn cameras required by this Agreement, FPD will ensure that all parts of the jail where prisoners may be present are surveilled by stationary video cameras that are always recording. Supervisors will review jail video footage when investigating uses of force, in addition to conducting random or targeted reviews of video footage. | |
| ¶ 170 COMPLIANCE RATING | Suspended by agreement |
| ¶ 171 To ensure that FPD officers use force only as permitted by the law, FPD policy, and this Agreement, and are held accountable when they do not; that officers are positively recognized when they appropriately minimize or avoid use of force; that FPD identifies and corrects training, policy, equipment, tactical, and officer safety concerns raised by use-of-force incidents; and that FPD's response to officer use of force builds community trust and confidence, FPD agrees to the following requirements. | |
| ¶ 171 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Partial Compliance |
| ¶ 172 Within 120 days of the Effective Date, FPD will develop and implement, in consultation with the Monitor and subject to approval by DOJ, a comprehensive process for reporting and investigating all FPD officer uses of force. The policies and training developed pursuant to this system will ensure that all FPD personnel, including officers, correctional officers, dispatchers, supervisors, and commanders at all levels, are required and trained to carry out their force-related reporting, review, and accountability duties and responsibilities. | |
| ¶ 172 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not in Compliance |
| ¶ 173 Consistent with paragraph 384 of this Agreement, all officers using force above unresisted handcuffing will be required to document the use of force in writing before the end of shift, and to immediately report the use of force to a supervisor. An officer's use-of-force report will include a narrative that explains with specificity the type of force used; the legitimate police objective necessitating the use of force; details regarding the level of resistance encountered; and all efforts to de-escalate the situation to avoid the use of force, and to minimize the level of force used, or reason why such efforts were not attempted. Officers will note in their use-of-force reports the existence of any body-worn camera or in-car camera audio or video footage. | |
| ¶ 173 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance |

| | |
|---|---|
| | Implementation – Partial Compliance |

| | |
|---|---|
| ¶ 174 All officers observing a use of force by an FPD officer will be required to document their observations in writing before the end of shift. | |

| | |
|---|---|
| ¶ 174 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |

| | |
|---|---|
| ¶ 175 FPD officers will not use conclusory statements, boilerplate, or canned language (e.g., "furtive movement" or "fighting stance") without supporting incident-specific detail. | |

| | |
|---|---|
| ¶ 175 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Substantial Compliance |

| | |
|---|---|
| ¶ 176 Where use-of-force reports are found to include material omissions or inaccuracies, FPD will take corrective action, including discipline as appropriate. Where the material omissions or inaccuracies are found to be deliberate, the employee will be disciplined, up to and including termination. | |

| | |
|---|---|
| ¶ 176 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not in Compliance |

| | |
|---|---|
| ¶ 177 Officers who use or observe a reportable use of force but do not report it will be disciplined, up to and including termination. | |

| | |
|---|---|
| ¶ 177 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not in Compliance |

| | |
|---|---|
| ¶ 178 Any FPD officer learning of a previous use of force by another FPD officer, whether from an FPD employee or a non-employee civilian, will immediately report the use of force to a supervisor unless the FPD officer is certain that the use of force was previously reported. | |

| | |
|---|---|
| ¶ 178 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |

| | |
|---|---|
| ¶ 179 FPD policies will include particularized reporting requirements for certain types of force, such as ECWs, canines, OC Spray, and lethal force, including the use of firearms. | |

| | |
|---|---|
| ¶ 179 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Substantial Compliance |

| |
|---|
| ¶ 180 With the exception of the lowest level of reportable force (Type 3), an FPD supervisor will immediately respond to the scene of every reportable use of force by an FPD officer. The duties of the responding supervisor will include, at a minimum: interviewing all witnesses to the use of force; directing the gathering and preservation of evidence related to the use of force, consistent with paragraph 384 of this Agreement; ensuring that both officers and subjects of the use of force are given appropriate medical care; providing information, as appropriate, to family or friends of subjects of use of force who are injured; and taking steps to maintain calm and preserve the integrity of the scene. If notified, an FPD supervisor will respond to the scene of every use of force by another law enforcement agency within Ferguson's city limits. FPD will make a good-faith attempt to revise its mutual aid agreements with other agencies to ensure that FPD is notified when other agencies use force in Ferguson. |

| ¶ 180 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Partial Compliance |

¶ 181 Scene management and investigation will be conducted by an uninvolved supervisor, i.e., a supervisor that neither ordered nor participated in the use of force.

| ¶ 181 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Substantial Compliance |

¶ 182 Supervisors who conduct high-quality force investigations will receive preference for assignments and promotions. Supervisors who fail to adhere to FPD policy regarding use-of-force investigations, or conduct low-quality force investigations will be subject to corrective action or discipline as appropriate, including demotion.

| ¶ 182 COMPLIANCE RATING | Not Yet Implemented |

¶ 183 The type of supervisory response and investigation will depend upon the level of force used and the surrounding circumstances. There will be three types of force for purposes of response and investigation within FPD:

a.   Type 3 force is force that is reasonably expected to cause only transient pain and/or disorientation during its application as a means of gaining compliance, including pressure point compliance and joint manipulation techniques, but that is not reasonably expected to cause injury, does not result in an actual injury, and does not result in a complaint of injury. Type 3 force also includes the unholstering or pointing of a firearm at a subject and the pointing of an ECW at a subject. The use of Type 3 force requires that all officers using or observing force report and document the force as set out above, but does not require that a supervisor respond to the scene of the use of force or conduct a use-of-force investigation, absent extenuating circumstances to be set out in policy;

b.   Type 2 force is force that causes an injury, could reasonably be expected to cause an injury, or results in a complaint of an injury, but does not rise to a Type 1 force. Type 2 force includes the use of an ECW; OC spray; weaponless defense techniques (e.g., elbow or closed-fist strikes, kicks, leg sweeps, and takedowns); impact weapons (when the use is not to the head, neck, or face); use of force against a restrained person; and canine apprehension (when no bite is involved). An uninvolved supervisor will investigate a Type 2 use of force and document the investigative findings in a written report; and

c.   Type 1 force includes lethal force; force resulting in death or serious bodily injury; force resulting in hospital admission; canine bites; more than three applications of an ECW on an individual during a single interaction, regardless of the mode or duration of the applications and regardless of whether the applications are by the same or different officers, or ECW application that lasts longer than 15 seconds, whether continuous or consecutive; and any vehicle pursuit. Any officer-involved shooting and any death while in or as a result of being in police custody will be considered a "critical incident" and investigated consistent with the requirements in paragraph 185 below. Depending upon the exact type of force and surrounding circumstances, all other Type 1 uses of force will be investigated by an uninvolved supervisor or an outside entity or agency, pursuant to protocols developed in consultation with the Monitor and approved by DOJ.

| ¶ 183 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Substantial Compliance – provision fully incorporated into policy |

¶ 184 Type 3 use-of-force investigations will be completed within 30 days; Type 2 investigations will be completed within 45 days; and Type 1 investigations will be completed within 60 days, absent reasonable cause, as approved by the Chief of Police, in which case the investigation will be completed in 90 days. Use-of-force investigations will be fully documented in writing and include appropriate consideration of all relevant evidence.

| ¶ 184 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Partial Compliance |

¶ 185 Within 180 days of the Effective Date, FPD will develop and implement policies and training on the immediate response to critical incidents that occur in Ferguson and the investigation of critical incidents that involve FPD officers in or outside of Ferguson. Critical incident policies and training will be developed in consultation with the Monitor and be approved by DOJ and will address:

a. The immediate FPD response to a critical incident, including the steps that involved- and other FPD officers and dispatchers must take to protect the integrity of the investigation; minimize injury and loss of life (e.g. the provision of medical care); and de-escalate tensions until any outside investigative agency assumes control of the scene;

b. Requirements for the investigation of critical incidents that must be adhered to by FPD or any agency whom FPD arranges to have conduct critical incident investigations on a regular or ad hoc basis; and

c. Communications protocols that ensure that when critical incidents occur, authorized City representatives communicate with the public and the media swiftly, openly, and neutrally, respecting areas where the law requires confidentiality. Policies will require that designated City representatives release all information lawfully permitted as soon as possible after a critical incident and on a continuing basis, unless there is a compelling investigatory, personnel or public safety reason not to release the information.

| ¶ 185 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Not Yet Implemented |

¶ 186 The determination of whether a use of force violates FPD policy will be based on a preponderance of the evidence standard.

| ¶ 186 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Not Yet Implemented |

¶ 187 All Type 3 uses of force will be reviewed and approved by the supervisor, or an investigation initiated, as appropriate, within 24 hours.

| ¶ 187 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Partial Compliance |

¶ 188 Except as noted below, all Type 2 use-of-force investigations will be reviewed by the involved officer's chain of command within a specific, reasonable period of time to be stated in FPD policy.

| ¶ 188 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Partial Compliance |

¶ 189 Within 180 days of the Effective Date, FPD will develop and implement a Force Review Board (FRB) to determine whether certain use-of-force incidents were consistent with FPD policy and law, and to evaluate all use-of-force incidents from a tactics, training, policy, equipment, officer safety and agency improvement perspective. The FRB will:

a. Except where the administrative investigation of the incident is conducted by an outside agency, review all Type 1 investigations, all Type 2 investigations where there was an allegation of force-related misconduct, and a sample of all other Type 2 investigations;

b. Be comprised of three voting members: an FPD commander with skills and experience different from those of the other FRB members, who will chair the Board ("Chair"); a training supervisor; and a third member with law enforcement experience, who will be subject to approval by DOJ. The Chair may include any consultants, subject matter experts, or other civilians the Chair feels would be helpful in reviewing particular incidents. The FRB also may consult with other advisors as necessary. Consultants and observers, however, will not be permitted to vote; and

c. Conduct comprehensive and reliable reviews of investigations, and issue its findings, within 14 days of submission to the FRB. The scope of the FRB's review will not be limited to assessing an officer's decision making at the moment the officer employed force. Rather, the FRB's review will include issues such as: the circumstances leading up to the use of force, tactical decisions, information sharing and communication, adequacy of supervision, equipment, training, any applicable medical response, and any commendable actions. The review will include consideration of the actions and inactions of all officers, supervisors, commanders, and dispatchers involved in the incident, as appropriate.

| ¶ 189 COMPLIANCE RATING | Not Yet Implemented |
|---|---|

¶ 190 All use-of-force investigations reviewed by the FRB will be reviewed by the involved officer's chain of command within a specific, reasonable period of time as stated in FPD policy.

| ¶ 190 COMPLIANCE RATING | Not Yet Implemented |
|---|---|

¶ 191 Where the FRB finds that a use of force violates FPD policy, it will document its findings in writing and refer the matter to the disciplinary process as set out in Section XIX.B. of this Agreement.

| ¶ 191 COMPLIANCE RATING | Not Yet Implemented |
|---|---|

¶ 192 Where the FRB determines that the force incident indicates a need for changes to policy, training, or equipment, it will document its findings in writing and advise the Chief of Police in writing, who will ensure that appropriate modifications occur and document their completion in writing.

| ¶ 192 COMPLIANCE RATING | Not Yet Implemented |
|---|---|

¶ 193 Where the FRB determines that the use of force indicates a need for corrective action, such as training, it will advise the Chief of Police in writing, who will ensure that appropriate corrective action occurs and document its completion in writing.

| ¶ 193 COMPLIANCE RATING | Not Yet Implemented |
|---|---|

¶ 194 The Chief of Police will approve all use-of-force investigation findings and all disciplinary adjudications.

| ¶ 194 COMPLIANCE RATING | Not Yet Implemented |
|---|---|

¶ 195 Within 180 days of the Effective Date, the City will develop protocols for regularly, and at least annually, conducting cost-feasible data-driven and qualitative assessments of FPD's use-of-force practices. These assessments will be designed to ensure that FPD officers only use force in accordance with state and federal law as well as FPD policies and values. Assessments will involve the analysis of use-of-force data to identify officer-specific, unit specific, and department-wide trends, and will include reviews of FRB and other force investigations; force reporting; officer injury reports and incidents in which medical assistance was requested or provided following a use of force; and complaints alleging excessive use of force. As part of this internal assessment process, the City and FPD will identify deficiencies and opportunities for improvement; implement appropriate corrective action or improvement measures; and document measures taken.

| ¶ 195 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Not Yet Implemented |
|---|---|

¶ 310 The City agrees to provide FPD officers initial and ongoing annual in-service use-of-force training. This training will include:

a. Fourth Amendment and other relevant law, FPD policy, and the requirements of this Agreement related to force;
b. Use-of-force reporting requirements;
c. Proper use-of-force decisionmaking, illustrated through role-playing scenarios and interactive sessions;
d. De-escalation techniques, both verbal and tactical, that empower officers to make arrests without using force and instruction that disengagement, area containment, surveillance, waiting out a subject, summoning reinforcements, using cover, calling in specialized units, tactical disengagement, or delaying arrest may be the appropriate response to a situation, even when the use of force would be legally justified;
e. Principles of procedural justice, and avoiding the use of force in response to minor resistance;
f. Proper threat assessment, including how implicit racial and gender bias can impact officers' threat assessments;
g. Recognizing failures to comply based on a medical or mental condition, physical or hearing impairment, language barrier, drug interaction, or emotional crisis, and how to respond without force to persons in those situations;
h. The duty to safely intervene when another officer is using force that is unnecessary or objectively unreasonable, how to do so safely, and how to prevent or stop a peer's unreasonable force;
i. Firearms training, including: firearm use at night or with reduced light; stress training; the proper techniques for unholstering, displaying, pointing, and aiming a firearm, and for determining when it is appropriate to do so;
j. The proper use of ECWs, including:
  (1) The importance that all officers view and use ECWs as a tool of necessity, not convenience, consistent with best practices and this Agreement;
  (2) Training on ECW display in combination with verbal commands to avoid force;
  (3) The risks of prolonged or repeated ECW exposure, including that the application for more than three cycles or 15 seconds (whether due to multiple applications or continuous cycling) may increase the risk of death or serious physical injury;

37

| | |
|---|---|
| (4) The increased risks that ECWs may present for a subject who is pregnant, elderly, a child, frail, a person of low body mass, or in medical or mental health crisis; and<br>(5) Disadvantages of drive-stun mode, including lack of effectiveness, ease of abuse, and tendency to escalate encounters.<br>k.  Canine handlers will participate in canine and canine handler training every four weeks. | |
| ¶ 310 COMPLIANCE RATING | Implementation – Partial Compliance (subsections (j)(1-5) are the subject of in-service training. The remaining provisions Not Yet Implemented.) |
| ¶ 311 FPD agrees to train dispatchers on force-related topics, including but not limited to the following:<br><br>a.  Understanding the force review process, to ensure that supervisors are notified of all uses of force;<br>b.  Knowing when to contact emergency medical personnel in use-of-force incidents; and<br>c.  Assisting supervisors to ensure that use-of-force reporting is accurate and complete by providing information about which officers were on the scene, who may have called 911, and other relevant facts. | |
| ¶ 311 COMPLIANCE RATING | Not Yet Implemented |

## H.    CRISIS INTERVENTION

Near the conclusion of this reporting period, FPD finalized, with approval of DOJ and the Monitoring Team, a policy authorizing the composition of FPD's Crisis Intervention Team ("CIT") and detailing the selection process for its members.  Consent Decree ¶¶ 198-204.  In keeping with existing practice for policy development, FPD has submitted the CIT policy to the community for public comment, the period for which closes August 30, 2025.  Consent Decree ¶ 196.  Since the newly-comprised team is still in its early stages of implementation, the area is not yet ripe for compliance assessment.  However, the Monitoring Team looks forward to working with the Parties to develop an appropriate methodology for future audits.

| CONSENT DECREE PROVISION | COMPLIANCE RATING |
|---|---|
| ¶ 196 FPD will implement a Crisis Intervention Team (CIT) first-responder model of police-based crisis intervention with community, health care, and advocacy partnerships to: (a) assist individuals who are in mental health crisis or who are in crisis related to the influence of alcohol or drugs ("individuals in crisis"); (b) reduce the need to use significant force against individuals in crisis and improve the safety of patrol officers, individuals in crisis and their families, and others within the community; (c) provide the foundation necessary to promote community solutions to assist individuals with mental illness; and (d) reduce the need for individuals with mental illness to have further involvement with the criminal justice system. | |
| ¶ 196 COMPLIANCE RATING | Policy Development – In Progress |
| ¶ 197 Within 180 days of the Effective Date, FPD will designate an officer, at the rank of Lieutenant or above, to act as a Crisis Intervention Coordinator ("Coordinator") to better facilitate communication between FPD and members of the area mental health community and to increase the effectiveness of FPD's crisis intervention program. The Coordinator shall identify, develop, and maintain partnerships with program stakeholders and shall serve as a point of contact for advocates, individuals with mental illness, their families, caregivers, professionals, and others associated with the mental health community. | |
| ¶ 197 COMPLIANCE RATING | Implementation Ongoing |
| ¶ 198 The Coordinator will be responsible for ensuring the selection of appropriate candidates for designation as specialized CIT officers consistently with the requirements set forth in this Agreement. The Coordinator shall also ensure that, within one year of the Effective Date, there are enough specialized CIT officers to have at least one CIT officer on duty and available to respond to calls and incidents involving an individual in crisis at all times. The Coordinator will assess the number of CIT officers necessary to achieve this goal, identify gaps in coverage of particular shifts and on call schedules, and develop strategies to fill those gaps. The Coordinator will also be | |

| | |
|---|---|
| required to ensure that officers and dispatchers are appropriately responding to CIT-related calls, and that their efforts and successes are appropriately publicly recognized. | |
| ¶ 198 COMPLIANCE RATING | Implementation Ongoing |
| ¶ 199 Designation as a specialized CIT officer will be voluntary. To the extent feasible, these officers will continue to be assigned to their regular patrol divisions and will maintain their standard patrol duties, except when called upon to respond to incidents or calls involving individuals in crisis. Officers who serve as CIT officers will receive a salary increase during their service in the role, to reflect the importance and the additional demands of the position. | |
| ¶ 199 COMPLIANCE RATING | Implementation Ongoing |
| ¶ 200 To be eligible for consideration, officers must have at least three years of experience as a law enforcement officer. FPD will assess each applicant's fitness to serve as a CIT officer by considering the applicant's written application, supervisor recommendations, disciplinary file, and an in-person interview. Officers with a history of complaints regarding the use of excessive force that receive a disposition of "sustained" or "not sustained" will be presumptively ineligible to be CIT officers. | |
| ¶ 200 COMPLIANCE RATING | Implementation Ongoing |
| ¶ 201 CIT officers who are dispatched to an incident involving an individual in crisis will have primary responsibility for the scene, unless a higher-ranking officer has assumed responsibility for the scene. In that case, the higher ranking officer will seek the input of a CIT officer regarding strategies for resolving the crisis. | |
| ¶ 201 COMPLIANCE RATING | Implementation Ongoing |
| ¶ 202 In addition to the crisis intervention training provided to all FPD officers, CIT officers will receive specialized CIT-specific training consistent with FPD's Training Program and the terms of this Agreement, including the requirements set forth in Section XVII. | |
| ¶ 202 COMPLIANCE RATING | Implementation – Substantial Compliance |
| ¶ 203 FPD will, where practicable, dispatch at least one specialized CIT officer, as well as one additional officer, to all incidents involving an individual in crisis. FPD will develop and implement appropriate policies to ensure that, in situations in which a CIT officer is not available to respond immediately to a call or incident involving an individual in crisis, FPD's response is consistent with the principles of the crisis intervention program. | |
| ¶ 203 COMPLIANCE RATING | Implementation Ongoing |
| ¶ 204 FPD will encourage specialized CIT officers to redirect individuals with mental health and substance abuse issues to the health care system, where appropriate. | |
| ¶ 204 COMPLIANCE RATING | Implementation Ongoing |
| ¶ 205 FPD policy will provide that a crisis intervention response may be necessary even in situations where there has been an apparent violation of law. This policy shall not prevent responding FPD officers from conducting law enforcement action necessary to address an urgent public safety situation. | |
| ¶ 205 COMPLIANCE RATING | Implementation Ongoing |
| ¶ 206 Within 180 days of the Effective Date, the City and FPD will develop protocols for at least annually conducting cost-feasible data-driven and qualitative assessments of FPD's CIT first responder model of police-based crisis intervention. These assessments will be designed to ensure FPD's crisis intervention practices allow FPD to provide an appropriate response to an incident involving an individual in crisis, including reducing injuries to officers, persons in mental health crisis, and the public. Assessments will include review and analysis of whether CIT officers were properly dispatched to calls for service involving an individual in crisis, as well as targeted and systematic review of CIT conduct where CIT officers did respond. As part of this internal assessment process, the City and FPD will identify deficiencies and opportunities for improvement; implement appropriate corrective action and improvement measures; and document measures taken. | |
| ¶ 206 COMPLIANCE RATING | Not Yet Developed |

## I.    BODY-WORN AND IN-CAR CAMERAS (§ XII)

The City has incorporated all relevant provisions of this section into policy and the

Monitoring Team has completed the initial stages of its first compliance audit in this area. *See*

**Appendix B.**[5]  As detailed in the audit findings, FPD is in substantial compliance with many of this section's provisions.  However, the Parties agree that more work needs to be done particularly as relates to officer compliance with ¶ 235, which requires notification to individuals that they are being recorded.  The Monitoring Team will continue its analysis of training materials, camera data, and reports to conduct additional audits in this area and to assist FPD in realizing substantial compliance with all the requirements in this area.

| CONSENT DECREE PROVISION | COMPLIANCE RATING |
|---|---|
| ¶ 229 Within 180 days of the Effective Date, the City agrees to ensure that all FPD patrol officers, patrol supervisors, jail personnel, and other FPD employees reasonably expected to regularly interact with the public are equipped with, and required to wear while on duty, fully functioning body-worn cameras and microphones. The City further agrees to ensure that all marked FPD vehicles that are in use are equipped with fully functioning in-car cameras with microphones. Within this time period, the City will work with the vendor to obtain any hardware, software, or other equipment necessary to enable body-worn and in-car camera recordings to be stored, organized, maintained, and retrieved consistent with the terms of this Agreement. The City has already secured an agreement with a vendor to meet the objectives within this Agreement. | |
| ¶ 229 COMPLIANCE RATING | Implementation - Compliance finding pending on-site assessment. |
| ¶ 230 City agrees to commit sufficient funds to maintain all body-worn and in-car cameras in working order, and to retain staffing hours sufficient to maintain and retrieve camera footage for investigatory, training, evidentiary, and public access purposes. | |
| ¶ 230 COMPLIANCE RATING | Substantial Compliance |
| ¶ 231 Within 60 days of the Effective Date, the City agrees to develop and implement policies to direct the use of body-worn and in-car camera equipment. Such policies will establish clear and specific direction regarding when officers are required to activate body-worn and in-car camera devices, as well as when officers must stop recording during an event.<br><br>a.  The body-worn camera policy will require activation of body-worn cameras for all investigatory stops; all arrests; all searches, except where specifically articulated and approved privacy considerations require a search not to be recorded; all encounters with subjects believed to be in a mental health crisis; and other scenarios as appropriate; and<br>b.  The in-car camera policy will require activation of in-car cameras for all traffic stops and pursuits until the motor vehicle stop is completed and the stopped vehicle departs, or until the officer's participation in the motor vehicle stop ends; all requests for consent to search a vehicle, non-consensual vehicle searches, and canine deployments; all prisoner transports; and other scenarios, as appropriate. | |
| ¶ 231 COMPLIANCE RATING | Substantial Compliance |
| ¶ 232 Consistent with best practices, officers shall have discretion not to record in certain situations, such as when interviewing victims or witnesses who are reluctant to cooperate if recorded. In such cases, officers shall articulate on camera their reason for not recording the activity. FPD policy will expressly describe the situations in which officers have the discretion not to record and will make clear that, except in such situations, officers must record all interactions with members of the public. | |
| ¶ 232 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not In Compliance |
| ¶ 233 The use of a body-worn camera shall not alter or satisfy an officer's obligation to use an in-car camera as required by policy, nor shall use of an in-car camera alter or satisfy an officer's obligation to use a body-worn camera as required by policy. | |

---

[5] The audit's initial phase was conducted remotely.  The Monitoring Team will complete the audit following on-site observation and authentication of the in-car camera equipment.

| ¶ 233 COMPLIANCE RATING | Policy Development – Substantial Compliance |
|---|---|
| | Roll Call Training – Substantial Compliance |
| | Implementation – Partial Compliance |

| ¶ 234 Officers shall document the existence of any camera footage on all required reports, and shall immediately report to their supervisor, and in writing, any non-recorded event that should have been recorded under FPD policy, as well as any interruptions or terminations of recordings.  Intentional failure to activate or continue recording devices as required, or use otherwise contrary to FPD policy, shall result in discipline |
|---|

| ¶ 234 COMPLIANCE RATING | Policy Development – Substantial Compliance |
|---|---|
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not In Compliance |

| ¶ 235 Officers shall inform individuals that they are being recorded at the earliest reasonable and safe opportunity. |
|---|

| ¶ 235 COMPLIANCE RATING | Policy Development – Substantial Compliance |
|---|---|
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not In Compliance |

| ¶ 236 The City agrees to ensure that recording equipment assigned to officers or their cars is functioning properly at the beginning and end of each shift. Officers shall report immediately any improperly functioning equipment. The City agrees to supplement officer equipment checks by developing and implementing a schedule for testing body-worn and in-car camera recording equipment to confirm that it is in proper working order. |
|---|

| ¶ 236 COMPLIANCE RATING | Policy Development – Substantial Compliance |
|---|---|
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |

| ¶ 237 The City agrees to ensure that body cameras are worn in a manner that prevents obstruction of the camera viewpoint to the greatest extent possible. |
|---|

| ¶ 237 COMPLIANCE RATING | Policy Development – Substantial Compliance |
|---|---|
| | Roll Call Training – Substantial Compliance |
| | Implementation – Substantial Compliance |

| ¶ 238 The City agrees to ensure that body-worn cameras are only used in conjunction with official law enforcement duties. Cameras shall not be used to record encounters with known undercover officers or confidential informants; when officers are engaged in personal activities or conversations unrelated to their official duties; when officers are having conversations with other FPD personnel that involve case strategy or tactics; and in any location where individuals have a reasonable expectation of privacy (e.g., restroom or locker room). |
|---|

| ¶ 238 COMPLIANCE RATING | Policy Development – Substantial Compliance |
|---|---|
| | Roll Call Training – Substantial Compliance |
| | Implementation – Substantial Compliance |

| ¶ 239 Officers shall be prohibited from accessing body-or in-car camera footage for personal use or from copying camera footage to their own personal computers, computers accessible by the general public, or public websites. Nothing within this paragraph shall preclude the City from releasing body-worn or in-car camera footage to the public consistent with the requirements of paragraph 249 below. |
|---|

| ¶ 239 COMPLIANCE RATING | Policy Development – Substantial Compliance |
|---|---|
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |

¶ 240 Supervisors shall ensure that officers under their command use body-worn and in-car recording equipment consistent with policy and this Agreement and shall hold officers under their command accountable when they do not use body-worn and in-car recording equipment consistent with policy and this Agreement. An investigation with respect to why a body-worn camera or in-car camera was not used will be initiated. The failure to use body worn and in-car camera equipment as required by FPD policy will result be grounds for discipline consistent with FPD policy.

| ¶ 240 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |

¶ 241 Supervisors shall be required to periodically inspect body worn cameras and in-car video cameras for functionality. Supervisors shall immediately report any equipment problem to a designated FPD or City official. The City agrees to take all necessary steps to promptly repair equipment to ensure consistent availability of fully functioning body-worn and in-car cameras for all appropriate officers.

| ¶ 241 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |

¶ 242 The City agrees to ensure that supervisors regularly review body-worn and in-car camera recordings in a manner that promotes close and effective supervision and that is consistent with this Agreement. Specifically, supervisors shall:

a. Identify and review all relevant body-worn and in-car camera recordings as part of conducting mandatory supervisory reviews of specific incidents, such as stops, searches, arrests, or uses of force. If an Electronic Control Weapon (ECW) was used during an incident, supervisors shall also obtain and review relevant ECW camera footage, if any;
b. Identify and review all available body-worn and in-car camera recordings in the course of conducting misconduct investigations. If an ECW was used during an incident, supervisors shall also obtain and review relevant ECW camera footage, if any;
c. Identify and review all available body-worn and in-car camera recordings of all officers listed in any FPD report regarding any incident involving injuries to a prisoner or an officer, uses of force, vehicle pursuits, or misconduct complaints. If an ECW was used, supervisors shall also obtain and review relevant ECW camera footage, if any.
d. Regularly, and at least on a quarterly basis, conduct both systematic and random audits of the body-worn and in-car camera recordings of officers under their command in order to assess the quality and appropriateness of officer interactions with the public, identify training or professional development needs, and ensure that officers are using body-worn and in-car camera equipment consistent with policy and this Agreement.

| ¶ 242 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |

¶ 243 Supervisors shall incorporate the knowledge gained from reviewing body-worn and in-car camera footage into their ongoing evaluation, supervision, and training of officers.

| ¶ 243 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |

¶ 244 The City will ensure that the Training Coordinator, in consultation with other FPD supervisors, will conduct regular reviews of body-worn camera and in-car camera footage to identify training needs and scenarios, which shall be addressed by, and incorporated into, training curricula and programs.

| ¶ 244 COMPLIANCE RATING | Policy Development – Substantial Compliance |
| | Roll Call Training – Substantial Compliance |
| | Implementation – Not Yet Assessed |

| | |
|---|---|
| ¶ 245 Within 180 days of the Effective Date, the City agrees to develop and implement protocols regarding the storage, retention, and public accessibility of body-worn and in-car camera recordings. | |
| ¶ 245 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Partial Compliance |
| ¶ 246 The City will ensure that all recordings are stored by officers in a centralized location or on a remote server at the end of the officer's shift and are properly categorized and accessible within 24 hours of the recording being made. Recordings will be categorized according to the kind of incident or event captured in the footage. | |
| ¶ 246 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Substantial Compliance |
| ¶ 247 The City agrees to take appropriate precautions to ensure the integrity and security of every recording, including through the adoption of specific policies for logging and tracking all body-worn and in-car camera recordings. | |
| ¶ 247 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Substantial Compliance |
| ¶ 248 The City will retain and preserve all non-evidentiary recordings for at least 90 days, and all evidentiary recordings for at least two years or, if a case remains under investigation or in litigation, until at least one year after the final disposition of the matter, including appeals. To the extent that this Agreement is still in effect five years after the Effective Date, the Parties agree to reconsider the retention timelines herein. | |
| ¶ 248 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Not Yet Assessed |
| ¶ 249 In order to continue to promote transparency, foster accountability, and enhance public trust in FPD, the City agrees to make body-worn and in-car camera recordings publicly available to the maximum extent allowable under Missouri law and consistent with individual privacy rights. | |
| ¶ 249 COMPLIANCE RATING | Policy Development – Substantial Compliance<br><br>Roll Call Training – Substantial Compliance<br><br>Implementation – Partial Compliance |
| ¶ 250 Within 180 days of the Effective Date, the City and FPD will develop protocols for regularly, and at least annually, conducting cost-feasible data-driven and qualitative assessments of body-worn and in-car camera use. These assessments will be designed to ensure that FPD officers are using body-worn and in-car cameras in a manner that increases transparency and accountability, and that FPD is using body-worn and in-car cameras as training and officer safety tools. Assessments will include review of use of cameras for training purposes; any failures to use recording equipment in accordance with policy; and data regarding recording equipment deficiencies or malfunctions. As part of this assessment process, the City Manager and Chief of Police will identify deficiencies and opportunities for improvement; implement appropriate corrective action and improvement measures; and document measures taken. | |
| ¶ 250 COMPLIANCE RATING | Not Yet Implemented |
| ¶ 316 The City agrees to provide initial and ongoing annual in-service training for all FPD sworn employees regarding body-worn and in-car camera equipment. The City agrees to ensure that all FPD members who will be using body-worn and in-car camera equipment or reviewing body-worn and in-car camera recordings will be properly trained within 180 days of the Agreement. Training will be sufficiently adequate in quality, quantity, type, and scope to ensure FPD members properly use and maintain recording equipment and that | |

43

| | |
|---|---|
| FPD members ensure proper organization, maintenance, and public access to recordings to the extent allowable under state law and appropriate in light of privacy considerations. | |
| ¶ 316 COMPLIANCE RATING | Partial Compliance – The City has developed in-service training materials but has not yet delivered the training. |

## III.     CONCLUSION

This reporting period represents the City's most significant step towards full implementation of the Consent Decree. FPD has created and maintained internal systems for managing and tracking its compliance efforts, resulting in a rapid and impressive series of policy and training developments. Because of this increased and sustained momentum, most of the Consent Decree's provisions, as reflected in the above chart, are ripe for compliance assessment. The Monitoring Team anticipates that, in the next reporting period, it will conduct audits in previously un-assessed areas like Stop, Search, and Arrest and First Amendment Protected Activity while also continuing its review of those subject areas in need of improvement, like Use of Force and Body-Worn Cameras. The Monitoring Team looks forward to continuing to engage meaningfully with the Parties in the next reporting period and beyond.[6]

Date: August 27, 2025

Respectfully submitted,

*/s/ Natashia Tidwell*
Natashia Tidwell
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111
*ntidwell@mintz.com*

---

[6] The Monitor has filed, as **Appendix C**, a Ferguson Monitorship Cost Summary, which details both the total amount charged to the City by the Monitoring Team through June 30, 2025 as well as the amount of *pro bono* work the Monitor and Deputy Monitor have donated to the City during that time.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that the foregoing was filed electronically on August 27, 2025 with the Clerk of the Court for the United States District Court for the Eastern District of Missouri, and was served by ECF notice by operation of the Court's electronic filing system.

*/s/ Natashia Tidwell*
Natashia Tidwell
